**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**
Caption in Compliance with D.N.J. LBR 9004-1(b)

**DILWORTH PAXSON LLP**
1500 Market Street, Suite 3500E
Philadelphia, PA 19102
Telephone: (215) 575-7000
Lawrence G. McMichael (*pro hac vice* admission pending)
Anne M. Aaronson (AA1679)
Catherine G. Pappas (CP0458)

*Proposed Counsel to the Debtors and Debtors in Possession*

| | |
|---|---|
| In re: | Chapter 11 |
| BINDER MACHINERY CO., LLC, | Case No. 16-28015 (KCF) |
| Debtor. | Joint Administration Requested |
| In re: | Chapter 11 |
| ROCBIN INVESTMENT CORP., | Case No. 16-28024 (KCF) |
| Debtor. | Joint Administration Requested |
| In re: | Chapter 11 |
| BINDER MANAGERIAL SERVICES, LLC, | Case No. 16-28020 (KCF) |
| Debtor. | Joint Administration Requested |
| In re: | Chapter 11 |
| BINDER REALTY OF SOUTH PLAINFIELD, LLC, | Case No. 16-28025 (KCF) |
| Debtor. | Joint Administration Requested |
| In re: | Chapter 11 |
| BINDER REALTY OF WINSLOW, LLC, | Case No. 16-28026 (KCF) |
| Debtor. | Joint Administration Requested |

4

119065003_2

| | |
|---|---|
| In re:<br><br>76 MENDHAM ROAD, LLC,<br><br>                   Debtor. | Chapter 11<br><br>Case No. 16-28028 (KCF)<br><br>Joint Administration Requested<br><br>Judge: _____<br><br>Hearing Date: _____, 2016 |

**MOTION SEEKING INTERIM AND FINAL ORDERS PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364, AND 507 AND FED. R. BANKR. P. 2002, 4001 AND 9014 (I) AUTHORIZING DEBTORS AND DEBTORS IN POSSESSION TO OBTAIN POSTPETITION FINANCING, (II) AUTHORIZING USE OF CASH COLLATERAL, (III) GRANTING LIENS AND SUPER-PRIORITY CLAIMS, (IV) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED LENDERS, (V) MODIFYING THE AUTOMATIC STAY; (VI) SCHEDULING A FINAL HEARING, AND (VII) GRANTING RELATED RELIEF**

**TO:    HONORABLE UNITED STATES BANKRUPTCY JUDGE**

The debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors") hereby move this Court (the "Motion") for the entry of an interim order (the "Interim Order") substantially in the form attached hereto as **Exhibit A** and a final order (the "Final Order," and with the Interim Order, the "Orders"), pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, and 507 and Fed. R. Bankr. P. 2002, 4001 and 9014 (I) authorizing debtors and debtors-in-possession to obtain post-petition financing, (II) authorizing use of cash collateral, (III) granting liens and super-priority claims, (IV) granting adequate protection to prepetition secured lenders, (V) modifying the automatic stay; (VI) scheduling a final hearing, and (VII) granting related relief.  The Debtors request, in accordance with Rules 4001 and the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), a hearing before this court (the "Bankruptcy Court") for the entry of the Interim Order to be held as soon as the Court's schedule permits and the Debtors have simultaneously sought expedited consideration of this Motion.  A copy of the Ratification and Amendment Agreement is attached to the Interim Order as **Exhibit A**.

In support of the Motion, the Debtors rely upon and incorporate by reference the Certification of Robert C. Binder submitted in support of the Debtors' First Day Motions and filed with the Court in these cases. In further support of the Motion, the Debtors, by and through their undersigned counsel, respectfully represent:

### Local Bankruptcy Rule 4001-3

1.    The provisions described in Local Bankruptcy Rule 4001-3 are set forth at the following sections the Ratification and Amendment Agreement and/or Interim Order:

a.    ***Amount of Loans to be Borrowed on a Revolving Basis****:* up to $7,450,000 million, plus interest, fees and expenses [Interim Order, Sec. 1.3] Total Facility is $18,543,500.

b.    ***Budget****:* All Loans provided by Lender to Borrowers pursuant to the Financing Order, the Loan Agreement or otherwise, shall only be used by Debtors to the extent (a) provided for in the Budget or (b) authorized by the Bankruptcy Court and consented to by the Lender for (i) general working capital needs, and (ii) the repayment of the Obligations. [Ratification and Amendment Agreement, page 12 and Exhibit A]

c.    ***Interest Rates***: 14% on the amounts owed under the original loan documents and 25% on the over-advance portion.

d.    ***Computation of Interest***: Interest shall be calculated on the basis of a year of 365 days, on the daily closing principal balance owing hereunder, not in advance.

e.    ***DIP Facility Fee***: Borrowers shall pay to Lender a debtor-in-possession financing facility fee, in the amount of $70,000, on account of the financing provided by Lender to Borrowers in the Chapter 11 Case, which fee shall be fully earned and due and payable on the Ratification Closing Date and which may be charged directly to the loan account of any Borrower maintained by Lender or paid by the Borrowers concurrently with the closing of the initial Loans, as provided under Section 9 of this Ratification Agreement. [Ratification and Amendment Agreement, page 16.]

f.    ***Voluntary Prepayments of the Loan***: Notwithstanding anything to the contrary contained in the Loan Agreement or any of the other Credit Documents, the Borrowers will not, and will not permit any Subsidiary, after the Ratification Closing Date, to optionally prepay, redeem, defease, purchase, or otherwise acquire any Indebtedness for borrowed money (other than the Obligations or as otherwise made in accordance with the Budget) without the prior written consent

6

of the Lender.  Subject to Early Termination Fee of $344,750.  [Ratification and Amendment Agreement, Section 2.6 and page 18.]

g.  **Repayment of Loan:** By the earlier of November 21, 2016 or 15 days after entry of the Interim Order, if a Final Order has not been entered.  [Ratification and Amendment Agreement, Section 1.2(h)].

h.  **Carve-Outs:**  Allowed Administrative Expenses for Clerk of the Bankruptcy Court, Fees payable to U.S. Trustee and Certain Professional Fees.  [Ratification and Amendment Agreement, page 2; Interim Order Sec. 2.3]

i.  **Concessions to Validity of Prepetition Debt:**  Each Pre-Petition Borrower (and, solely in the case of clause (b) below, each Borrower) and Guarantor hereby acknowledges, confirms and agrees that Lender has and shall continue to have (a) valid, enforceable and perfected first priority and senior security interests in and liens upon all Pre-Petition Collateral heretofore granted to Lender pursuant to the Pre-Petition Credit Documents as in effect immediately prior to the Petition Date to secure all of the Obligations, and (b) valid and enforceable first priority and senior security interests in and liens upon all Post-Petition Collateral granted to Lender under the Financing Order or hereunder or under any of the other Credit Documents or otherwise granted to or held by Lender, in each case, subject only to liens or encumbrances expressly permitted by the Loan Agreement (including, without limitation, Pre-Petition Priority Liens) and any other liens or encumbrances expressly permitted by the Financing Order that may have priority over the liens in favor of Lender. [Ratification and Amendment Agreement, page 11.]

j.  **506(c) Waiver:** Subject to entry of a Final Order granting such relief, no costs or expenses of administration which have or may be incurred in the Cases shall be charged against Lender, its respective claims or the Collateral pursuant to § 506(c) of the Bankruptcy Code without the prior written consent of Lender, and no such consent shall be implied from any other action, inaction or acquiescence by Lender. [Interim Order Sec. 4.3]

k.  **Other Waivers:** At all times during the Cases, and whether or not an Event of Default has occurred, the Debtors irrevocably waive any right that they may have to seek further authority (a) to use Cash Collateral of Lender or of Pre-Petition Lender under section 363 of the Bankruptcy Code, (b) to obtain post-petition loans or other financial accommodations pursuant to section 364(c) or 364(d) of the Bankruptcy Code, other than as provided in this Interim Order or as may be otherwise expressly permitted pursuant to the Credit Documents, (c) to challenge the application of any payments authorized by this Interim Order as pursuant to section 506(b) of the Bankruptcy Code, or to assert that the value of the Pre-Petition Collateral is less than the Pre-Petition Obligations, or that the value of the Floor Plan Collateral is less than the Floor Plan Obligations, (d) to propose, support or have a plan of reorganization or liquidation that does not provide for the indefeasible payment in cash in full and satisfaction of all Obligations on the

7

effective date of such plan in accordance with the terms and conditions set forth in the Loan Agreement, or (e) to seek relief under the Bankruptcy Code, including without limitation, under section 105 of the Bankruptcy Code, to the extent any such relief would in any way restrict or impair the rights and remedies of Lender as provided in this Interim Order and the Credit Documents or Lender's exercise of such rights or remedies; provided, however, that Lender may otherwise consent in writing, but no such consent shall be implied from any other action, inaction, or acquiescence by Lender, and the consent of Lender shall be required in order to relieve the Debtors' of their obligations under this Section 4.2. [Interim Order, Sec. 4.2]

l.    *Events of Default*: Section 22 of the Pre-Petition Loan Agreement, as amended, plus

"(r)    the occurrence of any condition or event which permits Lender to exercise any of the remedies set forth in the Financing Order, including, without limitation, any "Event of Default" (as defined in any Financing Order);

(s)    the termination or non-renewal of the Credit Documents as provided for in any Financing Order;

(t) any Borrower or Guarantor suspends or discontinues all or any material part of its business, or is enjoined by any court or governmental agency from continuing to conduct all or any material part of its business, or a trustee or examiner with expanded powers is appointed for any Borrower or Guarantor, or any of their respective properties;

(u)    any act, condition or event occurring after the Petition Date that has or could reasonably expect to have a Material Adverse Effect;

(v)    conversion of any Chapter 11 Case to a Chapter 7 case under the Bankruptcy Code;

(w)    dismissal of any Chapter 11 Case or any subsequent Chapter 7 case either voluntarily or involuntarily;

(x)    grant of a lien on or other interest in any property of any Borrower or Guarantor, other than a Permitted Lien or a lien or encumbrance permitted by any Financing Order (including the Carve-Out), which is superior to or ranks in parity with Lender's security interest in or lien upon the Collateral;

(y) the grant of an administrative expense claim in any Chapter 11 Case which is superior to or ranks in parity with the rights of the Lender (other than administrative expense claims

8

permitted by any Financing Order, the Ratification Agreement, or the Carve-Out;

(z)  the failure of Borrowers or Guarantors to comply with any Financing Order or the Ratification Agreement, or any Financing Order shall be modified, reversed, revoked, remanded, stayed, rescinded, vacated or amended on appeal or by the Bankruptcy Court without the prior written consent of the Lender;

(aa)  the appointment of a trustee pursuant to Sections 1104(a)(1) or 1104(a)(2) of the Bankruptcy Code;

(bb)  the appointment of an examiner with special powers pursuant to Section 1104(a) of the Bankruptcy Code;

(cc)  the filing of a plan of reorganization or liquidation by or on behalf of any Borrower or Guarantor which does not provide for payment in full of all Obligations on the effective date thereof in accordance with the terms and conditions contained herein, unless otherwise consented to by the Lender;

(dd)  the confirmation of any plan of reorganization or liquidation in the Chapter 11 Case of any Borrower or Guarantor which does not provide for payment in full of all Obligations on the effective date thereof in accordance with the terms and conditions contained herein, unless otherwise consented to by Lender;

(ee)  the filing of a motion by any Debtor (or any Affiliate) that is not dismissed or denied within thirty (30) days after the date of filing such motion seeking, or the entry of any order permitting, recovery from any portion of the Collateral (or from Lender directly) any costs or expenses of preserving or disposing of the Collateral under section 506(c) or section 552(b) of the Bankruptcy Code (or otherwise);

(ff)  (i) the failure of Borrowers or Guarantors to comply with any material provision, unless with the prior consent of the Lender, of the letter of engagement dated as of August 29, 2016, between the Debtors and The Brownstein Corporation (the "**Brownstein Engagement Letter**") or (ii) the termination of such agreement for any reason without the prior written consent of the Lender;

(gg)  (i) the failure of Borrowers or Guarantors to engage and continue to employ an investment banker acceptable to the Lender, in its sole discretion, as required in the Ratification Agreement, or failure to comply with any material provision,

9

unless with the prior consent of the Lender, of the letter of engagement between the Debtors and the investment banker (the "**Investment Banker Engagement Letter**") or (ii) the termination of such agreement for any reason without the prior written consent of the Lender the failure of the Borrowers or Guarantor to comply with the terms and conditions of the Ratification Agreement;

(hh)    the sale by the Borrowers or Guarantor of all or substantially all of their assets without fully paying and satisfying all Obligations to the Lender; and

(ii)    any Material Budget Deviation, as defined in Section 5.3(d) of the Ratification Agreement.  [Ratification and Amendment Agreement, pages 19-21.]

m.    ***Grant of Security Interest***: As collateral security for the prompt performance, observance and payment in full of all of the Obligations (including the Pre-Petition Obligations and the Post-Petition Obligations), Borrowers and Guarantors, each as Debtor and Debtor-in-Possession, hereby grant, pledge and assign to the Lender and also confirm, reaffirm and restate the prior grant to Lender of, continuing senior priority security interests in and liens upon, and rights of setoff against, all of the Collateral.  Upon entry of a final order, liens on the proceeds of Avoidance Actions. **[**Ratification and Amendment Agreement, page 12**]**

n.    ***Adequate Protection:*** As described by Lender in section 2.5 of the Interim Order [Interim Order, Sec. 2.5]

o.    ***Lien Priority:*** The liens and security interests of Lender granted under the Credit Documents and this Interim Order in the Collateral securing all Obligations (as defined in Ratification Agreement) shall be first and senior in priority to all other interests and liens of every kind, nature and description, whether created consensually, by an order of the Court or otherwise, including, without limitation, liens or interests granted in favor of third parties in conjunction with §§ 363, 364 or any other section of the Bankruptcy Code or other applicable law; provided, however, that Lender's liens on and security interests in the Collateral shall be subject only to (a) Permitted Encumbrances (and the Floor Plan Intercreditor Agreement and the Subordinated Lender Intercreditor Agreement where applicable), and (b) the Carve-Out (as defined below) solely to the extent provided for in this Interim Order (the foregoing clauses (a) and (b) are collectively referred to herein as the "Permitted Liens and Claims"). [Interim Order, page 22]

p.    ***Cross Collateralization:*** [Ratification and Amendment Agreement, Sec. 1.2(j) and Interim Order, Sec. 2.1(a)]

q.     ***Rollup:*** Lenders will receive a gradual roll up of the prepetition revolving obligations into the post-petition obligations during the period covered by the Interim Order. Upon entry of the Final Order, the full amount of the prepetition obligations will be rolled into the post-petition obligations. [Ratification and Amendment Agreement, Sec. 1.2(j) and Interim Order, Sec. 2.1(a)]

r.     ***Representations and Warranties Relating to Collateral***:     [Ratification and Amendment Agreement, pages 12-14]

s.     ***Joint Liability of Debtors:*** Debtors seek authorization for (a) Binder Machinery Co., LLC, as debtor and debtor-in-possession ("Machinery"), Binder Realty of South Plainfield, LLC, as debtor and debtor-in-possession ("South Plainfield"), and Binder Realty of Winslow, LLC, as debtor and debtor-in-possession ("Winslow", and together with Machinery, and South Plainfield, the "Debtor Borrowers") to obtain, and (b) Rocbin Investment Corp., as debtor and debtor-in-possession ("Rocbin"), and Binder Managerial Services LLC, as debtor and debtor-in-possession ("Managerial" and together with Rocbin, (the "Debtor Guarantors"), to guarantee, unconditionally, on a joint and several basis, up to $17,237,500 million in post-petition financing [Ratification and Amendment Agreement, page 1]

t.     ***Deadline for Sale:*** Debtors covenant and agree to satisfy each of the following conditions:

(a)     On or before the fifth (5th) day following the Petition Date, the Debtors shall file a motion, in form and substance satisfactory to the Lender, requesting approval from the Bankruptcy Court on an emergent basis to retain a nationally or regionally recognized investment banking firm, acceptable to the Lender in its sole discretion, on terms and conditions acceptable to Lender ("Investment Banker") to conduct the marketing and sale process for all or substantially all of the assets of each Borrower and Guarantor;

(b)     On or before the twentieth (20th) day following the Petition Date, the Bankruptcy Court shall have entered an order, in form and substance satisfactory to Lender, authorizing the retention of the Investment Banker on terms and conditions acceptable to Lender;

(c)     On or before the fifth (5th) day following the Petition Date, the Debtors shall file a motion, in form and substance satisfactory to the Lender, requesting approval from the Bankruptcy Court of bidding and auction procedures, in form and substance satisfactory to Lender, in connection with the sale or sales of all or substantially all of the Debtors' assets and properties (the "Bidding Procedures Motion");

(d)     On or before the twentieth (20th) day following the Petition Date, the Bankruptcy Court shall have entered an order, in form and substance satisfactory

to Lender, approving the Bidding Procedures Motion (the "Bidding Procedures Order");

(e)     On or before the fiftieth (50th) day following the Petition Date, the qualifying bid deadline shall have occurred in accordance with the Bidding Procedures Order;

(f)     On or before the fifty-fifth (55th) day following the Petition Date, the Debtors shall conduct an auction in accordance with the Bidding Procedures Order to select the highest and best bid(s) for the sale of all or substantially all of the Debtors' assets in accordance with the Bidding Procedures Order, which bid shall provide for, among other things, a minimum cash amount not less than the amount required to satisfy the Obligations owed to Lender in full in cash on or before the sixty-first (61st) day following the Petition Date, and copies of which shall be provided to the Lender;

(g)     On or before the sixtieth (60th) day following the Petition Date, the Bankruptcy Court shall have entered an order (the "Sale Order"), which order shall provide for, among other things, distribution of sale proceeds to Lender in a minimum cash amount not less than the amount required to satisfy the Obligations owed to Lender in full in cash on or before the sixty-first (61st) day following the Petition Date, and otherwise in form and substance satisfactory to Lender, approving the sale or sales of all or substantially of the Debtors' assets, on terms and conditions acceptable to Lender (the "363 Sale"), and authorizing and directing that all proceeds from the 363 Sale be remitted to Lender for application against and permanent reduction of the Obligations;

(h)     On or before the sixty-fifth (65th) day following the Petition Date, the Debtors shall have consummated the 363 Sale; and

(i)     On or before the sixtieth (60th) day following the Petition Date the Borrowers shall have received court approval to extend the general time period to accept/reject leases from the permitted 120 day time period to not less than 210 days. [Ratification and Amendment Agreement, Sec. 5.4]

u.     *Effectiveness***:** The Ratification Agreement shall become effective upon its execution by the Borrowers, Guarantors, Lender and the entry of the Interim Financing Order. [Ratification and Amendment Agreement, page 26.]

## Jurisdiction

2.     The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 1334.

This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

3.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The bases for the relief requested herein are sections 105, 361, 362, 363 and 364 of title 11 of the United States Code, 11 U.S.C. §§ 101 – 1532 (the "Bankruptcy Code"), Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Local Rules of Bankruptcy Practice and Procedure (the "Local Rules").

**Background**

5.      On September 20, 2016 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief with the Court under chapter 11 of the Bankruptcy Code.  The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases (the "Chapter 11 Cases") and, as of the date of the filing of this Motion, no official committees have been appointed or designated. Concurrently with the filing of this Motion, the Debtors have sought procedural consolidation and joint administration of these Chapter 11 Cases.

6.      The factual background relating to the Debtors' commencement of these Chapter 11 cases is set forth in detail in the Binder Certification and incorporated herein by reference.

7.      The Debtors are parties to a December 4, 2015 Loan Agreement, as may be amended, supplemented, amended and restated or otherwise modified from time to time, (the "Callidus Credit Facility") with Callidus Capital Corporation ("Callidus" or the "DIP Lender").

8.      Each of the Debtors is a borrower and/or guarantor under the Callidus Credit Facility.

9.      The Callidus Credit Facility is secured by first priority liens on and security interests in substantially all of the Debtors' real and personal property (collectively, the "Prepetition Collateral"), subject to permitted liens, including, without limitation, the Debtors' cash and cash equivalents and the real property on which the Debtors' corporate headquarters is

13

located at 2820 Hamilton Boulevard, South Plainfield, New Jersey and its secondary location at 201 North Route 73, Winslow, New Jersey.

10.    Also as of the Petition Date, Debtor Binder is party to certain distributor agreements (the "Distributor Agreements") with Komatsu America Corp. and its affiliates (collectively, "Komatsu"), the manufacturer and worldwide distributor of the Japanese Komatsu heavy machinery products.   The franchise relationship between Binder and Komatsu was originally established in 1982, and subsequently set forth in at least four Distributor Agreements. In connection with the Distributor Agreements, Komatsu extended certain credit facilities to Binder for the purpose of providing floor plan financing and facilitating the purchase of Komatsu products (the "Komatsu Credit Facility").  The Komatsu Credit Facility consists of a $5.9 million note for the purchase of parts and approximately $25 million in floor plan financing.  Under the Komatsu Credit Facility, Komatsu retains senior liens and interests on all Komatsu equipment.

11.    Also, as of the Petition Date, the Debtor Binder is a party to certain prepetition credit facility with Sandton Capital Partners, which was acquired by Sandton from Sun National Bank (the "Sandton Credit Facility").

12.    Also, as of the Petition Date, the Debtor Binder is a party to a certain note in the amount of $1,421,819.20 with Morris BMC Funding, LLC (the "Morris Loan"). This note was intended to be secured by a third lien on all of the Debtors' assets but the security documents and the inter-creditor agreement required by the Debtors' senior lender were not completed prior to the filing of the petitions in these cases.

13.    The relative rights and priorities with respect to the Callidus Credit Facility, the Komatsu Credit Facility and the Sandton Credit Facility are governed by various Intercreditor Agreements dated as of December 4, 2015, by and among Binder, Callidus, Sandton, and

14

Komatsu, which set forth the relative priorities of their respective liens and security interests in the property of the Debtors.  Together, Callidus, Sandton, and Komatsu are referred to as the "Lenders")

14.    As of August 2016, the Debtors were obligated under the Callidus Credit Facility in the approximate aggregate principal amount of $15,800,000.

15.    As of August 2016, the Debtors were obligated under the Komatsu Credit Facility in the approximate aggregate principal amount of $25,000,000.

16.    As of August 2016, the Debtors were obligated under the Sandton Credit Facility in the approximate aggregate principal amount of $2.0 million.

17.    As of August 2016, the Debtors were obligated under the Morris Loan in the approximate aggregate principal amount of $1,421,819.

18.    Binder's revenues are generated from machinery sales, rentals, parts, and services. Employing 87 individuals and enjoying a customer base of approximately 4,000 construction contractors, Binder has been a profitable and successful family owned business since it was founded in 1957.  As fully set forth in the Binder Certification, during the economic recession, Binder encountered difficulty servicing its senior debt with Komatsu and Sun National Bank, predecessor in interest to Sandton with respect to the Sandton Credit Facility.  In 2015, Binder entered into a financing arrangement with Morris BMC Funding, LLC, which in May of 2016 was restructured as the Morris Loan.  Also in 2015, Binder was able to substantially refinance the Sandton Credit Facility through the Callidus Credit Facility with Callidus.  As Binder begins again to generate positive EBITDA and increase market share, it is seeking the protections of chapter 11 in order to restructure its balance sheet and streamline its operations, to the benefit of

15

all creditors and parties in interest.  The Debtors intend to use cash collateral to operate their business while they explore various restructuring alternatives.

**Relief Requested**

19.    By this Motion, pursuant to sections 105, 361, 363 and 364 of the Bankruptcy Code and Bankruptcy Rules 4001 and 9014, the Debtors request that the Court grant the following relief as provided for in the Interim Order and the Final Order:

a.  authorization for (a) Binder Machinery Co., LLC, as debtor and debtor-in-possession ("Machinery"), Binder Realty of South Plainfield, LLC, as debtor and debtor-in-possession ("South Plainfield"),  and Binder Realty of Winslow, LLC, as debtor and debtor-in-possession ("Winslow", and together with Machinery, and South Plainfield, the "Debtor Borrowers") to obtain, and (b) Rocbin Investment Corp., as debtor and debtor-in-possession ("Rocbin"), and Binder Managerial Services LLC, as debtor and debtor-in-possession ("Managerial" and together with Rocbin, (the "Debtor Guarantors"), to guarantee, unconditionally, on a joint and several basis, up to $[17,055,669] million in post-petition financing from Callidus Capital Corporation ("Lender") in accordance with all of the lending formulae, sublimits, term and conditions set forth in the Pre-Petition Loan Agreement, as amended and ratified by the Ratification Agreement (as defined below), the accompanying Budget (as defined below) and in accordance with this order ("Interim Order"), secured by perfected senior priority security interests in and liens on the Collateral (as defined below), pursuant to §§ 364(c)(2) and 364(c)(3) of the Bankruptcy Code;

b.  authorization for the Debtor Borrowers and Debtor Guarantors (each individually, a "Debtor Loan Party" and collectively, the "Debtor Loan Parties") to execute, deliver and enter into the Ratification and Amendment Agreement, dated as of September [_], 2016, by and among Lender, Debtor Borrowers, Debtor Guarantors and Individual Guarantor (as defined below) (the "Ratification Agreement" a copy of which is attached as Exhibit 1 and is incorporated herein), which ratifies, extends, adopts and amends the Pre-Petition Loan Agreement and the other Pre-Petition Credit Documents (each as defined below);

c.  authorization for the Debtor Loan Parties to grant superpriority administrative claim status, pursuant to § 364(c)(1) of the Bankruptcy Code, to Lender, in respect of all Pre-Petition Obligations and Post-Petition Obligations (each as defined in the Ratification Agreement);

d.  as set forth below, approval of certain stipulations by the Debtors as set forth in this Interim Order in connection with the Existing Loan Documents;

16

e.  as set forth below, authorization to provide adequate protection to (a) Pre-Petition Lender, (b) Floor Plan Lenders (as defined below) and (c) Subordinated Lender (as defined below);

f.  authorization for the Debtor Loan Parties to use "cash collateral" as such term is defined in Section 363 of the Bankruptcy Code, subject to the liens and security interests of Lender, Pre-Petition Lender, Floor Plan Lenders and Subordinated Lender;

g.  effective only upon entry of a Final Order (as defined below), the waiver of the Debtors' right to assert claims to surcharge against the Collateral (as defined below) pursuant to § 506(c) of the Bankruptcy Code and any "equities of the case" exception in Section 552(b) of the Bankruptcy Code, to the extent set forth below;

h.  the vacation and modification of the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of this Interim Order to the extent hereinafter set forth;

i.  the setting of a final hearing on the Motion ("Final Hearing") to consider entry of a final order (the "Final Order") authorizing, among other things, the borrowing under the Post-Petition Credit Documents on a final basis, as set forth in the Motion and the Ratification Agreement filed with the Court, including the granting to Lender the senior security interests and liens described above and super-priority administrative expense claims; and

j.  related relief.

**Basis for Debtor-in-Possession Financing Relief**

20.    On an interim basis, the DIP Lender has offered to provide the Debtors with access to a portion of the DIP Facility to satisfy certain post-petition operating expenses and administrative expenses as set forth in the budget attached to the Ratification and Amendment Agreement as **Exhibit A** (the "Interim Budget").  In connection with the Final Hearing, the Debtors intend to file a final budget (the "Final Budget").

21.    Pursuant to section 364(c) and (d) of the Bankruptcy Code, the Debtors respectfully request that this Court enter an Interim Order approving the DIP Facility on an emergency, interim basis.  This financing is necessary for the Debtors to continue operations until they can seek final Court approval.

17

22.     After extensive efforts to obtain post-petition financing on terms more favorable than the DIP Facility offered by the DIP Lender, the Debtors have reasonably determined that the DIP Facility offered by the DIP Lender provides terms most favorable to the Debtors and their estates.

23.     The Debtors have sought unsecured financing as well as secured financing from a variety of lending sources, including investors, traditional banks, and other financial firms, but none has offered to provide the financing needed by the Debtors to continue their operations in Chapter 11 pending a sale of the Debtors' business.

24.     The DIP Lender is the senior secured pre-petition creditor on most of the Debtors' assets, with a valid, perfected, first-priority security interest in such assets of the Debtors.

25.     In the sound exercise of its business judgment and fiduciary duties, the Debtors have determined to proceed under the DIP Facility offered by the DIP Lender, which will benefit the estates generally and provide the Debtors with the ability to continue operations as they seek to reorganize under Chapter 11.

26.     Approval of the DIP Facility on an interim basis will provide the Debtors with immediate access to borrowing availability to pay its current and ongoing operating expenses, including post-petition wages, until a final hearing can be scheduled.  On a final basis, the DIP Facility will provide the Debtors with the ability to pay ongoing operating expenses, including post-petition wages and Allowed Administrative Expenses until the Debtors' business can be sold.  Unless these expenses are paid, the Debtors will be forced to cease operations, which would likely:  (i) result in irreparable harm to its business and (ii) jeopardize the Debtors' ability to reorganize and maximize value for all interested parties.  The credit provided under the Ratification and Amendment Agreement will enable the Debtors to continue to satisfy its

vendors, pay employees and operate their business in the ordinary course and in an orderly and reasonable manner to preserve the value of its estate for the benefit of the Debtors' creditors. The availability of credit under the Ratification and Amendment Agreement will provide confidence to the Debtors' franchisors and customers that will enable and encourage them to continue their relationships with the Debtors.  Finally, the implementation of the Ratification and Amendment Agreement will be viewed favorably by the Debtors' vendors and employees and promote a successful reorganization.  Accordingly, the timely approval of the relief requested herein is imperative.

27.    Section 364(c) of the Bankruptcy Code provides, among other things, that if a debtor is unable to obtain unsecured credit allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code, the court may authorize the debtor to obtain credit or incur debt:  (a) with priority over any and all administrative expenses, as specified in section 503(b) or 507(b) of the Bankruptcy Code; (b) secured by a lien on property of the estate that is not otherwise subject to a lien; or (c) secured by a junior lien on property of the estate that is subject to a lien.  11 U.S.C. § 364.  The Debtors propose to obtain the financing set forth in the Ratification and Amendment Agreement by providing, inter alia, security interests and liens pursuant to section 364(c) of the Bankruptcy Code.

28.    The Debtors' liquidity needs can be satisfied only if the Debtors are authorized to borrow under the DIP Facility and to use such proceeds to fund their operations.  The Debtors have been unable to procure sufficient financing in the form of unsecured credit allowable under section 503(b)(1), as an administrative expense under section 364(a) or (b) or in exchange for the grant of a superpriority administrative expense claim pursuant to section 364(c)(1).  The Debtors

have sought such funding from numerous sources prior to initiating these cases, none of which was willing to lend funds on an unsecured basis or on terms more favorable than the DIP Lender.

29.     The Debtors believe it would not be able to obtain postpetition financing or other financial accommodations from any alternative DIP Lender on more favorable terms and conditions than those for which approval is sought herein.

30.     Bankruptcy courts grant a debtor considerable deference in acting in accordance with its business judgment. *See, e.g., Bray v. Shenandoah Fed. Sav. & Loan Ass'n (In re Snowshoe Co.)*, 789 F.2d 1085, 1088 (4th Cir. 1986); *In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) ("cases consistently reflect that the court's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit parties in interest"); *see also In re Funding Sys. Asset Mgmt. Corp.*, 72 B.R. 87 (Bankr. W.D. Pa. 1987); *In re Curlew Valley Assocs.*, 14 B.R. 506, 513-14 (Bankr. D. Utah 1981); *In re Simasko Prod. Co.*, 47 B.R. 444,449 (D. Colo. 1985).

31.     Due to the nature of the Debtors' business, the vast majority of its assets are non-liquid and all are presently encumbered by at least one secured creditor.  The Debtors have been unable to procure the funding required to meet their ongoing operational needs absent granting the proposed claims and liens on their assets as set forth in the Ratification and Amendment Agreement.  The Debtors submit that the circumstances of this case require the Debtors to obtain financing pursuant to section 364(c) of the Bankruptcy Code and, accordingly, the Ratification and Amendment Agreement reflects the exercise of its sound business judgment.

32.    The terms and conditions of the Ratification and Amendment Agreement are fair and reasonable and were negotiated extensively by the parties in good faith and at arms' length. Accordingly, the DIP Lender and all obligations incurred under the Ratification and Amendment Agreement should be accorded the benefits of section 364(e) of the Bankruptcy Code.

## Basis for Cash Collateral Relief

### A.  The Debtors Require Use of the Cash Collateral.

33.    As set forth above, the Debtors have an urgent need for debtor-in-possession financing, which includes use of the Cash Collateral pending the final hearing on this Motion on the terms set forth in the Ratification and Amendment Agreement.  Cash Collateral in this case consists of each of the Lenders' interests in the Collateral which supports the debtor-in-possession financing.  Accordingly, the Debtors seek to use Cash Collateral existing on or after the Petition Date that is subject to the DIP Lender's post-petition liens and each of the Lenders' pre-petition liens and security interests on the terms set forth in the Ratification and Amendment Agreement.  As of the Petition Date, the Debtors do not have sufficient unencumbered cash to fund their business operations and pay present operating expenses.

34.    Absent the ability to obtain debtor-in-possession financing and use Cash Collateral, the Debtors will not be able to pay insurance, wages, rent, utility charges, and other critical operating expenses.  Consequently, without access to Cash Collateral, the Debtors will not be able to maintain their business operations and continue their restructuring efforts, and would likely be forced to cease operations and liquidate.  As such, the Debtors' estates would be immediately and irreparably harmed.

35.    If the Debtors are unable to obtain sufficient operating liquidity to meet their postpetition obligations on a timely basis, a permanent and irreplaceable loss of business will occur, causing a loss of value to the detriment of the Debtors and their creditors.  This potential

119065003_2

loss of revenue and going concern value would be extremely harmful to the Debtors, their estates and their creditors at this critical juncture. The Debtors cannot obtain funds sufficient to administer their estates and operate their businesses other than by obtaining the relief requested herein pursuant to section 363 of the Bankruptcy Code.

36.     The Debtors' management has formulated the Budget for the use of debtor-in-possession financing and Cash Collateral from the Petition Date through nine weeks hereafter. The Debtors believe that the Budget includes all reasonable, necessary and foreseeable expenses to be incurred in the ordinary course in connection with the operation of their businesses and their restructuring efforts for the period set forth in the Budget. The Debtors also believe that the use of Cash Collateral in accordance with the Budget will provide the Debtors with adequate liquidity to pay administrative expenses as they become due and payable during the period covered by the Budget.

37.     The Debtors' right to use Cash Collateral on the terms set forth in the Ratification and Amendment Agreement, as approved by the Interim Order shall commence on the date of the entry of the Interim Order and expire on the earlier of (a) the entry of a subsequent interim order, or (b) the entry of the Final Order.

**B.      The Interests of the Lenders Are Adequately Protected.**

38.     Pursuant to section 363(c)(2) of the Bankruptcy Code, a debtor in possession may only use "cash collateral" with the consent of the secured party with an interest therein or court approval. *See* 11 U.S.C. § 363(c)(2). Section 363(e) of the Bankruptcy Code provides that, upon request of an entity that has an interest in cash collateral sought to be used by a debtor, the court shall prohibit or condition such use of cash collateral as is necessary to provide adequate protection of such entity's interest. See 11 U.S.C. § 363(e).

39. Appropriate adequate protection is decided on a case-by-case basis. *See, e.g., In re Snowshoe Co.*, 789 F.2d 1085, 1088 (4th Cir. 1986); *In re Mosello*, 195 B.R. 277, 289 (Bankr. S.D.N.Y. 1996); *In re Beker Indus. Corp.*, 58 B.R. 725 (Bankr. S.D.N.Y. 1986); *see also In re JKJ Chevrolet, Inc.*, 190 B.R. 542, 545 (Bankr. E.D. Va. 1995) (adequate protection is a flexible concept that is determined by considering the facts of each case) (citing *In re O'Connor*, 808 F.2d 1393, 1396-97 (10th Cir. 1987). Although adequate protection is not defined in the Bankruptcy Code, section 361 of the Bankruptcy Code provides the following three (3) nonexclusive examples of what may constitute adequate protection:

(1) requiring the [debtor] to make a cash payment or periodic cash payments to such entity, to the extent that the . . . use . . . under section 363 . . . results in a decrease in the value of such entity's interest in such property;

(2) providing to such entity an additional or replacement lien to the extent that such . . . use . . . results in a decrease in the value of such entity's interest in such property; or

(3) granting such other relief . . . as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

11 U.S.C. § 361. Essentially, with the provision of adequate protection, the Bankruptcy Code seeks to shield a secured creditor from diminution in the value of its interest in the particular collateral during the period of use. *See In re Hubbard Power & Light*, 202 B.R. 680, 685 (Bankr. E.D.N.Y. 1996); *In re 495 Cent. Park Ave. Corp.*, 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992); *In re Beker Indus. Corp.*, 58 B.R. at 736; *see also In re Nice*, 355 B.R. 554, 563 (Bankr. N.D. Va. 2006) ("adequate protection is solely a function of preserving the value of the creditor's secured claim as of the petition date due to a debtor's continued use of collateral"). The Debtors assert that the Lenders are adequately protected by the granting of replacement liens as set forth in the Ratification and Amendment Agreement, and the continuation of the Debtors' business.

*Replacement Liens*

40.    As adequate protection for any diminution in value of the Lenders' interests, the Debtors request that the Court grant the Lenders security interests ("Replacement Liens") equivalent to a lien granted under section 364(c)(2) and (3) of the Bankruptcy Code, as applicable, in and upon the Debtors' real and personal property and the Cash Collateral, whether such property was acquired before or after the Petition Date, to the extent provided in the Ratification and Amendment Agreement.  If granted, the Replacement Liens will adequately protect the Lenders' interests from any potential depreciation and deterioration consistent with the terms of the Intercreditor Agreements previously negotiated among the Lenders and the Debtors with respect to the pre-petition Collateral.  The Debtors' business is presently in its most profitable quarter of the year; therefore, the collateral securing the Replacement Liens should be more than adequate to protect the Lenders' interests from depreciation and deterioration.

*Continued Operation of the Debtors' Business*

41.    In addition to the proposed Replacement Liens, the Lenders are also adequately protected as a result of the continuation of the Debtors' business operations.  Without the use of the Cash Collateral, the Debtors would forego business opportunities and their operations would be irreparably harmed.  Indeed, absent use of the Cash Collateral, the Debtors likely will be unable to pay their ordinary business expenses, including employee wages.  In that event, all operations will cease, employees will be terminated, and all assets on which the Lenders assert a lien will be liquidated. Those pledged assets will be worth less in a liquidation than they will be worth as a going concern reorganization.  Since the Debtors have generated positive EBITDA in the past and project positive EBITDA for the future, use of cash collateral to operate the business and maintain going concern value provides adequate protection to the Lenders. As going concern value exceeds liquidation value, adequate protection is being provided.

24

42.    The continuation of the Debtors' operations likely presents the best opportunity for the Lenders to receive the greatest recovery on account of their respective claims. Accordingly, the Debtors submit that use of the Cash Collateral will allow the Debtors to continue their operations and, thereby, protect the Lenders' interests. Courts have recognized that the preservation of the going concern value of secured lender's collateral constitutes adequate protection of such creditor's interest in the collateral. *See, e.g., In re Pursuit Athletic Footwear, Inc.*, 193 B.R. 713, 716 (Bankr. D. Del. 1996) (holding that if there is no actual diminution of value of collateral and the debtor can operate profitably post-petition, then the secured creditor is adequately protected); *In re 499 W. Warren Street Assocs., Ltd. P'ship*, 142 B.R. 53, 56 (Bankr. N.D.N.Y. 1992) (where the court found a secured creditor's interest in collateral adequately protected when cash collateral was applied to normal operating and maintenance expenditures on the collateral property); *In re Willowood E. Apartments of Indianapolis II, Ltd.*, 114 B.R. 138, 143 (Bankr. S.D. Ohio 1990) (same); *In re Stein*, 19 B.R. 458, 460 (Bankr. E.D. Pa. 1982) (creditor's secured position would be enhanced by the continued operation of the debtor's business); *In re Aqua Assocs.*, 124 B.R. 192, 196 (Bankr. E.D. Pa. 1991) ("The important question, in determining whether the protection to a creditor's secured interest is adequate, is whether that interest, whatever it is, is being unjustifiably jeopardized.") (citation omitted).

*Additional Protections for DIP Lender*

43.    In addition to the Replacement Liens and benefit of the Debtors maintaining their business pending a sale, on an interim basis, the Debtors' obligations to the DIP Lender, whether arising pre- or post-petition, will become partially cross-collateralized as set forth in the Ratification and Amendment Agreement. On a final basis, all of the Debtors' obligations to the DIP Lender, whether arising pre- or post-petition, will become fully cross-collateralized. The

25

DIP Lender will also obtain a lien on the proceeds of actions brought pursuant to Chapter V of the Bankruptcy Code.

44.     The Debtors submit that the Lenders are adequately protected by the proposed Replacement Liens in the Collateral and by maintaining the business of the Debtors as a going concern and thereby preventing any diminution in the value of the Prepetition Collateral. Further, the Debtors submit that the DIP Lender is adequately protected by the proposed cross-collateralization and liens on the proceeds of Chapter 5 actions.

## The Automatic Stay Should Be Modified on a Limited Basis

45.     The relief requested herein contemplates a modification of the automatic stay (to the extent applicable) to permit the Debtors to:  (i) grant the security interests, liens and claims described above with respect to the DIP Lender and to perform such acts as may be requested to assure the perfection and priority of such security interests and liens; and (ii) implement the terms of the proposed Interim and Final Orders.

46.     Stay modifications of this kind are ordinary and standard features of post-petition debtor financing facilities and, in the Debtors' business judgment, are reasonable and fair under the present circumstances.

47.     The Debtors submit that the Lenders are adequately protected by the proposed Replacement Liens in the Collateral and by maintaining the business of the Debtors as a going concern and thereby preventing any diminution in the value of the Prepetition Collateral.

## Interim Approval Should Be Granted

48.     The Debtors respectfully request that the Court conduct an expedited preliminary hearing on this Motion and authorize the Debtors (from and after the entry of the Interim Order and pending the final hearing) to obtain debtor-in-possession financing on the terms set forth in

119065003_2

the Ratification and Amendment Agreement and use of the Cash Collateral in accordance with the Budget for, among other things, working capital purposes and the payment of certain obligations in accordance with the relief authorized by the Court.  Interim access to the debtor-in-possession financing and Cash Collateral will ensure that the Debtors maintain ongoing operations and avoid immediate and irreparable harm and prejudice to their estates and all parties in interest pending the Final Hearing.

49.    The Debtors submit that, for the reasons set forth herein, immediate access to the debtor-in-possession financing and use of Cash Collateral (first, on an interim basis as requested in this Motion) on the terms set forth in the Budget, is necessary to preserve the value of the Debtors' estates for the benefit of all parties in interest.

## Request for Final Hearing

50.    Pursuant to Bankruptcy Rule 4001(b)(2), the Debtors request that the Court set a date for the Final Hearing that is as soon as practicable, but in no event later than twenty-one (21) days following the entry of the Interim Order, and fix the time and date prior to the Final Hearing for parties to file objections to this Motion.

## Waiver of Bankruptcy Rules Regarding Notice and Stay of an Order

51.    To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and any stay of an order granting the relief requested herein pursuant to Bankruptcy Rules 6004(h), 7062, 9014, or Local Rule 9013-1(b).

## Waiver of Memorandum of Law

52.    In accordance with Local Rule 9013-1(a)(3), no brief is being filed in support of this Motion because the legal principles involved are not novel or in dispute and are adequately set forth in the Certification.

## Notice

53.     The Debtors have provided notice of this Motion to:  (a) the Office of the United States Trustee for the District of New Jersey; (b) the entities listed on the Consolidated List of Creditors Holding the 30 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d); (c) counsel to Sandton Capital Partners, LP; (d) counsel to Komatsu America Corp.; (e) the Internal Revenue Service; (f) the banks that process disbursements in the Debtors' cash management system; (g) Callidus and (i) Joseph Morris.  In light of the nature of the relief requested, the Debtors respectfully submit that no further notice is necessary.

WHEREFORE, for the reasons set forth herein and in the Binder Certification, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as **Exhibit A**; and grant such other and further relief as is just and proper.

Dated:  September 20, 2016                     Respectfully submitted,

/s/ Anne M. Aaronson
**DILWORTH PAXSON LLP**
Lawrence G. McMichael
Anne M. Aaronson
Catherine G. Pappas
1500 Market St., Suite 3500E
Philadelphia, PA 19102
Telephone:  (215) 575-7000
Facsimile:  (215) 575-7200


*Proposed Counsel for the Debtors and Debtors in Possession*