## EXHIBIT 1

**DIP Credit Agreement**

RATIFICATION AND AMENDMENT AGREEMENT

This RATIFICATION AND AMENDMENT AGREEMENT (the "**Ratification Agreement**"), dated as of September [__], 2016, is by and between Binder Machinery Co., LLC, a New Jersey limited liability company as a Debtor and Debtor-in-Possession ("**Machinery**"), Binder Realty of South Plainfield, LLC,  a New Jersey limited liability company as a Debtor and Debtor-in-Possession ("**South Plainfield**") and Binder Realty of Winslow LLC, a New Jersey limited liability company as a Debtor and Debtor-in-Possession ("**Winslow**" and together with Machinery and South Plainfield "**Pre-Petition Borrowers**"), Rocbin Investment Corporation, a New Jersey corporation as a Debtor and Debtor-in-Possession ("**RIC**"), Binder Managerial Services, LLC, a New Jersey limited liability company as a Debtor and Debtor-in-Possession ("**BMS**" together with RIC, the "**Pre-Petition Entity Guarantors**" and together with the Pre-Petition Borrowers, the "**Debtors**" or the "**Borrowers**"), and Robert Binder, an individual ("**R. Binder**" and together with the Pre-Petition Entity Guarantors, the "**Guarantors**"), on the one hand, and Callidus Capital Corporation ("**Lender**"), on the other hand.  Borrowers and Lender is referred to collectively as "**Parties**", and individually as a "**Party**".

W I T N E S S E T H:

WHEREAS, Pre-Petition Borrowers and Pre-Petition Entity Guarantors (collectively, the "**Debtors**"), have commenced cases under Chapter 11 of the Bankruptcy Code (as defined herein) in the United States Bankruptcy Court for the District of New Jersey and each Pre-Petition Borrower and each Pre-Petition Entity Guarantor has retained possession of its assets and is authorized under the Bankruptcy Code to continue the operation of its businesses as a debtor-in-possession;

WHEREAS, prior to the commencement of the Chapter 11 Case (as defined below), Lender made loans and advances and provided other financial or credit accommodations to Pre-Petition Borrowers secured by substantially all assets and properties of Pre-Petition Borrowers and Pre-Petition Entity Guarantors and R. Binder guaranteed the payment and performance of the Pre-Petition Borrowers and Pre-Petition Entity Guarantors to the Lender, as set forth in the Pre-Petition Credit Documents (as defined below);

WHEREAS, the Debtors are requesting that the Bankruptcy Court enter a Financing Order (defined below) pursuant to which Lender may make post-petition loans and advances, and provide other financial accommodations, to Borrowers secured by substantially all the assets and properties of Borrowers and Guarantors as set forth in the Financing Order and the Credit Documents (as defined below);

WHEREAS, Borrowers and Guarantors have requested that Lender make post-petition loans and advances and provide other financial or credit accommodations to Borrowers and make certain amendments to the Pre-Petition Loan Agreement (as defined below) and the other Pre-Petition Credit Documents (as defined below), and Lender is willing to do so, subject to the terms and conditions contained herein; and

WHEREAS, Borrowers, and Guarantors desire to reaffirm their obligations to Lender pursuant to the Pre-Petition Credit Documents and acknowledge their continuing liabilities to Lender thereunder in order to induce Lender to make such post-petition loans and advances, and provide other financial accommodations, to Borrowers secured by substantially all the assets and properties of Borrowers and Guarantors set forth in the Financing Order.

NOW, THEREFORE, in consideration of the foregoing, the mutual covenants and agreements contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Lender, Borrowers and Guarantors mutually covenant, warrant and agree as follows:

1.    <u>DEFINITIONS</u>.

1.1    <u>Additional Definitions</u>.  As used herein, the following terms shall have the respective meanings given to them below and the Pre-Petition Loan Agreement and the other Pre-Petition Credit Documents shall be deemed and are hereby amended to include, in addition and not in limitation, each of the following definitions:

(a)    "**Adequate Protection Liens**" means, collectively, the adequate protection liens granted in the Financing Order to (a) the Lender, (b) Floor Plan Lenders (as such term is defined in the Financing Order) and (c) Subordinated Lender (as such term is defined in the Financing Order).

(b)    "**Bankruptcy Court**" means the United States Bankruptcy Court or the United States District Court for the District of New Jersey.

(c)    "**Bankruptcy Code**" means the United States Bankruptcy Code, being Title 11 of the United States Code as enacted in 1978, as the same has heretofore been or may hereafter be amended, recodified, modified or supplemented, together with all rules, regulations and interpretations thereunder or related thereto.

(d)    "**Bankruptcy Events**" means the commencement of the Chapter 11 Case, the events and conditions leading up to the commencement of the Chapter 11 Case, the occurrence and existence of any defaults under agreements that have no effect under the terms of the Bankruptcy Code as a result of the commencement thereof.

(e)    "**Budget**" means the nine (9) week budget delivered to Lender in accordance with Section 5.3 of the Ratification Agreement (such initial Budget attached to the Ratification Agreement as <u>Exhibit A</u>, in form and substance approved by the Lender), together with any subsequent or amended budgets thereto delivered to Lender, in form and substance reasonably satisfactory to Lender (each such subsequent budget, a "Budget"), in accordance with the terms and conditions of the Ratification Agreement.

(a)    "**Carve-Out**" means the sum of (i) all allowed administrative expenses pursuant to 28 U.S.C. § 156(c) for fees required to be paid to the Clerk of the Bankruptcy Court and pursuant to 28 U.S.C. § 1930(a)(6) for fees payable to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code as determined

2

by agreement of the United States Trustee or by final order of the Bankruptcy Court (without regard to the notice set forth in (iii) below); (ii) all reasonable fees and expenses up to $100,000 incurred by a trustee under Section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iii) below); and (iii) to the extent allowed by the Bankruptcy Court at any time, whether by interim order, procedural order, or otherwise, an amount equal to One Hundred Thousand Dollars ($100,000) per month, or a pro rata portion thereof,  to be paid by the Lender to the Carve-Out Escrow Account prior to the delivery of a Carve-Out Trigger Notice (the "**Pre-Trigger Date Professional Fee Cap**") for the allowed fees, disbursements, costs and expenses of the Professionals incurred by such Professionals at any time before (but not after) the date of delivery by the Lender of a Carve-Out Trigger Notice (the "**Pre-Trigger Allowed Professional Fees**"); provided, that the Pre-Trigger Date Professional Fee Cap shall (A) not at any time exceed the aggregate amount of the fees and expenses identified in the Budget for each such Professional or category of Professional covering the period of time through (but not after) the date of delivery of a Carve-Out Trigger Notice, and (B) shall permanently reduce on a dollar for dollar basis in respect of the amount of any payment made from the Carve-Out Escrow Account or, without duplication, any amount of Pre-Trigger Allowed Professional Fees paid directly to any Professional entitled to receive payment from the Carve-Out Escrow Account; and (iv) to the extent allowed by the Bankruptcy Court at any time, whether by interim order, procedural order, or otherwise, all fees, disbursements, costs and expenses of the Professionals incurred on or after the first Business Day following the delivery of a Carve-Out Trigger Notice in an aggregate amount not to exceed $100,000 (the amount set forth in this clause (iv) being the "**Post- Carve-Out Trigger Notice Cap**").

(b)      "**Carve-Out Escrow Account**" means that certain trust account held by Dilworth Paxson LLP ("**Dilworth**") on behalf of the Borrowers, for the payment of Pre-Trigger Allowed Professional Fees funded by, or on behalf of, the Borrowers in accordance with the Budget, as and when such Pre-Trigger Allowed Professionals Fees are projected to be paid therein.  Dilworth shall be authorized to pay to the applicable Professionals from the funds in such account the amounts owed for such Pre-Trigger Allowed Professional Fees, as such fees become due and payable.

(c)      "**Carve-Out Trigger Notice**" shall mean a written notice delivered by email (or other electronic means) by the Lender to the Debtors, Debtors' lead counsel in the Chapter 11 Case, counsel to any Committee and the U.S. Trustee, which notice may be delivered following the occurrence and during the continuation of an Event of Default, stating that the Post Carve-Out Trigger Notice Cap has been invoked.

(d)      "**Chapter 11 Case**" means the cases under Chapter 11 of the Bankruptcy Code commenced by Debtors which are being jointly administered under the Bankruptcy Code and are pending in the Bankruptcy Court.

(e)      "**Committee**" means any official committee of unsecured creditors in the Chapter 11 Case pursuant to Section 1102 of the Bankruptcy Code.

(f)      "**Debtors**" means, collectively, Borrowers and Guarantors, each as Debtor and Debtor-in-Possession in the Chapter 11 Case.

3

(g)  **"Financing Order"** means the Interim Financing Order, the Permanent Financing Order and such other orders relating thereto or authorizing the granting of credit by Lender to Borrowers on an emergency, interim or permanent basis pursuant to Section 364 of the Bankruptcy Code as may be issued or entered by the Bankruptcy Court in the Chapter 11 Case.

(h)  **"Interim Financing Order"** means, the order of the Bankruptcy Court entered in the Chapter 11 Case after an interim hearing, in the form attached hereto as Exhibit B and/or otherwise in form and substance satisfactory to the Lender, together with all extension, modifications, and amendments thereto consented to by the Lender, which, among other matters but not by way of limitation, authorizing, on an interim basis, the Borrowers to execute and perform under the terms of the Pre-Petition Credit Documents, as amended and supplemented by the terms and conditions of the Ratification Agreement.

(i)  **"Loan Agreement"** means, the Pre-Petition Loan Agreement as ratified, amended, supplemented and otherwise modified by the Ratification Agreement, as the same now exists or may hereafter be amended from time to time.

(j)  **"Permanent Financing Order"** means, the order of the Bankruptcy Court entered in the Chapter 11 Case after a final hearing of the Bankruptcy Court, which order shall be in form and substance satisfactory to the Lender and from which no appeal or motion to reconsider has been filed, together with all extensions, modifications and amendments thereto, consented to by the Lender, which among other matters, but not by way of limitation, authorizing the Borrowers to obtain credit, incur the Post-Petition Obligations, and grant Liens therefor and granting super-priority expense claims to Lender with respect to all obligations due Lender, subject to no priority claim or administrative expenses of the Chapter 11 Case or any other entity (other than the Carve-Out and Pre-Petition Priority Liens).

(k)  **"Petition Date"** means the date of the commencement of the Chapter 11 Case.

(l)  **"Post-Petition Collateral"** means, collectively, all now existing and hereafter acquired real and personal property of each Debtor's estate, wherever located, of any kind, nature or description, including any such property in which a lien is granted to Lender pursuant to the Credit Documents, the Financing Order or any other order entered or issued by the Bankruptcy Court, and shall include, without limitation:

(i)  all of the Pre-Petition Collateral;

(ii)  all Accounts;

(iii)  all general intangibles, including, without limitation, all Intellectual Property;

(iv)  all goods, including, without limitation, Inventory and Equipment;

4

(v)     all real property owned by each Debtor and all fixtures and improvements thereon located, as more particularly set forth in the Mortgages (the "**Real Property**");

(vi)     all chattel paper, including, without limitation, all tangible and electronic chattel paper;

(vii)     all instruments, including, without limitation, all promissory notes;

(viii)     documents and all credit card sales drafts, credit card sales slips or charge slips or receipts, and other forms of store receipts;

(ix)     deposit accounts;

(x)     all letters of credit, banker's acceptances and similar instruments and including all letter-of-credit rights;

(xi)     all supporting obligations and all present and future liens, security interests, rights, remedies, title and interest in, to and in respect of Receivables and other Collateral, including (i) rights and remedies under or relating to guaranties, contracts of suretyship, letters of credit and credit and other insurance related to the Collateral, (ii) rights of stoppage in transit, replevin, repossession, reclamation and other rights and remedies of an unpaid vendor, lienor or secured party, (iii) goods described in invoices, documents, contracts or instruments with respect to, or otherwise representing or evidencing, Receivables or other Collateral, including returned, repossessed and reclaimed goods, and (iv) deposits by and property of account debtors or other persons securing the obligations of account debtors;

(xii)     all (i) investment property (including securities, whether certificated or uncertificated, securities accounts, security entitlements, commodity contracts or commodity accounts) and (ii) monies, credit balances, deposits and other property of any Debtor now or hereafter held or received by or in transit to Lender or at any depository or other institution from or for the account of any Debtor, whether for safekeeping, pledge, custody, transmission, collection or otherwise;

(xiii)     all commercial tort claims, including, without limitation, those identified in the Loan Agreement;

(xiv)     to the extent not otherwise described above, all Receivables;

(xv)     all Records;

(xvi)     all proceeds of any Excluded Contract;

(xvii)     effective upon entry of a Permanent Financing Order, all claims, rights, interests, assets and properties (recovered by or on behalf of each Borrower and Guarantor or any trustee of such Borrower or Guarantor (whether in the Chapter 11 Case or any

5

subsequent case to which any Chapter 11 Case is converted), including, without limitation, all property recovered as a result of transfers or obligations avoided or actions maintained or taken pursuant to (among others) Sections 542, 544, 545, 547, 548, 549, 550, 551, 552 and 553 of the Bankruptcy Code;

(xviii)  to the extent not covered by the foregoing clauses, all products and proceeds of the foregoing, in any form, including insurance proceeds and all claims against third parties for loss or damage to or destruction of or other involuntary conversion of any kind or nature of any or all of the other Collateral; and

Notwithstanding anything herein to the contrary, "Post-Petition Collateral" shall not include any security interests or liens (a) any executory contract or agreement to the extent the  contract or agreement does not permit the grant of a lien thereon and was not previously encumbered by security interest or liens in favor of Lender (the "**Excluded Contracts**"); or (b) on the Carve-Out Escrow Account.

(m)    "**Post-Petition Obligations**" means all Obligations (as defined in the Pre-Petition Loan Agreement) of any Debtor arising on and after the Petition Date and whether arising on or after the conversion or dismissal of the Chapter 11 Case, or before, during and after the confirmation of any plan of reorganization in the Chapter 11 Case, and whether arising under or related to this Ratification Agreement, the Loan Agreement, the other Credit Documents, a Financing Order, by operation of law or otherwise, and whether incurred by such Debtor as principal, surety, endorser, guarantor or otherwise and including, without limitation, all principal, interest, financing charges, letter of credit fees, unused line fees, servicing fees, line increase fees, debtor-in-possession facility fees, early termination fees, other fees, commissions, costs, expenses and attorneys', accountants' and consultants' fees and expenses incurred in connection with any of the foregoing.  For the avoidance of doubt, the Post-Petition Obligations shall include that portion of the outstanding Pre-Petition Obligations, which have been "rolled-up" from time to time as provided in the Financing Order.

(n)    "**Pre-Petition Collateral**" means, collectively, (i) all "Collateral" as such term is defined in the Pre-Petition Loan Agreement as in effect immediately prior to the Petition Date, (ii) all "Collateral" and "Pledged Property" as such terms are defined in each of the other Pre-Petition Credit Documents as in effect immediately prior to the Petition Date, and (iii) all other security for the Pre-Petition Obligations as provided in the Pre-Petition Loan Agreement and the other Pre-Petition Credit Documents immediately prior to the Petition Date.

(o)    "**Pre-Petition Credit Documents**" means the Credit Documents (as defined in the Pre-Petition Loan Agreement), as in effect immediately prior to the Petition Date.

(p)    "**Pre-Petition Loan Agreement**" means the Loan Agreement dated December 2, 2015, by and among Pre-Petition Borrowers, Guarantors and Lender (as amended by a certain Amended and Restated First Amendment to Loan and Security Agreement effective as of May 20, 2016 ("**A&R Amendment**"),  Second Amendment to Loan and Security Agreement effective as of August 1, 2016 ("**Second Amendment**") and Third Amendment to

6

Loan and Security Agreement effective as of September 1, 2016 ("**Third Amendment**"), as in effect immediately prior to the Petition Date.

(q)      **"Pre-Petition Obligations"** means all Obligations (as such term is defined in the Pre-Petition Loan Agreement) arising at any time before the Petition Date.

(r)      **"Pre-Petition Priority Liens"** means, collectively, the Liens permitted by the Pre-Petition Credit Documents, to the extent any such permitted Liens are valid, enforceable, properly perfected, non-avoidable and senior in priority to the Liens securing the Pre-Petition Obligations as of the Petition Date.

(s)      **"Professionals"** means the Debtors' and any Committee's professionals, retained by either of them by final order of the Bankruptcy Court (which order has not been reversed, vacated or stayed unless such stay is no longer effective) under Sections 327, 328 or 1103(a) of the Bankruptcy Code.

(t)      **"Ratification Agreement"** means the Ratification and Amendment Agreement, dated as of the September [__], 2016, by and among Borrowers, Guarantors and Lender, as the same may hereafter be amended, modified, supplemented, extended, renewed, restated or replaced.

(u)      **"Ratification Closing Date"** means the date on which all of the conditions precedent in Section 9 of the Ratification Agreement have been satisfied (or waived).

**1.2**      Amendments to Definitions.

(a)      Borrowers. Guarantors and Debtors.  All references to the terms "Borrowers", "Guarantors" or "Debtors" in the Credit Documents shall be deemed and each such reference is hereby amended to mean and include (as applicable) the Debtors, each as defined herein, and their successors and assigns (including any trustee or other fiduciary hereafter appointed as any Debtor's legal representative, as applicable, or with respect to any Debtor the property of the estate of such Debtor whether under Chapter 11 of the Bankruptcy Code or any subsequent Chapter 7 case or cases and its successor upon conclusion of the Chapter 11 Case of such Debtor, as the case may be).

(b)      Collateral.  All references to the term "Collateral" in the Loan Agreement or the other Credit Documents, or any other term referring to the security for the Pre-Petition Obligations, shall be deemed, and each such reference is hereby amended to mean, collectively, the Pre-Petition Collateral and the Post-Petition Collateral.

(c)      Credit Documents.  All references to the term "Credit Documents" in the Loan Agreement or the other Credit Documents shall be deemed, and each such reference is hereby amended, to include, in addition and not in limitation, this Ratification Agreement and all of the Pre-Petition Credit Documents, as ratified, assumed and adopted by each Borrower and Guarantor pursuant to the terms of the Ratification Agreement, as amended and supplemented thereby, and the Financing Order, as each of the same now exists or may hereafter be amended, modified, supplemented, extended, renewed, restated or replaced.

7

(d)    <u>Debtors</u>.  All references to Debtors, including, without limitation, to the terms "Borrower," "Borrowers," "Guarantor" or "Guarantors" in the Loan Agreement or the other Credit Documents shall be deemed, and each such reference is hereby amended, to mean and include the Debtors as defined herein, and their successors and assigns (including any trustee or other fiduciary hereafter appointed as its legal representative or with respect to the property of the estate of such corporation whether under Chapter 11 of the Bankruptcy Code or any subsequent Chapter 7 case and its successor upon conclusion of the Chapter 11 Case of such corporation.

(e)    <u>Indebtedness</u>.  The definition of "Indebtedness" in the Pre-Petition Loan Agreement is hereby amended by deleting clause (d) therein and replacing it with the following:

"(d) all other debts, claims and indebtedness, contingent, fixed or otherwise, heretofore, now and from time to time hereafter owing, due or payable, however evidenced, created, incurred, acquired or owing and however arising, whether under written or oral agreement, operation of law, or otherwise, including, without limitation, trade accounts payable or accrued obligations incurred in the ordinary course of business or during the pendency of the Chapter 11 Case and payable in accordance with the Budget,"

(f)    <u>Loan Agreement</u>.  All references to the term "Agreement" in the Pre-Petition Loan Agreement or the term "Loan Agreement" in the other Credit Documents shall be deemed, and each such reference is hereby amended, to mean the Loan Agreement (as defined in the Ratification Agreement), and as ratified, assumed and adopted by each Borrower and Guarantor pursuant to the terms hereof and the Financing Order.

(g)    <u>Material Adverse Change and Material Adverse Effect</u>.  All references to the term "Material Adverse Effect," "material adverse effect" or "Material Adverse Change" in the Loan Agreement, the Ratification Agreement or the other Credit Documents shall be deemed, and each such reference is hereby amended, to add at the end thereof:  "<u>provided, that</u>, the Bankruptcy Events shall not, individually or collectively, constitute a Material Adverse Effect or Material Adverse Change, as applicable."

(h)    <u>Maturity Date</u>.  The definition of "Maturity Date" in the Pre-Petition Loan Agreement is hereby deleted in its entirety and the following substituted therefor:

" '<u>Maturity Date</u>' shall mean the earliest to occur of (a) November 21, 2016, (b) fifteen (15) days after the entry of the Interim Financing Order if the Permanent Financing Order has not been entered prior to the expiration of such fifteen (15) day period (or such longer period if consented to in writing by the Lender), (c) the effective date of a plan of reorganization filed in the Chapter 11 Case pursuant to an order entered by the Bankruptcy Court, (d) the consummation of the sale or sales of all or substantially all of the Debtors' assets and properties, (e) the date the Bankruptcy Court orders the conversion of the bankruptcy case of any

8

Debtor to a Chapter 7 liquidation, (f) the date this Agreement is otherwise terminated for any reason whatsoever (including pursuant to Section 12.2) pursuant to the terms of this Agreement and (g) subject to the Financing Order, the acceleration of the Obligations or termination of the Commitments hereunder, including without limitation, as a result of the occurrence of an Event of Default."

(i)      Maximum Facility D Loan Amount.  The definition of "Maximum Facility D Loan Amount" in the Pre-Petition Loan Agreement is hereby deleted in its entirety and the following substituted therefor:

"**Maximum Facility D Loan Amount**" means (i) from and after the date of the Ratification Agreement until October 30, 2016, One Million Four Hundred Fifty Thousand Dollars ($1,450,000) (ii) from and after October 31, 2016 until November 29, 2016, One Million Two Hundred Thousand Dollars ($1,200,000) and (iii) from November 30, 2016 until the Facility D Repayment Date, Nine Hundred Fifty Thousand Dollars ($950,000).

(j)      Obligations.  All references to the term "Obligations" in the Loan Agreement, this Ratification Agreement or the other Credit Documents shall be deemed, and each such reference is hereby amended, to mean both the Pre-Petition Obligations and the Post-Petition Obligations.

(k)      Permitted Liens.  The definition of "Permitted Liens" in the Pre-Petition Loan Agreement is hereby amended by (i) deleting the period appearing at the end of clause (viii) of such definition and replacing it with a semi-colon, and (ii) adding the following clauses at the end thereof:

"(ix) all Liens existing on the Petition Date that constituted "Permitted Liens" as defined in and under the Pre-Petition Loan Agreement to the extent such liens were legal, valid, binding, enforceable and non-avoidable as of the Petition Date, and are not otherwise subject to any defense, counterclaim, avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or any other applicable law;

(y) the Adequate Protection Liens; and

(z) Liens on the Collateral in respect of the Carve-Out."

**1.3**      Interpretation.

(a)      For purposes of this Ratification Agreement, unless otherwise defined or amended herein, including, but not limited to, those terms used or defined in the recitals hereto, all terms used herein shall have the respective meanings assigned to such terms in the Pre-Petition Loan Agreement, as amended, supplemented or otherwise modified by this Ratification Agreement.

9

(b)      All references to any term in the singular shall include the plural and all references to any term in the plural shall include the singular unless the context of such usage requires otherwise.

(c)      All terms not specifically defined herein which are defined in the Uniform Commercial Code, as in effect in the State of New York as of the date hereof, shall have the meaning set forth therein, except that the term "Lien" or "lien" shall have the meaning set forth in § 101(37) of the Bankruptcy Code.

**2.**      ACKNOWLEDGMENTS.

**2.1**      Pre-Petition Obligations.   Each Pre-Petition Borrower and Guarantor hereby acknowledges, confirms and agrees that, as of September 20, 2016, Pre-Petition Borrowers are indebted to Lender in respect of all Pre-Petition Obligations in the aggregate principal amount of not less than $15,706,658.32, consisting of (a) the Facility A Loan outstanding under the Pre-Petition Loan Agreement in the amount of $3,868,155.93, together with interest accrued and accruing thereon, and all costs, expenses, fees (including attorneys' fees and legal expenses), (b) the Facility B Loan outstanding under the Pre-Petition Loan Agreement in the amount of $946,000.00, together with interest accrued and accruing thereon, and all costs, expenses, fees (including attorneys' fees and legal expenses), (c) the Facility C Loan outstanding under the Pre-Petition Loan Agreement in the amount of $10,147,500.00, together with interest accrued and accruing thereon, and all costs, expenses, fees (including attorneys' fees and legal expenses)  (d) the Facility D Loan outstanding under the Pre-Petition Loan Agreement in the amount of $745,002.39, together with interest accrued and accruing thereon, and all costs, expenses, fees (including attorneys' fees and legal expenses) and (e) other charges now or hereafter owed by Pre-Petition Borrowers to Lender, all of which are unconditionally owing by the Borrowers to the Lender, without offset, defense or counterclaim of any kind, nature and description whatsoever. The Facility A Loan, Facility B Loan and the Facility C Loan shall continue to bear interest at the rate of fourteen percent (14%) per annum and the Facility D Loan shall continue to bear interest at the rate of twenty-five percent (25%) per annum, all being prior to the Lender invoking the Default Rate as permitted under the Credit Documents. Interest shall continue to be calculated on the basis of a year of 365 days, on the daily closing principal balance owing hereunder, not in advance.

**2.2**      Guaranteed Obligations.  Each Guarantor hereby acknowledges, confirms and agrees that:

(a)      all obligations of such Guarantors under the Pre-Petition Credit Documents are unconditionally owing by such Guarantor to Lender without offset, defense or counterclaim of any kind, nature and description whatsoever, and

(b)      the absolute and unconditional guarantee of the payment of the Pre-Petition Obligations by such Guarantor pursuant to the Pre-Petition Credit Documents extends to all Post-Petition Obligations, subject only to the limitations set forth in the Pre-Petition Credit Documents.

10

**2.3**      Acknowledgment of Security Interests.  Each Pre-Petition Borrower (and, solely in the case of clause (b) below, each Borrower) and Guarantor hereby acknowledges, confirms and agrees that Lender has and shall continue to have (a) valid, enforceable and perfected first priority and senior security interests in and liens upon all Pre-Petition Collateral heretofore granted to Lender pursuant to the Pre-Petition Credit Documents as in effect immediately prior to the Petition Date to secure all of the Obligations, and (b) valid and enforceable first priority and senior security interests in and liens upon all Post-Petition Collateral granted to Lender under the Financing Order or hereunder or under any of the other Credit Documents or otherwise granted to or held by Lender, in each case, subject only to liens or encumbrances expressly permitted by the Loan Agreement (including, without limitation, Pre-Petition Priority Liens) and any other liens or encumbrances expressly permitted by the Financing Order that may have priority over the liens in favor of Lender.

**2.4**      Binding Effect of Documents.  Each Pre-Petition Borrower and Guarantor hereby acknowledges, confirms and agrees that: (a) each of the Pre-Petition Credit Documents to which it is a party was duly executed and delivered to Lender by such Pre-Petition Borrower or Guarantor and each is in full force and effect as of the date hereof, (b) the agreements and obligations of such Pre-Petition Borrower or Guarantor contained in the Pre-Petition Credit Documents constitute the legal, valid and binding obligations of such Pre-Petition Borrower or Guarantor enforceable against it in accordance with the terms thereof, and such Pre-Petition Borrower or Guarantor has no valid defense, offset or counterclaim to the enforcement of such obligations, and (c) Lender is and shall be entitled to all of the rights, remedies and benefits provided for in (i), subject to the entry and terms of the Financing Order, the Credit Documents and (ii) the Financing Order.

**2.5**      Payments.  Notwithstanding anything to the contrary contained in the Loan Agreement or any of the other Credit Documents, Lender may, in its discretion, apply any payments or proceeds first, to the Pre-Petition Obligations until such Pre-Petition Obligations are paid and satisfied in full and second, to the Post-Petition Obligations until such Post-Petition Obligations are paid and satisfied in full.

**2.6**      Early Termination Fee.  Each Borrower and Guarantor hereby acknowledges and confirms that, effective as of the date hereof, (a) the Pre-Petition Borrowers are liable to the Lender for an early termination fee in the amount of $344,750 pursuant to Section 10(b) of the Pre-Petition Loan Agreement, and (b) the Lender may charge any loan account of a Borrower for such early termination fee.

**3.**      ADOPTION AND RATIFICATION.

**3.1.**      Each Pre-Petition Borrower and Guarantor hereby (a) ratifies, assumes, adopts and agrees to be bound by all of the Pre-Petition Credit Documents to which it is a party and (b) agrees to pay all of the Pre-Petition Obligations in accordance with the terms of such Pre-Petition Credit Documents, as supplemented and amended by this Ratification Agreement, and in accordance with the Financing Order.  All of the Pre-Petition Credit Documents are hereby incorporated herein by reference and hereby are and shall be deemed adopted and assumed in full by Borrowers and Guarantors, each as Debtor and Debtor-in-Possession and considered as

11

agreements between such Borrowers or Guarantors, on the one hand, and Lender, on the other hand. Each Pre-Petition Borrower and Guarantor party hereto hereby ratifies, restates, affirms and confirms all of the terms and conditions of the Pre-Petition Credit Documents, as amended and supplemented pursuant hereto and the Financing Order, and each Borrower and Guarantor, as Debtor and Debtor-in-Possession, agrees to be fully bound by the terms of the Credit Documents to which such Borrower or Guarantor is a party.

3.2.    Notwithstanding anything in Section 3.1 of this Ratification Agreement to the contrary, the Lender acknowledges that certain Events of Default have occurred and are continuing under the Pre-Petition Loan Agreement and the other Pre-Petition Credit Documents as a result of the commencement of the Chapter 11 Case and the other Bankruptcy Events (the "**Existing Defaults**"). From and after the Ratification Closing Date, for purposes of determining whether any Default or Event of Default has occurred under the Loan Agreement or any other Financing Agreement, the Lender hereby agrees that all such Existing Defaults shall be excluded from any determination of such Default or Event of Default and only Defaults and Events of Default (as provided in the Loan Agreement) occurring from and after the Ratification Closing Date shall constitute Defaults and Events of Default under the Loan Agreement. For the avoidance of doubt, none of the Existing Defaults shall give any right to the Lender or Lender to exercise or enforce any of their respective rights or remedies under the Loan Agreement or the other Credit Documents on the basis of the occurrence and/or existence of any one or more of the Existing Defaults.

4.     <u>GRANT OF SECURITY INTEREST</u>.

As collateral security for the prompt performance, observance and payment in full of all of the Obligations (including the Pre-Petition Obligations and the Post-Petition Obligations), Borrowers and Guarantors, each as Debtor and Debtor-in-Possession, hereby grant, pledge and assign to the Lender and also confirm, reaffirm and restate the prior grant to Lender of, continuing senior priority security interests in and liens upon, and rights of setoff against, all of the Collateral.

5.     <u>ADDITIONAL REPRESENTATIONS, WARRANTIES AND COVENANTS</u>.

In addition to the representations, warranties and covenants made by Borrowers and Guarantors to Lender, under the Loan Agreement or the other Credit Documents (in each case, for the avoidance of doubt, as amended by or provided in this Ratification Agreement) each Borrower and Guarantor hereby represents, warrants and covenants to Lender the following (which shall survive the execution and delivery of this Ratification Agreement), the truth and accuracy of which, or compliance with, to the extent such compliance does not violate the terms and provisions of the Bankruptcy Code, shall be a continuing condition precedent to the making of Loans by Lender:

5.1     <u>Financing Order</u>. No Borrower shall seek to have any Financing Order vacated, modified, reversed on appeal, or vacated or modified by any order of the Bankruptcy Court (other than as consented to by Lender).

12

**5.2**    <u>Use of Proceeds</u>.  All Loans provided by Lender to Borrowers pursuant to the Financing Order, the Loan Agreement or otherwise, shall only be used by Debtors to the extent (a) provided for in the Budget or (b) authorized by the Bankruptcy Court and consented to by the Lender for (i) general working capital needs, and (ii) the repayment of the Obligations.

**5.3**    <u>Budget</u>.

     (a)      Borrowers have prepared and delivered to Lender a nine (9) week post-petition Budget. The Budget has been thoroughly reviewed by the Borrowers and their management and sets forth, for the periods covered thereby, projected weekly cash receipts, cash disbursements, ending loan balance and ending availability under the Loans for each week (each such week ending on Friday) of the nine (9) consecutive week period commencing with the week ending September 23, 2016. Subsequent nine (9) week budgets shall be delivered to the Lender, in form and substance satisfactory to the Lender in their sole discretion, during the seventh (7th) week of the Budget. Upon approval by the Lender, such budget shall be deemed to be the Budget for the next nine (9) week period.

     (b)      Not later than 3:00 p.m. (Eastern time) on the Wednesday of each week commencing with the Wednesday following the first full week ending after the Petition Date, Borrowers shall furnish to Lender a weekly report (the "**Budget Compliance Report**") that (i) sets forth as of the preceding Friday of each such week on a rolling two (2) week basis and cumulative basis from the Petition Date (each such period referred to herein as a "**Measurement Period**"), the actual results for the following line items set forth in the Budget: (A) total cash receipts less total disbursements, (B) total disbursements, (C) ending loan balance and (C) ending availability under the Loans, noting the variances from values set forth for such periods in the Budget, and (ii) an explanation for all such variances greater than ten percent (10%) in any line items or sub-line items, certified by the chief financial officer of the Borrowers. Such report/reconciliation shall also note any variances with values set forth in the Budget as of the day of such report/reconciliation. Each Budget Compliance Report shall include a certification by The Brownstein Corporation certifying they have reviewed such Budget Compliance Report and it is accurate.

     (c)      Each Debtor acknowledges, confirms and agrees that the following covenants shall be tested pursuant to the Budget Compliance Report for the applicable Measurement Period ending as of each Friday, with such testing commencing on the Wednesday following the second week ending after the Petition Date (the week ending on September 30, 2016) on a two (2) week rolling basis: (i) the actual total cash receipts less actual total cash disbursements shall not be less than ninety percent (90%) of the projected actual total cash receipts less actual total cash disbursements set forth in the Budget in respect of such Measurement Period, (ii) the actual total cash disbursements shall not be more than one hundred and ten percent (110%) of the projected total cash disbursements set forth in the Budget in respect of such Measurement Period, (iii) the loan balances for the Loans as of end of such week shall not be more than one hundred and ten percent (110%) of the projected loan balances for the Loans as of end of such week set forth in the Budget in respect of such Measurement Period, and (iv) availability for the Loans as of end of such week shall not be less than ninety percent (90%)

13

of the projected availability for the Loans as of end of such week set forth in the Budget in respect of such Measurement Period.

(d)      Each Debtor hereby confirms, acknowledges and agrees that, unless waived in writing by Lender, (i) a failure to maintain the deviations in the Budget in an amount equal to or less than the percentage set forth in Section 5.3(c) hereof shall constitute a material deviation from the Budget and an additional Event of Default (each, a "Material Budget Deviation") and (ii)  the failure to deliver any reports with respect to any Budget, in form and substance satisfactory to Lender in its sole discretion, as provided in Section 5.3(b) hereof shall constitute an Event of Default.  Notwithstanding any approval by Lender or Lender of the Budget or any subsequent or amended Budget(s), Lender will not, and shall not be required to, provide any Loans to any Borrower pursuant to the Budget, but shall only provide Loans in accordance with the terms and conditions set forth in the Loan Agreement as amended by this Ratification Agreement, the other Credit Documents and the Financing Order.  Lender is relying upon the Borrowers' delivery of, and compliance with, the Budget in accordance with this Section 5.3 in determining to enter into the post-petition financing arrangements provided for herein.

(e)      Notwithstanding any projected amounts set forth in the Budget relating to the costs and expenses of Lender that are reimbursable by Borrowers or any other amounts owing by Borrowers to Lender (including, without limitation reasonable attorneys and consulting fees and expenses) in accordance with the Loan Agreement and the other Credit Documents, such projections shall not limit, impair, modify or waive the Debtors' obligation to pay the actual amounts due to Lender in respect of such costs, expenses and other amounts owing to Lender in accordance with the Loan Agreement and the other Credit Documents and the actual amounts paid in respect of such costs, expenses and other amounts other shall not be subject to the variance compliance set forth in Section 5.3(c).

(f)      Notwithstanding anything herein to the contrary, the Budget may be updated, modified or supplemented (with the consent and/or at the request of the Lender) from time to time, and each such updated, modified or supplemented budget shall be approved by, and in form and substance satisfactory to, the Lender in its sole discretion and no such updated, modified or supplemented budget shall be effective until so approved and once so approved shall be deemed the Budget; provided, that (i) Borrowers shall not be permitted to update, modify or supplement the Budget until after the last day of the fourth (4th)  full week following the Petition Date; and (ii) during the seventh (7th) week of the Budget, the Borrowers shall submit a budget for the next successive nine (9) week period to the Lender, which budget shall be in (A) form substantially similar to the initial Budget (or otherwise in form reasonably acceptable to Lender) and (B) substance acceptable to the Lender in its sole discretion; provided, further, that  in the event that the Lender and the Borrowers cannot, while acting diligently, reasonably, and in good faith, agree as to an updated, modified or supplemented budget, such disagreement shall give rise to an Event of Default hereunder once the period covered by the most recent Budget has terminated.  Each Budget delivered to the Lender shall be accompanied by such supporting documentation as requested by the Lender in its sole discretion.  Each Budget shall be prepared in good faith based upon assumptions which the Borrowers believe to be reasonable and are satisfactory to the Lender in its sole discretion.

14

          **5.4**    <u>Sale Milestones</u>.    Debtors covenant and agree to satisfy each of the following conditions:

        (a)    On or before the fifth (5th) day following the Petition Date, the Debtors shall file a motion, in form and substance satisfactory to the Lender, requesting approval from the Bankruptcy Court on an emergent basis to retain a nationally or regionally recognized investment banking firm, acceptable to the Lender in its sole discretion, on terms and conditions acceptable to Lender ("**Investment Banker**") to conduct the marketing and sale process for all or substantially all of the assets of each Borrower and Guarantor;

        (b)    On or before the twentieth (20th) day following the Petition Date, the Bankruptcy Court shall have entered an order, in form and substance satisfactory to Lender, authorizing the retention of the Investment Banker on terms and conditions acceptable to Lender;

        (c)    On or before the fifth (5th) day following the Petition Date, the Debtors shall file a motion, in form and substance satisfactory to the Lender, requesting approval from the Bankruptcy Court of bidding and auction procedures, in form and substance satisfactory to Lender, in connection with the sale or sales of all or substantially all of the Debtors' assets and properties (the "**Bidding Procedures Motion**");

        (d)    On or before the twentieth (20th) day following the Petition Date, the Bankruptcy Court shall have entered an order, in form and substance satisfactory to Lender, approving the Bidding Procedures Motion (the "**Bidding Procedures Order**");

        (e)    On or before the fiftieth (50th) day following the Petition Date, the qualifying bid deadline shall have occurred in accordance with the Bidding Procedures Order;

        (f)    On or before the fifty-fifth (55th) day following the Petition Date, the Debtors shall conduct an auction in accordance with the Bidding Procedures Order to select the highest and best bid(s) for the sale of all or substantially all of the Debtors' assets in accordance with the Bidding Procedures Order, which bid shall provide for, among other things, a minimum cash amount not less than the amount required to satisfy the Obligations owed to Lender in full in cash on or before the sixty-first (61st) day following the Petition Date, and copies of which shall be provided to the Lender;

        (g)    On or before the sixtieth (60th) day following the Petition Date, the Bankruptcy Court shall have entered an order (the "**Sale Order**"), which order shall provide for, among other things, distribution of sale proceeds to Lender in a minimum cash amount not less than the amount required to satisfy the Obligations owed to Lender in full in cash on or before the sixty-first (61st) day following the Petition Date, and otherwise in form and substance satisfactory to Lender, approving the sale or sales of all or substantially of the Debtors' assets, on terms and conditions acceptable to Lender (the "**363 Sale**"), and authorizing and directing that all proceeds from the 363 Sale be remitted to Lender for application against and permanent reduction of the Obligations;

15

(h)    On or before the sixty-fifth (65th) day following the Petition Date, the Debtors shall have consummated the 363 Sale; and

(i)    On or before the sixtieth (60th) day following the Petition Date the Borrowers shall have received court approval to extend the general time period to accept/reject leases from the permitted 120 day time period to not less than 210 days.

5.5    Ratification of Deposit Account Control Agreement.    To the extent Lender deems it necessary in its reasonable discretion and promptly upon Lender's request, Borrowers and Guarantors shall promptly provide Lender with evidence, in form and substance satisfactory to Lender, that the Deposit Account Control Agreements (as defined in the Financing Order) and other deposit account arrangements provided for under Section 15 of the Loan Agreement have been ratified and amended by the parties thereto, or their respective successors in interest to reflect the commencement of the Chapter 11 Case, that each Borrower and each Guarantor, as Debtor and Debtor-in-Possession, is the successor in interest to such Borrower or Guarantor, that the Obligations include both the Pre-Petition Obligations and the Post-Petition Obligations, that the Collateral includes both the Pre-Petition Collateral and the Post-Petition Collateral as provided for in the Ratification Agreement.

5.6    ERISA.    Each Borrower and Guarantor hereby represents and warrants with, to and in favor of Lender that (a) there are no liens, security interests or encumbrances upon, in or against any assets or properties of any Borrower or Guarantor arising under ERISA, whether held by the Pension Benefit Guaranty Corporation (the "**PBGC**") or the contributing sponsor of, or a member of the controlled group thereof, any pension benefit plan of any Borrower or Guarantor and (b) no notice of lien has been filed by the PBGC (or any other Person) pursuant to ERISA against any assets or properties of any Borrower or Guarantor.

5.7    Maximum Outstanding Loans.

(a)    Notwithstanding anything to the contrary contained in the Loan Agreement or the other Credit Documents, Lender shall have no obligation whatsoever to make any Loan to the Borrowers to the extent that, immediately after giving effect to the making of such Loan, the then aggregate outstanding amount of all Loans would exceed at any time Twenty Million Six Hundred Eighty-Five Thousand Dollars ($20,685,000) plus any accrued and unpaid interest, fees and expenses due and payable thereon as determined by Lender in its discretion.

(b)    In the event that the aggregate principal amount of all Loans outstanding exceed Twenty Million Six Hundred Eighty-Five Thousand Dollars ($20,685,000) plus any accrued and unpaid interest, fees and expenses due and payable thereon such event shall not limit, waive or otherwise affect any rights of the Lender in such circumstances or on any future occasions and Borrowers and Guarantors shall, upon demand by the Lender, which may be made at any time or from time to time, immediately repay the entire amount of any such excess(es) for which payment is demanded.  Failure to repay such amount shall constitute an Event of Default.

6.      DIP FACILITY FEE.

Borrowers shall pay to Lender a debtor-in-possession financing facility fee, in the amount of $70,000, on account of the financing provided by Lender to Borrowers in the Chapter 11 Case, which fee shall be fully earned and due and payable on the Ratification Closing Date and which may be charged directly to the loan account of any Borrower maintained by Lender or paid by the Borrowers concurrently with the closing of the initial Loans, as provided under Section 9 of this Ratification Agreement.

7.      AMENDMENTS.

7.1      Limits and Sublimits.  Section 2 of the Pre-Petition Loan Agreement is hereby amended by (i) deleting the period appearing at the end of such section and replacing it with a semi-colon, and (ii) adding the following new Section 2(d) at the end of such Section:

"(d)      All limits and sublimits set forth in this Agreement, and any formula or other provision to which a limit or sublimit may apply, shall be determined on an aggregate basis considering together both the Pre-Petition Obligations and the Post-Petition Obligations."

(a)      Reserves.  Section 3 (d)(ii) of the Pre-Petition Loan Agreement is hereby amended by (i) deleting the period appearing at the end of such section and replacing it with a comma, and (ii) adding the following clauses at the end thereof:

", including, without limitation, (A) any reserves which the Lender deems necessary in the exercise of its sole discretion to maintain with respect to any Borrower, Guarantor or the Collateral, including without limitation reserves for any amounts which Lender may be obligated to pay in the future for the account of any Borrower or Guarantor, (B) the amount of the Carve-Out, (i) with respect to the Pre-Trigger Notice Cap, which the Lender shall reserve at the rate of $25,000 per week and (ii) with respect to the Post-Trigger Notice Cap, which the Lender shall reserve the full amount thereof at any time, in its sole discretion; and (C) any reserves as may be applicable under the circumstances in connection with the Chapter 11 Case, including reserves in respect of the amount of any liens or claims in or against the Collateral that are pari passu with or senior to the liens and claims of Lender (without duplication of the reserve described in clause (A). Notwithstanding the foregoing, the Lender will provide two (2) Business Days' prior notice to Borrowers, or if Lender determines in its sole discretion that two (2) Business Days' prior notice to Borrowers is not practical then as much prior notice as Lender can reasonably (from the perspective of an asset based lender) provide before the Lender establishes a new reserve or changes the

17

methodology of calculating reserves (which notice will include a reasonably detailed description of such new reserve or change in methodology); <u>provided</u> that no prior notice shall be required after the occurrence and during the continuance of an Event of Default."

**7.2**    <u>Corporate Existence; Power and Authority</u>.  Section 18(a)(xii) of the Pre-Petition Loan Agreement is hereby amended by (i) lower casing the word "Each" at the beginning of the sentence therein and inserting the following phrase "Subject to any entry of any required orders of the Bankruptcy Court including, without limitation, the entry of the Interim Financing Order and the Permanent Financing Order, as applicable,".

**7.3**    <u>Material Contracts</u>. Schedule 16(s) of the Pre-Petition Loan Agreement is hereby amended by deleting such section in its entirety and replacing it with the following:

"8.15    <u>Material Contracts</u>. Schedule 16(s) to the Pre-Petition Loan Agreement sets forth all Material Contracts to which Borrowers are a party or are bound as of the date hereof. Borrowers have delivered true, correct and complete copies of such Material Contracts to the Lender on or before the date hereof. Other than the Bankruptcy Events, the Borrowers are not in breach or in default in any material respect of or under any Material Contract and have not received any notice of the intention of any other party thereto to terminate any Material Contract, except where such breach, default or termination has not had or could not reasonably be expected to have a Material Adverse Effect or would otherwise be stayed by the filing of the Chapter 11 Case."

**7.4**    <u>Compliance with Laws, Regulations, Etc</u>.  Section 16(h) of the Pre-Petition Loan Agreement is hereby amended by inserting immediately prior to the first sentence therein the following phrase "Except to the extent non-compliance is permitted under the Bankruptcy Code,".

**7.5**    <u>Financial Statements and Other Information</u>.  Section 19 of the Pre-Petition Loan Agreement is hereby amended by deleting in its entirety subsections 9f), (j), (k), (l) and (m).

**7.6**    <u>Additional Financial Reporting Requirements</u>.  Section 19 of the Pre-Petition Loan Agreement is hereby amended by adding the following new subsection at the end of such Section:

"(f)    Each Borrower and Guarantor shall also provide Lender with copies of all financial reports, schedules and other materials and information at any time furnished by or on behalf of any Borrower or Guarantor to the Bankruptcy Court, or the U.S. Trustee, or any material information not previously provided to Lender with respect to the Chapter 11 Case that is provided to any creditors' committee or such Borrower's or Guarantor's shareholders, substantially concurrently with the delivery thereof

18

to the Bankruptcy Court, creditors' committee, U.S. Trustee or shareholders, as the case may be."

**7.7** <u>Liens</u>. Schedule 18(b)(iii) of the Pre-Petition Loan Agreement is hereby amended by adding the following Permitted Liens:

"Allowed Professional Fees covered by the Carve-Out; and

Any existing Liens that are unenforceable as provided under the Bankruptcy Code."

**7.8** <u>Debt</u>. Schedule 18(b)(iii) of the Pre-Petition Loan Agreement is hereby amended by adding the following Permitted Debt:

"other unsecured indebtedness as provided in the Budget"

**7.9** <u>Prepayments and Amendments</u>. Notwithstanding anything to the contrary contained in the Loan Agreement or any of the other Credit Documents, the Borrowers will not, and will not permit any Subsidiary, after the Ratification Closing Date, to optionally prepay, redeem, defease, purchase, or otherwise acquire any Indebtedness for borrowed money (other than the Obligations or as otherwise made in accordance with the Budget) without the prior written consent of the Lender.

**7.10** <u>Financial Covenant</u>. Section 18(a)(xv) of the Pre-Petition Loan Agreement is hereby deleted in its entirety.

**7.11** <u>Events of Default</u>. Section 22 of the Pre-Petition Loan Agreement is hereby amended as follows:

(a) Section 22(d) of the Pre-Petition Loan Agreement is hereby deleted in its entirety.

(b) Section 22 of the Pre-Petition Loan Agreement is hereby amended by (i) deleting the word "and" at the end of Section 22(p), (ii) replacing the period appearing at the end of Section 22(q) with a semicolon, and (iii) adding the following at the end of such Section:

"(r) the occurrence of any condition or event which permits Lender to exercise any of the remedies set forth in the Financing Order, including, without limitation, any "Event of Default" (as defined in any Financing Order);

(s) the termination or non-renewal of the Credit Documents as provided for in any Financing Order;

(t) any Borrower or Guarantor suspends or discontinues all or any material part of its business, or is enjoined by any court or

governmental agency from continuing to conduct all or any material part of its business, or a trustee or examiner with expanded powers is appointed for any Borrower or Guarantor, or any of their respective properties;

(u)  any act, condition or event occurring after the Petition Date that has or could reasonably expect to have a Material Adverse Effect;

(v)  conversion of any Chapter 11 Case to a Chapter 7 case under the Bankruptcy Code;

(w)  dismissal of any Chapter 11 Case or any subsequent Chapter 7 case either voluntarily or involuntarily;

(x)  grant of a lien on or other interest in any property of any Borrower or Guarantor, other than a Permitted Lien or a lien or encumbrance permitted by any Financing Order (including the Carve-Out), which is superior to or ranks in parity with Lender's security interest in or lien upon the Collateral;

(y) the grant of an administrative expense claim in any Chapter 11 Case which is superior to or ranks in parity with the rights of the Lender (other than administrative expense claims permitted by any Financing Order, the Ratification Agreement, or the Carve-Out;

(z)  the failure of Borrowers or Guarantors to comply with any Financing Order or the Ratification Agreement, or any Financing Order shall be modified, reversed, revoked, remanded, stayed, rescinded, vacated or amended on appeal or by the Bankruptcy Court without the prior written consent of the Lender;

(aa)  the appointment of a trustee pursuant to Sections 1104(a)(1) or 1104(a)(2) of the Bankruptcy Code;

(bb)  the appointment of an examiner with special powers pursuant to Section 1104(a) of the Bankruptcy Code;

(cc)  the filing of a plan of reorganization or liquidation by or on behalf of any Borrower or Guarantor which does not provide for payment in full of all Obligations on the effective date thereof in accordance with the terms and conditions contained herein, unless otherwise consented to by the Lender;

(dd) the confirmation of any plan of reorganization or liquidation in the Chapter 11 Case of any Borrower or Guarantor

20

which does not provide for payment in full of all Obligations on the effective date thereof in accordance with the terms and conditions contained herein, unless otherwise consented to by Lender;

(ee) the filing of a motion by any Debtor (or any Affiliate) that is not dismissed or denied within thirty (30) days after the date of filing such motion seeking, or the entry of any order permitting, recovery from any portion of the Collateral (or from Lender directly) any costs or expenses of preserving or disposing of the Collateral under section 506(c) or section 552(b) of the Bankruptcy Code (or otherwise);

(ff)  (i) the failure of Borrowers or Guarantors to comply with any material provision, unless with the prior consent of the Lender, of the letter of engagement dated as of August 29, 2016, between the Debtors and The Brownstein Corporation (the "**Brownstein Engagement Letter**") or (ii) the termination of such agreement for any reason without the prior written consent of the Lender;

(gg)    (i) the failure of Borrowers or Guarantors to engage and continue to employ an investment banker acceptable to the Lender, in its sole discretion, as required in the Ratification Agreement, or failure to comply with any material provision, unless with the prior consent of the Lender, of the letter of engagement between the Debtors and the investment banker (the "**Investment Banker Engagement Letter**") or (ii) the termination of such agreement for any reason without the prior written consent of the Lender the failure of the Borrowers or Guarantor to comply with the terms and conditions of the Ratification Agreement;

(hh)    the failure of the Borrowers or Guarantor to comply with the terms and conditions of the Ratification Agreement;

(ii)    the sale by the Borrowers or Guarantor of all or substantially all of their assets without fully paying and satisfying all Obligations to the Lender; and

(jj)    any Material Budget Deviation, as defined in Section 5.3(d) of the Ratification Agreement.

**7.12**    Section 22 of the Pre-Petition Loan Agreement is hereby amended by adding the following paragraph at the end of such Section:

"In addition to the other rights and remedies of the Lender under the Credit Documents, upon occurrence of an Event of Default, Borrowers and Guarantors hereby agree at the request of the Lender to immediately file a motion, in form and substance satisfactory to the Lender, requesting approval from the Bankruptcy Court on an emergent basis to appoint a Chief Restructuring Officer, shall be acceptable to Lender and whose retention shall be on terms and conditions acceptable to Lender, which shall include, without limitation, responsibility for the Debtors' operations and the sale process."

**7.13**    Form of Borrowing Base Certificate.  The Borrowers and the Lender agree to use the Form of Borrowing Base Certificate attached hereto as Exhibit C to this Ratification Agreement.

**8.**    RELEASE.

**8.1**    Release of Pre-Petition Claims.

(a)    Upon the earlier of (i) the entry of the Permanent Financing Order or (ii) the entry of an Order extending the term of the Interim Financing Order beyond thirty (30) calendar days after the date of the Interim Financing Order, in consideration of the agreements of Lender contained herein and the making of any Loans by Lender, each Borrower, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, on behalf of itself and its respective successors, assigns, and other legal representatives, hereby absolutely, unconditionally and irrevocably releases, remises and forever discharges Lender, and its successors and assigns, and its present and former shareholders, affiliates, subsidiaries, divisions, predecessors, directors, officers, attorneys, employees and other representatives (Lender and all such other parties being hereinafter referred to collectively as the "**Releasees**" and individually as a "**Releasee**"), of and from all demands, actions, causes of action, suits, covenants, contracts, controversies, agreements, promises, sums of money, accounts, bills, reckonings, damages and any and all other claims, counterclaims, defenses, rights of set-off, demands and liabilities whatsoever but, for the avoidance of doubt, excluding any claims or causes of action for gross negligence or willful misconduct (individually, a "**Pre-Petition Released Claim**" and collectively, "**Pre-Petition Released Claims**") of every name and nature, known or unknown, suspected or unsuspected, both at law and in equity, which any Borrower or Guarantor, or any of their respective successors, assigns, or other legal representatives may now or hereafter own, hold, have or claim to have against the Releasees or any of them for, upon, or by reason of any nature, cause or thing whatsoever which arises at any time on or prior to the Ratification Closing Date, including, without limitation, for or on account of, or in relation to, or in any way in connection with the Pre-Petition Loan Agreement, as amended and supplemented through the date hereof, and the other Credit Documents.

(b)    Upon the earlier of (i) the entry of the Permanent Financing Order or (ii) the entry of an Order extending the term of the Interim Financing Order beyond thirty (30) calendar days after the date of the Interim Financing Order, each Borrower, on behalf of itself and its successors, assigns, and other legal representatives, hereby absolutely, unconditionally and irrevocably, covenants and agrees with each Releasee that it will not sue (at law, in equity, in

22

any regulatory proceeding or otherwise) any Releasee on the basis of any Pre-Petition Released Claim released, remised and discharged by each Borrower and Guarantor pursuant to this Section 8.1.  If any Borrower violates the foregoing covenant, Borrowers agree to pay, in addition to such other damages as any Releasee may sustain as a result of such violation, all attorneys' fees and costs incurred by any Releasee as a result of such violation.

   **8.2** <u>Release of Post-Petition Claims</u>. Upon the Payment in Full of all of the Obligations, in consideration of the agreements of Lender contained herein and the making of any Loans by Lender, each Borrower and Guarantor hereby covenants and agrees to execute and deliver in favor of Lender a valid and binding termination and release agreement, in form and substance satisfactory to Lender.  If any Borrower and Guarantor violates such covenant, Borrowers and Guarantors agree to pay, in addition to such other damages as any Releasee may sustain as a result of such violation, all attorneys' fees and costs incurred by any Releasee as a result of such violation.

   **8.3** <u>Releases Generally</u>.

   (a) Each Borrower and Guarantor understands, acknowledges and agrees that the releases set forth above in Sections 8.1 and 8.2 hereof  may be pleaded as a full and complete defense and may be used as a basis for an injunction against any action, suit or other proceeding which may be instituted, prosecuted or attempted in breach of the provisions of such releases.

   (b) Each Borrower and Guarantor agrees that no fact, event, circumstance, evidence or transaction which could now be asserted or which may hereafter be discovered shall affect in any manner the final and unconditional nature of the releases set forth in Section 8.1 hereof and, when made, Section 8.2 hereof.

   **9.** <u>CONDITIONS PRECEDENT</u>.

   The amendments, representations and warranties, covenants, defaults and all other agreements and obligations contained in Sections 1 through 8 of this Ratification Agreement shall only become effective upon the satisfaction (or waiver) of all of the following conditions precedent (the time of such satisfaction (or waiver) referred to herein as the "**Ratification Closing Date**"):

   **9.1** as of the Petition Date, the Pre-Petition Credit Documents shall not have been terminated;

   **9.2** Debtors shall have commenced a voluntary case under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of New Jersey by no later than September [__], 2016.  Debtors shall have complied in full with the notice and other requirements of the Bankruptcy Code in a manner reasonably acceptable to Lender and its counsel, with respect to the Interim Financing Order) and Lender shall have received such evidence thereof as it shall reasonably require.  All of the first day orders entered by the

23

Bankruptcy Court at the time of the commencement of the Chapter 11 Case shall be in form and substance reasonably satisfactory to Lender;

       **9.3**     no trustee or examiner with expanded powers shall have been appointed or designated with respect to any Borrower or Guarantor, as Debtor and Debtor-in-Possession, or its respective business, properties and assets and no motion or proceeding shall be pending seeking such relief;

       **9.4**     the Interim Financing Order has been duly entered, is valid, subsisting and continuing and has not been vacated, reversed, or modified by any order of the Bankruptcy Court (other than as consented to by Lender) and is not subject to any pending appeal or stay;

       **9.5**     a cash management order amending and ratifying the cash management arrangements of Borrowers and Guarantors on terms acceptable to Lender has been duly entered, is valid, subsisting and continuing and has not been vacated, reversed, or modified by any order of the Bankruptcy Court (other than as consented to by Lender) and is not subject to any pending appeal or stay;

       **9.6**     the execution and delivery of this Ratification Agreement to be delivered in connection herewith by Borrowers, Guarantors and Lender in form and substance satisfactory to Lender;

       **9.7**     the implementation of the terms of this Ratification Agreement and the other Credit Documents, as modified pursuant to this Ratification Agreement, all of which contains provisions, representations, warranties, covenants and Events of Default, as are satisfactory to Lender and its counsel;

       **9.8**     the receipt by Lender of the Brownstein Engagement Letter.

       **9.9**     each Borrower and Guarantor shall have complied in full with the notice and other requirements of the Bankruptcy Code and the applicable Bankruptcy Rules with respect to any relevant Financing Order in a manner prescribed by the Bankruptcy Code and the applicable Bankruptcy Rules;

       **9.10**     receipt by Lender of the initial Budget; it being understood and agreed that the Budget, as approved by the Lender and attached to this Ratification Agreement as <u>Exhibit A</u> shall satisfy this condition;

       **9.11**     Receipt by Lender, each in form and substance satisfactory to Lender, of a projected sources and uses of funds from a projected sale of all or substantially all of the assets of the Borrowers, with the results and assumptions set forth in all of such projections in form and substance satisfactory to Lender;

       **9.12**     other than the voluntary commencement of the Chapter 11 Case, no material impairment of the priority of Lender's security interests in the Collateral shall have occurred from the date of the latest field examinations of Lender to the Petition Date;

24

9.13     Other than the Bankruptcy Events, no Material Adverse Effect shall have occurred since September 20, 2016;

9.14     None of the materials previously furnished to Lender by Borrowers and Guarantors contain any material misstatements in, or omit to state, any material facts necessary to make the statements therein taken as a whole, in the light of the circumstances under which they were made, not misleading in any material respect.

9.15     Lender shall hold perfected, first priority security interests in and liens upon the Collateral (subject to the Permitted Liens and the Carve-Out) and Lender shall have received such evidence thereof as it requires; and

9.16     Other than the Existing Defaults, no Default or Event of Default shall have occurred or be existing under any of the Credit Documents, as modified pursuant hereto, and assumed by Borrowers and Guarantors.

## 10.     **ADDITIONAL CONDITIONS PRECEDENT TO ALL LOANS.**

In addition to the satisfaction of the conditions precedent under Section 9 of this Ratification Agreement with respect to the effectiveness of the noted Sections of this Ratification Agreement and the making of the initial Loans under the Loan Agreement, and the satisfaction of the conditions precedent in Section 14 of the Loan Agreement with respect to all Loans and other financial accommodations available to Borrowers (such conditions in Section 14, except as modified or made pursuant to this Ratification Agreement shall remain applicable to the Loans and be applicable to other financial accommodations available to Borrowers), the following are conditions to Lender's obligation to extend further loans, advances or other financial accommodations to Borrowers pursuant to the Loan Agreement:

10.1     with respect to further credit after expiration of the Interim Financing Order, on or before the expiration of the Interim Financing Order, the Bankruptcy Court shall have entered the Permanent Financing Order. Lender shall provide any Revolving Loans (or other financial accommodations) other than those authorized under the Interim Financing Order unless, on or before the expiration of the Interim Financing Order, the Permanent Financing Order shall have been entered, and there shall be no appeal or other contest with respect to either the Interim Financing Order or the Permanent Financing Order and the time to appeal to contest such order shall have expired;

10.2     requests for further credit shall be for purposes and in amounts in accordance with the Budget (subject to the variances permitted under Section 5.3(c) of the Ratification Agreement);

10.3     subject to the Financing Order, all fees and expenses required to be paid to the Lender pursuant to the Ratification Agreement and the Loan Agreement, as amended thereby, shall have been paid or shall be paid concurrently with the making of the Loans after the Ratification Closing Date; and

**10.4**    other than the Existing Defaults, no Default or Event of Default shall have occurred or be existing under any of the Credit Documents, as amended, supplemented or otherwise modified pursuant this Ratification Agreement and assumed by Borrowers and Guarantor.

11.    <u>MISCELLANEOUS</u>.

**11.1**    <u>Amendments and Waivers</u>.    Neither this Ratification Agreement nor any other instrument or document referred to herein or therein may be changed, waived, discharged or terminated orally, but only by an instrument in writing signed by the party against whom enforcement of the change, waiver, discharge or termination is sought.

**11.2**    <u>Further Assurances</u>.    Each Borrower and Guarantor shall, at its expense, at any time or times duly execute and deliver, or shall use its best efforts to cause to be duly executed and delivered, such further agreements, instruments and documents, and do or use its best efforts to cause to be done such further acts as may be reasonably necessary or proper in Lender's opinion to evidence, perfect, maintain and enforce the security interests of Lender, and the priority thereof, in the Collateral and to otherwise effectuate the provisions or purposes of this Ratification Agreement, any of the other Credit Documents or the Financing Order.  Upon the request of Lender, at any time and from time to time, each Borrower and Guarantor shall, at its cost and expense, do, make, execute, deliver and record, register or file updates to the filings of Lender with respect to the Intellectual Property with the United States Patent and Trademark Office or the United States Copyright Office, the financing statements, and other instruments, acts, pledges, assignments and transfers (or use its best efforts to cause the same to be done) and will deliver to Lender such instruments evidencing items of Collateral as may be requested by Lender.

**11.3**    <u>Headings</u>.    The headings used herein are for convenience only and do not constitute matters to be considered in interpreting this Ratification Agreement.

**11.4**    <u>Counterparts</u>.    This Ratification Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original, but all of which shall together constitute one and the same agreement.  In making proof of this Ratification Agreement, it shall not be necessary to produce or account for more than one counterpart thereof signed by each of the parties hereto. Delivery of an executed counterpart of this Ratification Agreement by telefacsimile or other means of electronic transmission shall have the same force and effect as delivery of an original executed counterpart of this Ratification Agreement.  Any party delivering an executed counterpart of this Ratification Agreement by telefacsimile or other means of electronic transmission also shall deliver an original executed counterpart of this Ratification Agreement, but the failure to deliver an original executed counterpart shall not affect the validity, enforceability, and binding effect of this Ratification Agreement as to such party or any other party.

**11.5**    <u>Additional Events of Default</u>.    The parties hereto acknowledge, confirm and agree that the failure of any Borrower or Guarantor to comply with any of the covenants, conditions and agreements contained herein or in any other agreement, document or instrument

26

at any time executed by such Borrower or Guarantor in connection herewith shall constitute an Event of Default under the Credit Documents.

      **11.6**   <u>Costs and Expenses</u>.  Subject to the terms of the Financing Order, Borrowers shall pay to Lender on demand all costs and expenses that Lender or Lender pays or incurs in connection with the negotiation, preparation, consummation, administration, enforcement, and termination of this Ratification Agreement and the other Credit Documents and the Financing Order.  Subject to the terms of the Financing Order, the foregoing shall not be construed to limit any other provisions of the Credit Documents regarding costs and expenses to be paid by Borrowers.  Subject to the terms of the Financing Order, all sums provided for in this Section 11.6 shall be part of the Obligations, shall be payable on demand, and shall accrue interest after demand for payment thereof at the highest rate of interest then payable under the Credit Documents.  Lender is hereby irrevocably authorized to charge any amounts payable hereunder directly to any of the account(s) maintained by Lender with respect to any Borrower or Guarantor.

      **11.7**   <u>Effectiveness</u>.  This Ratification Agreement shall become effective upon the execution hereof by the Borrowers, Guarantors, Lender and the entry of the Interim Financing Order.

[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, the parties hereto have caused this Ratification Agreement to be duly executed as of the day and year first above written.

**Binder Machinery Co., LLC**

By: _____
    Robert C. Binder, Chief Executive Officer

By: _____
    Joseph F. Vazzano, Chief Financial Officer

Its: Authorized Representatives

**Binder Realty of South Plainfield, LLC**

By: _____
    Robert C. Binder, Chief Executive Officer

By: _____
    Joseph F. Vazzano, Chief Financial Officer

Its: Authorized Representatives

**Binder Realty of Winslow LLC**

By: _____
    Robert C. Binder, Chief Executive Officer

By: _____
    Joseph F. Vazzano, Chief Financial Officer

Its: Authorized Representatives

_____
ROBERT C. BINDER

ROCBIN INVESTMENT CORPORATION

By: _____
Name: Brendan Binder
Title: President


By: _____
Name: Joseph F. Vazzano
Title: Secretary


BINDER MANAGERIAL SERVICES, LLC

By: _____
Name: Joseph F. Vazzano
Title: Chief Financial Officer

**Callidus Capital Corporation**


By:_____
      David Reese
      President and Chief Operating
Officer


By:_____
      James A. Riley
      Director and Secretary

We have authority to bind the
Corporation.

EXHIBIT A
to
RATIFICATION AND AMENDMENT AGREEMENT

**BUDGET**

(see attached)

**Binder Machinery**
**Weekly Cash Flow Forecast**
**For the Weeks Ending**

| | Forecast 9/23/2016 | Forecast 9/30/2016 | Forecast 10/7/2016 | Forecast 10/14/2016 | Forecast 10/21/2016 | Forecast 10/28/2016 | Forecast 11/4/2016 | Forecast 11/11/2016 | Forecast 11/18/2016 |
|---|---|---|---|---|---|---|---|---|---|
| Cash Receipts: | | | | | | | | | |
| Total Cash Receipts | 914,161 | 1,307,431 | 1,213,428 | 1,215,158 | 1,314,630 | 1,248,851 | 1,520,583 | 1,441,722 | 1,296,498 |
| | | | | | | | | | |
| Cash Disbursements: | | | | | | | | | |
| Machine Payoffs-BMC actual cash no nettting | 324,633 | 656,548 | 408,839 | 458,496 | 458,496 | 458,496 | 512,563 | 512,563 | 512,563 |
| Parts | 220,000 | 160,000 | 190,500 | 121,000 | 192,500 | 135,500 | 202,500 | 119,000 | 194,500 |
| Machine Payoffs-Rocbin | | | | 125,000 | 125,000 | 125,000 | 125,000 | 125,000 | 125,000 |
| Sales Tax | 232,759 | - | - | - | 172,327 | - | - | - | 181,173 |
| Gross Payroll | 130,000 | 50,000 | 130,000 | 50,000 | 130,000 | 50,000 | 130,000 | 50,000 | 130,000 |
| Payroll Tax | 62,000 | 40,000 | 71,405 | 20,000 | 62,000 | 45,000 | 62,000 | 20,000 | 62,000 |
| Bankruptcy Fees,filings and professional services | 115,000 | - | - | - | - | 115,000 | - | - | - |
| Commissions | - | 65,000 | - | - | - | 65,000 | - | - | - |
| Employee Benefits | 50,000 | 50,000 | 81,000 | 40,000 | 50,000 | 50,000 | 81,000 | 40,000 | 50,000 |
| Rocbin Salary | | | 39,038 | | | - | - | - | - |
| Insurance | 17,970 | 14,100 | - | 17,970 | 14,100 | - | - | - | 17,970 |
| Supplies | 8,000 | 2,500 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 |
| Professional Fees | 0 | 45,000 | 0 | 0 | 0 | 10,000 | 0 | 0 | 0 |
| Vehicle Expenses | 6,000 | 8,055 | 10,160 | 15,000 | 6,000 | 8,055 | 10,160 | 15,000 | 6,000 |
| Utilities and Telephone | 10,000 | 1,000 | 1,000 | 24,000 | 4,000 | 4,000 | 4,000 | 24,000 | 4,000 |
| Freight | 22,000 | 22,000 | 22,000 | 22,000 | 22,000 | 22,000 | 22,000 | 22,000 | 22,000 |
| Building, Yard and Shop Maintenance | 11,187 | 9,100 | 11,068 | 9,100 | 11,187 | 9,100 | 11,068 | 9,100 | 11,187 |
| Advertising | 1,500 | 23,000 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 |
| Travel and Entertainment | 800 | 800 | 800 | 800 | 800 | 10,800 | 800 | 800 | 800 |
| Collection Expenses | - | - | - | - | - | - | - | - | - |
| Bank Charges | - | - | - | - | - | - | - | - | - |
| Property Taxes | - | - | - | - | 54,067 | - | - | - | - |
| EDP Expenses | - | 18,000 | - | 18,000 | - | 18,000 | - | 18,000 | - |
| Misc. Expenses | 17,450 | 16,150 | 14,950 | 16,150 | 14,950 | 18,650 | 14,950 | 16,150 | 14,950 |
| Total Operating Disbursements ( Inc Net Checks ) | 1,229,299 | 1,181,253 | 986,260 | 943,017 | 1,322,927 | 1,150,101 | 1,181,541 | 977,113 | 1,337,643 |
| | | | | | | | | | |
| Actual Disbursements | | | | | | | | | |
| | | | | | | | | | |
| Operating Cash Flow | (315,138) | 126,178 | 227,168 | 272,141 | (8,297) | 98,750 | 339,042 | 464,609 | (41,145) |
| | | | | | | | | | |
| Debt Service Requirements: | | | | | | | | | |
| Floor Plan P&I and Related: | | | | | | | | | |
| Komatsu: | | | | | | | | | |
| Principal | - | - | - | - | - | - | - | - | - |
| Interest | - | - | 28,000 | - | - | - | 28,000 | - | - |
| Floor Plan P&I | - | - | 28,000 | - | - | - | 28,000 | - | - |
| | | | | | | | | | |
| Debt Service: | | | | | | | | | |
| Callidus Revolver Interest | - | 75,000 | - | - | - | - | 75,000 | - | - |
| Callidus Facility B Term Loan-principal | - | 12,000 | - | - | - | - | 12,000 | - | - |
| Callidus Facility B Term Loan-interest | - | 15,000 | - | - | - | - | 15,000 | - | - |
| Callidus Facility C term Loan-principal | - | 20,000 | - | - | - | - | 20,000 | - | - |
| Callidus Facility C term Loan-interest | 50,000 | 148,000 | - | - | - | 50,000 | 148,000 | - | - |
| Callidus DIP/Appraisal fee/Legal | 200,000 | - | - | - | - | - | - | - | - |
| | | | | | | | | | |
| Total Callidus Debt Service | 250,000 | 270,000 | - | - | - | 50,000 | 270,000 | - | - |
| | | | | | | | | | |
| Total Debt Service Payments | 250,000 | 270,000 | 28,000 | - | - | 50,000 | 298,000 | - | - |
| Total disbursements | 1,479,299 | 1,451,253 | 1,014,260 | 943,017 | 1,322,927 | 1,200,101 | 1,479,541 | 977,113 | 1,337,643 |
| Net Cash InFlow(outflow) | (565,138) | (143,822) | 199,168 | 272,141 | (8,297) | 48,750 | 41,042 | 464,609 | (41,145) |
| | | | | | | | | | |
| Loan Balance | 4,945,126 | 4,994,982 | 4,712,778 | 4,355,409 | 4,278,478 | 4,144,500 | 4,007,720 | 3,447,373 | 3,392,780 |
| | | | | | | | | | |
| | | | | | | | | | |
| Excess Availability(Shortage) | 567,868 | (36,127) | (92,631) | 91,001 | 246,840 | 428,275 | 495,831 | 280,303 | 798,198 |

EXHIBIT B

to

RATIFICATION AND AMENDMENT AGREEMENT

**Form of Interim Financing Order**

(see attached)

# **EXHIBIT A**

[Proposed Order]

**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY**
Caption in Compliance with D.N.J. LBR 9004-1(b)

**DILWORTH PAXSON LLP**
1500 Market Street, Suite 3500E
Philadelphia, PA 19102
Telephone: (215) 575-7000
Lawrence G. McMichael (*pro hac vice* admission pending)
Anne M. Aaronson (AA1679)
Catherine G. Pappas (CP0458)

*Proposed Counsel to the Debtors and Debtors in
Possession*

| | |
|---|---|
| In re: | Chapter 11 |
| BINDER MACHINERY CO., LLC, | Case No. 16-28015 (KCF) |
| Debtor. | Joint Administration Requested |
| In re: | Chapter 11 |
| ROCBIN INVESTMENT CORP., | Case No. 16-28024 (KCF) |
| Debtor. | Joint Administration Requested |
| In re: | Chapter 11 |
| BINDER MANAGERIAL SERVICES, LLC, | Case No. 16-28020 (KCF) |
| Debtor. | Joint Administration Requested |
| In re: | Chapter 11 |
| BINDER REALTY OF SOUTH PLAINFIELD, LLC, | Case No. 16-28025 (KCF) |
| Debtor. | Joint Administration Requested |
| In re: | Chapter 11 |
| BINDER REALTY OF WINSLOW, LLC, | Case No. 16-28026 (KCF) |
| Debtor. | Joint Administration Requested |

| | |
|---|---|
| In re: | Chapter 11 |
| 76 MENDHAM ROAD, LLC, | Case No. 16-28028 (KCF) |
| Debtor. | Joint Administration Requested |
| | Judge: _____ |
| | Hearing Date: _____, 2016 |

**INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364, AND 507 AND FED. R. BANKR. P. 2002, 4001 AND 9014 (I) AUTHORIZING DEBTORS AND DEBTORS IN POSSESSION TO OBTAIN POSTPETITION FINANCING, (II) AUTHORIZING USE OF CASH COLLATERAL, (III) GRANTING LIENS AND SUPER-PRIORITY CLAIMS, (IV) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED LENDERS, (V) MODIFYING THE AUTOMATIC STAY; (VI) SCHEDULING A FINAL HEARING, AND (VII) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[1] of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") pursuant to §§ 105, 361, 362, 363, 364(c)(1), 364(c)(2) and 364(c)(3) of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 4001(c), and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules"), and Rule 4001-2 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), *inter alia* seeking, among other things:

*(i)* authorization for (a) Binder Machinery Co., LLC, as debtor and debtor-in-possession ("Machinery"), Binder Realty of South Plainfield, LLC, as debtor and debtor-in-possession ("South Plainfield"),  and Binder Realty of Winslow, LLC, as debtor and debtor-in-possession ("Winslow", and together with Machinery, and South Plainfield, the "Debtor Borrowers") to obtain, and (b) Rocbin Investment Corp., as debtor and debtor-in-

---

[1]    Capitalized terms used but not defined in this Order shall have the same meanings ascribed to such terms in the Pre-Petition Loan Agreement, as amended by the Ratification Agreement.

possession ("Rocbin"), and Binder Managerial Services LLC, as debtor and debtor-in-possession

("Managerial" and together with Rocbin, (the "Debtor Guarantors"), to guarantee,

unconditionally, on a joint and several basis, up to $18,543,500 million in post-petition financing

from Callidus Capital Corporation ("Lender") in accordance with all of the lending formulae,

sublimits, term and conditions set forth in the Pre-Petition Loan Agreement, as amended and

ratified by the Ratification Agreement (as defined below), the accompanying Budget (as defined

below) and in accordance with this order ("Interim Order"), secured by perfected senior priority

security interests in and liens on the Collateral (as defined below), pursuant to §§ 364(c)(2) and

364(c)(3) of the Bankruptcy Code;

*(ii)* authorization for the Debtor Borrowers and Debtor

Guarantors (each individually, a "Debtor Loan Party" and collectively, the "Debtor Loan

Parties") to execute, deliver and enter into the Ratification and Amendment Agreement, dated as

of September [_], 2016, by and among Lender, Debtor Borrowers, Debtor Guarantors and

Individual Guarantor (as defined below) (the "Ratification Agreement" a copy of which is

attached as Exhibit 1 and is incorporated herein), which ratifies, extends, adopts and amends the

Pre-Petition Loan Agreement and the other Pre-Petition Credit Documents (each as defined

below);

*(iii)* authorization for the Debtor Loan Parties to grant superpriority administrative

claim status, pursuant to § 364(c)(1) of the Bankruptcy Code, to Lender, in respect of all Pre-

Petition Obligations and Post-Petition Obligations (each as defined in the Ratification

Agreement);

*(iv)* as set forth below, approval of certain stipulations by the

Debtors as set forth in this Interim Order in connection with the Existing Loan Documents;

*(v)* as set forth below, authorization to provide adequate protection to (a) Pre-Petition Lender, (b) Floor Plan Lenders (as defined below) and (c) Subordinated Lender (as defined below);

*(vi)* authorization for the Debtor Loan Parties to use "cash collateral" as such term is defined in Section 363 of the Bankruptcy Code, subject to the liens and security interests of Lender, Pre-Petition Lender, Floor Plan Lenders and Subordinated Lender;

*(vii)* effective only upon entry of a Final Order (as defined below), the waiver of the Debtors' right to assert claims to surcharge against the Collateral (as defined below) pursuant to § 506(c) of the Bankruptcy Code and any "equities of the case" exception in Section 552(b) of the Bankruptcy Code, to the extent set forth below;

*(viii)* the vacation and modification of the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of this Interim Order to the extent hereinafter set forth;

*(ix)* the setting of a final hearing on the Motion ("<u>Final Hearing</u>") to consider entry of a final order (the "<u>Final Order</u>") authorizing, among other things, the borrowing under the Post-Petition Credit Documents on a final basis, as set forth in the Motion and the Ratification Agreement filed with the Court, including the granting to Lender the senior security interests and liens described above and super-priority administrative expense claims; and

*(x)* related relief.

The initial hearing on the Motion having been held by this Court on September [__], 2016 (the "<u>Interim Hearing</u>"), and upon the record made by the Debtors at the Interim Hearing,

including the Motion, the Certification of Robert C. Binder in Support of Debtors' First Day

Motions (the "First-Day Declaration"), and the filings and pleadings in the above-captioned

chapter 11 cases (individually and collectively, the "Chapter 11 Case"), the Court having found

that the relief requested in the Motion is in the best interests of Debtors, their estates, their

creditors and other parties in interest; and appropriate notice of the Motion, the relief requested

therein, and the Interim Hearing (the "Notice") was appropriate under the circumstances; and the

Notice having been served by the Debtors in accordance with Rule 4001(c) on (i) counsel to

Lender; (ii) counsel to the Floor Plan Lenders (iii) counsel to Subordinated Loan Lender, (iv) the

office of the United States Trustee (the "U.S. Trustee"), (v) the holders of the thirty (30) largest

unsecured claims, on a consolidated basis, against the Debtors' estates (the "30 Largest

Unsecured Creditors"), (vi) the Internal Revenue Service, and (vii) certain other parties identified

in the certificate of service filed with the Court, including, without limitation, (a) all creditors

who have filed or recorded pre-petition liens or security interests against any of the Debtors'

assets, (b) all relevant state taxing authorities, and (c) all landlord, owners and/or operators of

premises at which any of the Debtor Loan Parties' inventory and/or equipment is located

(collectively, the "Noticed Parties") and the opportunity for a hearing on the Motion was

appropriate and no other notice need be provided; and after due deliberation sufficient cause

appearing therefor;

     THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND

CONCLUSIONS OF LAW:

     (A)               Petition.  On September 20, 2016 (the "Petition

Date"), each Debtor filed a voluntary petition (each, a "Petition") under chapter 11 of the

Bankruptcy Code.  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

(B)                                    Disposition.    The Motion is hereby granted in accordance with the terms of this Interim Order.  Any objections to the Motion with respect to the entry of this Interim Order that have not been withdrawn, waived or settled are hereby denied and overruled.  This Interim Order shall become effective immediately upon entry.

(C)                                    Jurisdiction and Venue.  The Court has jurisdiction of this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.  The Motion is a "core" proceeding as defined in 28 U.S.C. §§ 157(b)(2)(A), (D) and (M).  Venue of the Cases and the Motion in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

(D)                                    Notice.    The Notice was given in the manner described in the Motion.  Under the circumstances, the Notice given by the Debtors of the Motion, the Interim Hearing and the relief granted under this Interim Order constitutes due and sufficient notice thereof and complies with Bankruptcy Rules 4001(b) and 4001(c).

(E)                                    Debtor Loan Parties' Acknowledgments and Agreements.  Without prejudice to the rights of any creditors' committee appointed in these Cases under Section 1102 of the Bankruptcy Code (the "Committee") or other parties-in-interest as and to the extent set forth in Section 4.1 of this Interim Order, the Debtors admit, stipulate, acknowledge and agree that:

(1)    Pre-Petition Credit Documents.  Prior to the commencement of the Chapter 11Case, Pre-Petition Lender made loans, advances and provided other financial accommodations to Debtor Loan Parties pursuant to the terms and conditions set forth in (1) the

Loan Agreement, dated December 2, 2015, by and among Debtor Borrowers, Debtor Guarantors, and Pre-Petition Lender, as amended (referred to herein as the "Pre-Petition Loan Agreement"); and (2) all other agreements, documents and instruments executed and/or delivered with, to, or in favor of Pre-Petition Lender, including, without limitation, the Facility A Revolving Note, by Debtor Borrowers in favor of Pre-Petition Lender ("Note A"), Facility B Term Note by Debtor Borrowers in favor of Pre-Petition Lender ("Note B"), the Facility C Term Note, by Debtor Borrowers in favor of Pre-Petition Lender ("Note C") and the Facility D Term Note, by Debtor Borrowers in favor of Pre-Petition Lender, ("Note D" and together with Note A, Note B and Note C, collectively, the "Pre-Petition Notes"), the Security Agreement by and among Debtor Borrowers and Pre-Petition Lender (the "Pre-Petition Security Agreement"), the Guaranty Agreement by Robert Binder ("Individual Guarantor") in favor of Pre-Petition Lender (the "Individual Guaranty"), the Guaranty and Security Agreement by Debtor Guarantors in favor of Pre-Petition Lender (the "Pre-Petition Guaranty and Security Agreement"), all security agreements, notes, guarantees, mortgages, Uniform Commercial Code financing statements and all other related agreements, documents and instruments executed and/or delivered in connection therewith or related thereto (all of the foregoing, together with the Pre-Petition Loan Agreement, as all of the same have heretofore been amended, supplemented, modified, extended, renewed, restated and/or replaced at any time prior to the Petition Date, collectively, the "Pre-Petition Credit Documents").  Copies of the operative Pre-Petition Credit Documents are on file with counsel to the Debtors and available upon reasonable request.

(2)    Pre-Petition Loan Obligations.  As of the Petition Date, the Debtors were indebted to Pre-Petition Lender under the Pre-Petition Credit Documents in respect of Loans, Term Loans, Supplemental Loans and all other Obligations (each as defined in the Pre-

Petition Loan Agreement) in an aggregate outstanding principal amount of not less than $15,706,658.32, plus interest accrued and accruing thereon, together with all costs, fees, expenses (including attorneys' fees and legal expenses) and other charges accrued, accruing or chargeable with respect thereto (collectively, the "Pre-Petition Loan Obligations"). The Pre-Petition Loan Obligations constitute allowed, legal, valid, binding, enforceable and non-avoidable obligations of Debtor Loan Parties, and are not subject to any offset, defense, counterclaim, avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or any other applicable law, and Debtors do not possess, shall not assert, hereby forever release, and are forever barred from bringing any claim, counterclaim, setoff or defense of any kind, nature or description which would in any way affect the validity, enforceability and non-avoidability of any of the Pre-Petition Loan Obligations or liens and security interest securing the same described in clause (E)(3) below.

(3)        Pre-Petition Loan Collateral.    As of the Petition Date, the Pre-Petition Loan Obligations were fully secured pursuant to the Pre-Petition Loan Documents by valid, perfected, enforceable and non-avoidable first-priority security interests and liens granted by Debtor Loan Parties to Pre-Petition Lender under the Pre-Petition Credit Documents, upon all of the Collateral (as defined in the Pre-Petition Credit Documents and hereinafter referred to as the "Pre-Petition Loan Collateral"), subject only to the terms of the Floor Plan Intercreditor Agreement (as hereinafter defined) and liens specifically permitted under the Pre-Petition Loan Agreement to the extent that such security interests, liens or encumbrances are (1) valid, perfected and non-avoidable security interests, liens or encumbrances existing as of the Petition Date, and (2) senior to and have not been or are not subject to being subordinated to Pre-Petition Lender's liens on and security interests in the Pre-Petition Loan Collateral under the Pre-Petition

Credit Documents or otherwise avoided, and, in each instance, only for so long as and to the extent that such encumbrances are and remain senior and outstanding (hereinafter referred to as the "Permitted Encumbrances").  The Debtors do not possess and will not assert any claim, counterclaim, setoff or defense of any kind, nature or description which would in any way affect the validity, enforceability and non-avoidability of any of Pre-Petition Lender's liens, claims or security interests in the Pre-Petition Loan Collateral.

(4)        Proof of Claim.  The acknowledgment by Debtors of the Pre-Petition Loan Obligations and the liens, rights, priorities and protections granted to or in favor of Pre-Petition Lender in respect of the Pre-Petition Loan Collateral as set forth herein and in the Pre-Petition Credit Documents shall be deemed a timely filed proof of claim on behalf of Pre-Petition Lender in the Chapter 11 Case.

(5)        Floor Plan Documents.  Prior to the commencement of the Cases, Floor Plan Lenders (as defined below) made loans, advances and provided other financial accommodations to Machinery and Rocbin pursuant to the terms and conditions set forth in (a) the Komatsu Loan Documents (as defined in the Floor Plan Intercreditor)  (as amended, restated, modified, supplemented and replaced from time to time prior to the Petition Date, the "Floor Plan Documents"), by and among Machinery and Rocbin, Komatsu America Corp. ("KAC"), Komatsu Financial Limited Partnership ("KFLP") and any other affiliates of KAC or KFLP (the "Floor Plan Lenders") and (b) all other agreements, documents and instruments executed and/or delivered with, to or in favor of the Floor Plan Lenders, and all other security agreements, notes, guarantees, mortgages, Uniform Commercial Code financing statements and all other related agreements, documents and instruments, including any fee letters, executed and/or delivered in connection therewith or related thereto (all of the foregoing,  as all of the same have been

supplemented, modified, extended, renewed, restated and/or replaced at any time prior to the

Petition Date, collectively, the "Floor Plan Documents"). Copies of the operative Floor Plan

Documents are on file with counsel to the Debtors and available upon reasonable request.

(6)    Floor Plan Loan Obligations. As of the Petition Date, the Debtors

were indebted to Floor Plan Lenders under the Floor Plan Documents in respect of loans and

other obligations evidenced thereby in an aggregate outstanding principal amount of not less than

$[25,000,000], plus interest accrued and accruing thereon, together with all costs, fees, expenses

(including attorneys' fees and legal expenses) and other charges accrued, accruing or chargeable

with respect thereto (collectively, the "Floor Plan Loan Obligations"). The Floor Plan Loan

Obligations constitute allowed, legal, valid, binding, enforceable and non-avoidable obligations

of Debtors, and are not subject to any offset, defense, counterclaim, avoidance,

recharacterization or subordination pursuant to the Bankruptcy Code or any other applicable law,

and Debtors do not possess, shall not assert, hereby forever release, and are forever barred from

bringing any claim, counterclaim, setoff or defense of any kind, nature or description which

would in any way affect the validity, enforceability and non-avoidability of any of the Floor Plan

Loan Obligations, or the liens and security interests securing the same described in clause (E)(7)

below.

(7)    Floor Plan Collateral. As of the Petition Date, the Floor Plan Loan

Obligations were fully secured pursuant to the Floor Plan Documents by valid, perfected,

enforceable and non-avoidable security interests and liens granted by Debtors to Floor Plan

Lenders, under the Floor Plan Documents ("Floor Plan Liens"), upon all of the "Collateral" as

defined in the Floor Plan Documents (the "Floor Plan Collateral"), subject to the terms of the

Floor Plan Intercreditor Agreement. The Debtors do not possess and will not assert any claim,

counterclaim, setoff or defense of any kind, nature or description which would in any way affect the validity, enforceability and non-avoidability of any of Floor Plan Lenders' Liens in the Floor Plan Collateral.

(8)    Floor Plan Proof of Claim. The acknowledgment by Debtors of the Floor Plan Loan Obligations and the liens, rights, priorities and protections granted to or in favor of Floor Plan Lenders in respect of the Floor Plan Collateral as set forth herein and in the Floor Plan Loan Documents shall be deemed a timely filed proof of claim on behalf of Floor Plan Lenders in this Chapter 11 Case.

(9)    Subordinated Loan Documents.  Prior to the commencement of the Chapter 11 Case, Subordinated Lender (as defined below) made loans, advances and provided other financial accommodations to Debtors pursuant to the terms and conditions set forth in (a) the Amendment and Forbearance Agreement, dated October 9, 2013, as amended by that certain Waiver and First Amendment to Amendment and Forbearance Agreement, dated August 19, 2014 and that certain Waiver and Second Amendment to Amendment and Forbearance Agreement, dated December 2, 2015, (as amended, restated, modified, supplemented and replaced from time to time prior to the Petition Date ( the "Subordinated Loan Agreement"), by and among Debtor Borrowers, Debtor Guarantors, and Sandton Credit Solutions Master Fund III, LP ("Subordinated Lender") and (b) all other agreements, documents and instruments, executed and/or delivered with, to or in favor of the Subordinated Lender, including, without limitation, all security agreements, notes, guarantees, mortgages, Uniform Commercial Code financing statements and all other related agreements, documents and instruments, including any fee letters, executed and/or delivered in connection therewith or related thereto (all the foregoing, together with the Subordinated Loan Agreement, as all of the same have been supplemented,

11

modified, extended, renewed, restated and/or replaced at any time prior to the Petition Date, collectively, the "Subordinated Loan Documents"). Copies of the operative Subordinated Loan Documents are on file with counsel to the Debtors and available upon reasonable request.

(10)    Subordinated Loan Obligations. As of the Petition Date, the Debtors were indebted to the Subordinated Lender under the Subordinated Loan Documents in respect of loans and other obligations evidenced thereby in an aggregate outstanding principal amount of not more than $2,000,000, plus interest accrued and accruing thereon, together with all costs, fees, expenses (including attorneys' fees and legal expenses) and other charges accrued, accruing or chargeable with respect thereto (collectively, the "Subordinated Loan Obligations").

(11)    Subordinated Loan Collateral. As of the Petition Date, the Subordinated Loan Obligations were secured pursuant to the Subordinated Loan Documents by valid, perfected, enforceable and non-avoidable junior security interests and liens granted by Debtors to Subordinated Lender under the Subordinated Loan Documents ("Subordinated Loan Liens"), upon all of the "Collateral" as defined in the Subordinated Loan Documents (the "Subordinated Collateral"). The Subordinated Loan Liens in the Subordinated Loan Collateral are junior and subordinate to the liens of Pre-Petition Lender pursuant to the terms of that certain Intercreditor Agreement, dated December 2, 2015, by and among Pre-Petition Lender and Subordinated Lender (the "Subordinated Intercreditor Agreement").

(12)    Intercreditor Agreements.

(a)    Pre-Petition Lender, Floor Plan Lenders and Debtor Loan Parties are parties to the Intercreditor Agreement dated December 2, 2015 (the "Floor Plan Intercreditor Agreement"), which sets forth the respective rights, obligations and priorities of liens and security interests of Pre-Petition Lender and the Floor Plan Lenders with respect to the Callidus

Collateral and the Komatsu Senior Loan Collateral (as each term is defined in the Floor Plan Intercreditor).   Nothing in this Interim Order shall modify the terms of the Floor Plan Intercreditor Agreement and the rights, priorities and obligations set forth thereunder.

(b)    Pre-Petition Lender, Subordinated Lender, Debtor Borrowers, Debtor Guarantors, and Individual Guarantor are parties to the Intercreditor Agreement, dated December 2, 2015 (the "Subordinated Intercreditor Agreement"), which sets forth the respective rights, obligations and priorities of liens and security interests of Pre-Petition Lender and the Subordinated Lender with respect to the Senior Lender Collateral and the Subordinated Lender Collateral (as each term is defined in the Subordinated Intercreditor Agreement).  Nothing in this Interim Order shall modify the terms of the Subordinated Intercreditor Agreement and the rights, priorities and obligations set forth thereunder.

(F)    Findings Regarding the Post-Petition Financing.

(1)    Post-Petition Financing.  The Debtors have requested from Lender, and the Lender is willing, to extend certain loans, advances and other financial accommodations on the terms and conditions set forth in this Interim Order, the Loan Agreement and the other Credit Documents, respectively.

(2)    Need for Post-Petition Financing.  The Debtor Loan Parties have an immediate and critical need to obtain the financing, including the continued use of cash collateral, in order to permit, among other things, the orderly continuation of the operation of their businesses, to maintain business relationships with their vendors, suppliers and customers, to pay their employees, and to otherwise fund their working capital and operational needs. Access to the financing requested in the Motion is essential to the Debtors' continued viability as the Debtors seek to maximize the value of the assets of the Estates (as defined below) for the

13

benefit of all creditors of the Debtors. The ability of the Debtor Loan Parties to obtain sufficient working capital and liquidity through the proposed post-petition financing arrangements with the Lender as set forth in this Interim Order, the Ratification Agreement, and other Credit Documents, as applicable, is vital to the preservation and maintenance of the going concern value of each Debtor. Accordingly, the Debtor Loan Parties have an immediate need to obtain the post-petition financing in order to, among other things, permit the orderly continuation of the operation of their businesses, minimize the disruption of their business operations, and preserve and maximize the value of the assets of the Debtors' bankruptcy estates (as defined under § 541 of the Bankruptcy Code, the "Estates") in order to maximize the recovery to all creditors of the Estates.

(3)      No Credit Available on More Favorable Terms. The Debtor Loan Parties are unable to procure financing in the form of unsecured credit allowable under § 503(b)(1) of the Bankruptcy Code, as an administrative expense under § 364(a) or (b) of the Bankruptcy Code, or in exchange for the grant of an administrative expense priority pursuant to § 364(c)(1), 364(c)(2) or 364(c)(3) of the Bankruptcy Code, without granting liens on assets. The Debtor Loan Parties have been unable to procure the necessary financing on terms more favorable, taken as a whole, than the financing offered by Lender pursuant to the Credit Documents.

(4)      Budget. The Debtors have prepared and delivered to Lender an initial 9-week budget (as defined in the Credit Agreement, the "Budget"). Such Budget has been thoroughly reviewed by the Debtors and their management and sets forth, among other things, the projected cash receipts and disbursements of the Debtors for the periods covered thereby. The Debtors represent that the Budget is achievable in accordance with the terms of the Credit

Documents and this Interim Order and will allow the Debtors to operate at all times during these Cases without the accrual of unpaid administrative expenses. The Lender is relying upon the Debtors' compliance with the Budget in accordance with Section 5.3 of the Ratification Agreement and this Interim Order in determining to enter into the post-petition financing arrangements provided for herein.

(5)        Business Judgment and Good Faith Pursuant to § 364(e). The terms of the Credit Documents and this Interim Order are fair, just and reasonable under the circumstances, are ordinary and appropriate for secured financing to debtors-in-possession, reflect the Debtors' exercise of their prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration. The terms and conditions of the Credit Documents and this Interim Order have been negotiated in good faith and at arms' length by and among the Debtor Loan Parties and Lender with all parties being represented by counsel. Any credit extended under the terms of this Interim Order shall be deemed to have been extended in good faith by the Lender, as that term is used in § 364(e) of the Bankruptcy Code.

(6)        Good Cause. The relief requested in the Motion is necessary, essential and appropriate, and is in the best interest of and will benefit the Debtors, their creditors and their Estates, as its implementation will, among other things, provide the Debtors with the necessary liquidity to (1) minimize disruption to the Debtors' businesses and on-going operations, (2) preserve and maximize the value of the Debtors' Estates for the benefit of all the Debtors' creditors, and (3) avoid immediate and irreparable harm to the Debtors, their creditors, their businesses, their employees, and their assets.

(7)        <u>Immediate Entry</u>.  Sufficient cause exists for immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(c)(2).  No party appearing in the Chapter 11 Case has filed or made an objection to the relief sought in the Motion or the entry of this Interim Order, or any objections that were made (to the extent such objections have not been withdrawn) are hereby overruled.

Based upon the foregoing, and after due consideration and good cause appearing therefor;

IT IS HEREBY ORDERED THAT:

**1.**  <u>Authorization and Conditions to Financing.</u>

**1.1**  <u>Motion Granted</u>.  The Motion is granted in accordance with Bankruptcy Rule 4001(c)(2) to the extent provided in this Interim Order.  Except as otherwise expressly provided in this Interim Order, any objection to the entry of this Interim Order that has not been withdrawn, waived, resolved or settled, is hereby denied and overruled on the merits.

**1.2**  <u>Authorization to Borrow, Guaranty, and Use Loan Proceeds</u>.  Debtor Borrowers are hereby authorized and empowered to immediately borrow and obtain Loans and to incur indebtedness and other Obligations (as defined in the Ratification Agreement), and the Debtor Guarantors are hereby authorized to guaranty such Loans, up to an aggregate principal amount of $7,450,000 plus all interest, costs, fees and expenses, accrued or accruing under the Loan Agreement and the other Credit Documents, all pursuant to the terms and conditions of this Interim Order, Pre-Petition Loan Agreement, as ratified and amended by the Ratification Agreement (the "Loan Agreement"), and the other Credit Documents, during the period commencing on the date of this Interim Order through and including the date of the Final Hearing as set forth in Section 6 of this Interim Order (the "<u>Interim Financing Period</u>") in such amounts as may be made available in accordance with all of the lending formulae, sublimits, terms and conditions set forth in the Ratification Agreement, the Interim Order and the Budget

during the Interim Financing Period.  Subject to the terms and conditions contained in this Interim Order, the Loan Agreement and the Credit Documents, Debtor Borrowers shall use the proceeds of the Loans and other credit and financial accommodations provided by Lender under the Ratification Agreement and the other Credit Documents for the payment of expenses set forth in the Budget.

### 1.3    DIP Loan Documents

(a)    Authorization.  Debtor Loan Parties are hereby authorized and directed to enter into, execute, deliver, perform, and comply with all of the terms, conditions and covenants of the Ratification Agreement and the other Credit Documents, pursuant to which each Debtor Loan Party ratifies, reaffirms, extends, assumes, adopts, amends and restates the Pre-Petition Loan Agreement and the other Pre-Petition Credit Documents to which it is a party, including, without limitation, the Deposit Control Account Agreements, dated December 28, 2015, by and among Debtor Loan Parties, Pre-Petition Lender and the Blocked Account Bank (the "Blocked Account Agreement") and the Pre-Petition Obligations, which include, without limitation, all Loans and other credit and financial accommodations provided to Debtor Loan Parties by Lender pursuant to the Pre-Petition Credit Documents (each term as defined in the Pre-Petition Loan Agreement) will, as funds are borrowed and repaid in accordance with this Interim Order, be gradually rolled into the Post-Petition Loan Obligations, and deemed for all purposes as part of and to have been incurred under, the Credit Documents.  Upon execution and delivery of the Ratification Agreement and the other Credit Documents, such agreements and documents shall constitute valid and binding obligations of the Debtors Loan Parties, enforceable against each Debtor party thereto in accordance with the terms of such agreements, documents and this Interim Order.  No obligation, payment, transfer or grant of security under the Ratification Agreement, the other Credit Documents or this Interim Order shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or under any applicable law

(including, without limitation, under § 502(d) of the Bankruptcy Code), or be subject to any defense, reduction, setoff, recoupment or counterclaim.

(b)    <u>Approval; Evidence of Borrowing Arrangements</u>.    All terms, conditions and covenants set forth in the Credit Documents (including, without limitation, the Ratification Agreement) are approved to the extent necessary to implement the terms and provisions of this Interim Order.  All such terms, conditions and covenants shall be sufficient and conclusive evidence of (a) the borrowing arrangements by and among Debtor Loan Parties and Lender and (b) each Debtor Loan Party's assumption and adoption of all of the terms, conditions, and covenants of the Ratification Agreement and the other Credit  Documents for all purposes, including, without limitation, to the extent applicable, the payment of the Obligations arising thereunder, including, without limitation, all principal, interest, fees and other expenses, including, without limitation, all of Lender's professional fees, attorney fees and legal expenses, as more fully set forth in the Credit Documents.

(c)    <u>Amendment</u>.    Subject to the terms and conditions of the Ratification Agreement and the other Credit Documents, Debtor Loan Parties and DIP Lender may amend, modify, supplement or waive any provision of the Credit Documents (a "<u>DIP Loan Amendment</u>") without further approval or order of the Court so long as (a) such DIP Loan Amendment is not material (for purposes hereof, a "material" DIP Loan Amendment shall mean, any DIP Loan Amendment that operates to increase the interest rate other than as currently provided in the DIP Loan Documents, increase the Credit Facility Amount (as defined in the Loan Agreement), add specific new events of default or enlarge the nature and extent of default remedies available to Lender following an event of default, or otherwise modify any terms and conditions in any Credit Document in a manner materially less favorable to Debtors) and is undertaken in good faith by Lender and Debtors; (b) the Debtors provide prior written notice of the DIP Loan Amendment (the "<u>DIP Loan Amendment</u>

Notice") to (i) the U.S. Trustee, (ii) counsel to any Committee, or in the event no such

Committee is appointed at the time of such DIP Loan Amendment, the 30 Largest Unsecured

Creditors, (iii) counsel to Floor Plan Lenders, (iv) counsel to the Subordinated Loan Lender;

(c) the Debtors file the DIP Loan Amendment Notice with the Court; and (d) no objection to

the DIP Loan Amendment is filed with the Court within two (2) business days from the later

of the date the DIP Loan Amendment Notice is served or the date the DIP Loan Amendment

Notice is filed with the Court in accordance with this Section.  Any material DIP Loan

Amendment to the DIP Loan Documents must be approved by the Court to be effective.

      **1.4**    <u>Payments and Application of Payments</u>.  The Debtors are authorized and

directed to make all payments and transfers of Estate property to Lender, as provided for,

permitted and/or required under the Loan Agreement and the other Credit Documents, which

payments and transfers shall not be avoidable or recoverable from DIP Lender under §§ 547,

548, 550, 553 or any other section of the Bankruptcy Code, or any other claim, charge,

assessment, or other liability, whether by application of the Bankruptcy Code, other law or

otherwise.  All proceeds of the Collateral (as defined herein) received by Lender, and any other

amounts or payments received by Lender in respect of the Post-Petition Obligations, may be

applied or deemed to be applied by Lender, in its discretion, to the repayment of the Pre-Petition

Obligations, all in accordance with the Loan Agreement, the other Credit Documents and this

Interim Order.  Without limiting the generality of the foregoing, the Debtor Loan Parties are

authorized and directed, without further order of this Court, to pay or reimburse the Lender for

all present and future costs and expenses, including, without limitation, all professional fees,

consultant fees and legal fees and expenses paid or incurred by Lender in connection with the

financing transactions as provided in this Interim Order and the Credit Documents, all of which

shall be and are included as part of the principal amount of the Post-Petition Obligations and secured by the Collateral (as defined herein).

        **1.5**      **Continuation of Pre-Petition Procedures.**  In accordance with the terms of the Credit Documents, all practices and procedures for the payment and collection of proceeds of the Collateral (as defined herein), the turnover of cash, the delivery of property to Lender, including the existing Deposit Account Control Agreements (as such term is defined in the Loan Agreement) currently in place with Pre-Petition Lender, and any other similar lockbox or blocked depository bank account arrangements, shall be ratified, reaffirmed and assumed by Debtor Loan Parties, are hereby approved and shall continue without interruption after the commencement of the Cases.

**2.**      **Post-Petition Lien; Superpriority Administrative Claim Status.**

        **2.1**      **Post-Petition Lien.**

        (a) **Post-Petition Lien Granting.**  To secure the prompt payment and performance of any and all Post-Petition Obligations (and upon entry of a Final Order, all Pre-Petition Obligations shall be deemed rolled into the Post-Petition Obligations, collectively, the "Obligations") (as each term is defined in Ratification Agreement) of Debtor Loan Parties to Lender of whatever kind, nature or description, absolute or contingent, now existing or hereafter arising, DIP Lender shall have and is hereby granted, effective as of the Petition Date, valid and perfected first-priority security interests and liens, superior to all other liens, claims or security interests that any creditor of the Debtors' Estates may have (but subject to the Permitted Liens and Claims (as defined below), as and to the extent expressly provided in Section 2.1(d), below), in and upon all (x) of the Collateral (as defined in the Ratification Agreement), (y) subject to entry of the Final Order, all proceeds of present and future claims, rights, interests, assets and properties recovered by or on behalf of each Debtor Loan Party or any trustee of a Debtor Loan

Party (whether in the Chapter 11 Case or any subsequent case to which any Chapter 11 Case is converted), including without, limitation, all such property recovered as a result of transfers or obligations avoided or actions maintained or taken pursuant to, inter alia, Sections 542, 545, 548, 549, 550, 552 and 553 of the Bankruptcy Code (the "Avoidance Action Proceeds"), and (z) assets and properties not subject to valid, perfected and non-avoidable liens as of the Petition Date (the "Collateral").

(b)    Lien Priority in Collateral.    The liens and security interests of Lender granted under the Credit Documents and this Interim Order in the Collateral securing all Obligations (as defined in Ratification Agreement) shall be first and senior in priority to all other interests and liens of every kind, nature and description, whether created consensually, by an order of the Court or otherwise, including, without limitation, liens or interests granted in favor of third parties in conjunction with §§ 363, 364 or any other section of the Bankruptcy Code or other applicable law; provided, however, that Lender's liens on and security interests in the Collateral shall be subject only to (a) Permitted Encumbrances (and the Floor Plan Intercreditor Agreement and the Subordinated Lender Intercreditor Agreement where applicable), and (b) the Carve-Out (as defined below) solely to the extent provided for in this Interim Order (the foregoing clauses (a) and (b) are collectively referred to herein as the "Permitted Liens and Claims").

(c)    Post-Petition Lien Perfection.    This Interim Order shall be sufficient and conclusive evidence of the priority, perfection and validity of the post-petition liens and security interests granted herein, effective as of the Petition Date, without any further act and without regard to any other federal, state or local requirements or law requiring notice, filing, registration, recording or possession of the Collateral, or other act to validate or

perfect such security interest or lien, including without limitation, control agreements with any financial institution(s) party to a Deposit Account Control Agreement or holding a Blocked Account (as defined in the Loan Agreement) or other depository account consisting of Collateral (a "Perfection Act").  Notwithstanding the foregoing, if Lender, shall, in its sole discretion, elect for any reason to file, record or otherwise effectuate any Perfection Act, then Lender is authorized to perform such act, and the Debtor Loan Parties are authorized and directed to perform such act to the extent necessary or required by Lender, which act or acts shall be deemed to have been accomplished as of the date and time of entry of this Interim Order notwithstanding the date and time actually accomplished, and in such event, the subject filing or recording office is authorized to accept, file or record any document in regard to such act in accordance with applicable law.  Lender may choose to file, record or present a certified copy of this Interim Order in the same manner as a Perfection Act, which shall be tantamount to a Perfection Act, and, in such event, the subject filing or recording office is authorized to accept, file or record such certified copy of this Interim Order in accordance with applicable law.  Should Lender so choose and attempt to file, record or perform a Perfection Act, no defect or failure in connection with such attempt shall in any way limit, waive or alter the validity, enforceability, attachment, or perfection of the post-petition liens and security interests granted herein by virtue of the entry of this Interim Order.

(d)     Nullifying Pre-Petition Restrictions to Post-Petition Financing. Notwithstanding anything to the contrary contained in any pre-petition agreement, contract, lease, document, note or instrument to which any Debtor is a party or under which any Debtor is obligated, except as otherwise permitted under the Credit Documents, any provision that restricts, limits or impairs in any way any Debtor from granting Lender security interests in or

liens upon any of the Debtors' assets or properties (including, among other things, any anti-lien granting or anti-assignment clauses in any leases or other contractual arrangements to which any Debtor is a party) under the Credit Documents or this Interim Order, as applicable, or otherwise entering into and complying with all of the terms, conditions and provisions hereof or of the Credit Documents, shall not (a) be effective and/or enforceable against any such Debtor(s), or Lender, as applicable, or (b) adversely affect the validity, priority or enforceability of the liens, security interests, claims, rights, priorities and/or protections granted to Lender pursuant to this Interim Order or the Credit Documents, in each case, to the maximum extent permitted under the Bankruptcy Code and other applicable law.

**2.2**    <u>Superpriority Administrative Expenses</u>.

(a)    <u>DIP Loans</u>.  For all Post-Petition Obligations (and upon entry of a Final Order, all Pre-Petition Obligations shall be deemed rolled into the Post-Petition Obligations in accordance with the terms of the Ratification Agreement )   now  existing   or hereafter arising pursuant to this Interim Order, the Credit Documents or otherwise, Lender is granted an allowed superpriority administrative claim pursuant to § 364(c)(1) of the Bankruptcy Code, having priority in right of payment over any and all other obligations, liabilities and indebtedness of Debtors, whether now in existence or hereafter incurred by Debtors, and over any and all administrative expenses or priority claims of the kind specified in, or ordered pursuant to, inter alia §§ 105, 326, 328, 330, 331, 364, 365, 503(b), 506(c) (subject to the entry of a Final Order), 507(a), 507(b), 546(c), 726, 1113 or 1114 of the Bankruptcy Code, (including the 507(b) claims (as defined below), and whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment), which allowed superpriority administrative claim shall be payable from and

have recourse to all pre-petition and post-petition property of the Debtors and all proceeds thereof (the "DIP Loan Superpriority Claim").

        2.3    Carve-Out. Upon Lender providing written notice to Debtor Loan Parties, Debtors' lead counsel, counsel to the Floor Plan Lender, counsel to the Subordinated Lender, counsel to any Committee and the U.S. Trustee stating that one or more Events of Default (as defined in the Ratification Agreement) have occurred and that the Post Carve-Out Trigger Notice Cap (defined below) has been invoked, then the liens in the Collateral and any superpriority administrative expense claims of Lender, and the Adequate Protection Claims of each of Pre-Petition Lender, Floor Plan Lenders, and the Subordinated Loan Lender, shall each be subject only to the right of payment of the Carve-Out.

        (a)    "Carve-Out" means the sum of (a) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (c) below); (b) all reasonable fees and expenses up to $25,000 incurred by a trustee under Section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (c) below); (c) to the extent allowed by the Bankruptcy Court at any time, whether by interim order, procedural order, or otherwise, all unpaid fees and expenses (the "Allowed Professional Fees") incurred by persons or firms retained by the Debtors or any official committee appointed by the Bankruptcy Court (such committee, a "Committee"), if any, whose retention is approved by the Bankruptcy Court pursuant to Sections 327, 328, or 1103 of the Bankruptcy Code (the "Professionals"), subject to the terms of the Interim Order, the Final Order and any other interim or other compensation order entered by the Bankruptcy Court that are incurred (i) at any time before delivery by Lender of a Carve-Out Trigger

Notice (as defined below), whether allowed by the Bankruptcy Court prior to or after delivery of a Carve-Out Trigger Notice (the "Pre-Trigger Date Fees"), in an amount not to exceed $100,000 per month, or pro rata portion thereof, to the extent allowed at any time, whether by interim order, procedural order, or otherwise, less the amount previously applied to the fees and expenses of the Professionals (the amount set forth in this clause (i) being the "Pre-Carve-Out Trigger Notice Cap"); provided, that the Pre-Trigger Notice Cap (A) shall not at any time exceed the aggregate amount of the fees and expenses identified in the Budget for each such Professional or category of Professional covering the period of time through (but not after) the date of delivery of a Carve-Out Trigger Notice, and (B) shall be permanently reduced by the amount(s) paid to the Professionals from the Carve-Out Escrow Accounts; and (ii) after the delivery of a Carve-Out Trigger Notice in an aggregate amount not to exceed $100,000, to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the amount set forth in this clause (ii) being the "Post-Carve-Out Trigger Notice Cap").  For purposes of the foregoing, "Carve-Out Trigger Notice" shall mean a written notice delivered by the Lender to the Debtor Loan Parties, their lead counsel, counsel to any Committee, if any, and the U.S Trustee, which notice may be delivered following the occurrence and during the continuation of an Event of Default under the Loan Agreement or this Interim Order stating that the Post-Carve-Out Trigger Notice Cap has been invoked.  Nothing herein shall be construed to impair the ability of any party to object to the fees, expenses, reimbursement or compensation described in clauses (a), (b), (c)(i) or (c)(ii) above, on any grounds.

(b)    Excluded Professional Fees.  Notwithstanding anything to the contrary in this Interim Order, neither the Carve-Out nor the proceeds of Collateral or any Loans, or any other credit or financial accommodations provided under or in connection with

the Credit Documents shall be used to pay any Allowed Professional Fees or any other fees or expenses incurred by any Professional in connection with any of the following:

(i)     an assertion or joinder in any claim, counter-claim, action, proceeding, application, motion, objection, defense or other contested matter seeking any order, judgment, determination or similar relief: (A) challenging the amount, legality, validity, priority, perfection, or enforceability of (aa) the Pre-Petition Loan Obligations or Pre-Petition Lender's liens on and security interests in the Pre-Petition Loan Collateral, (bb) Post-Petition Obligations or Lender's liens on and security interests in the Collateral, and (cc) the Pre-Petition Loan Adequate Protection Claims (as defined below) and the Pre-Petition Lender Adequate Protection Liens (as defined below);  (B) invalidating, setting aside, avoiding or subordinating, in whole or in part, (aa) the Pre-Petition Loan Obligations or the Pre-Petition Lender's liens on and security interests in the Pre-Petition Collateral, (bb) the Post-Petition Obligations or Lender's liens on and security interests in the Collateral, or (cc) the Pre-Petition Lender Adequate Protection Claims or the Pre-Petition Lender Adequate Protection Liens; or (C) preventing, hindering or delaying Lender's assertion or enforcement of any lien, claim, right or security interest or realization upon any Collateral in accordance with the terms and conditions of this Interim Order;

(ii)     a request to use Cash Collateral (as such term is defined in section 363 of the Bankruptcy Code) without the prior written consent of Lender in accordance with the terms and conditions of this Interim Order;

(iii)     a request for authorization to obtain debtor-in-possession financing or other financial accommodations pursuant to section 364(c) or § 364(d) of the

Bankruptcy Code, other than as provided in this Interim Order, without the prior written consent of Lender;

(iv)    the commencement or prosecution of any action or proceeding of any claims, causes of action or defenses against Pre-Petition Lender, or any of its officers, directors, employees, agents, attorneys, affiliates, successors or assigns, including, without limitation, for lender liability or any attempt to recover or avoid any claim or interest from Pre-Petition Lender under chapter 5 of the Bankruptcy Code (the "Avoidance Actions");

(v)    the cost of investigation into any claims against Pre-Petition Lender arising under or in connection with the Pre-Petition Credit Documents in excess of $50,000;

(vi)    any act which has or could materially and adversely modify or compromise the rights and remedies of Lender under this Interim Order, or which results in the occurrence of an Event of Default under any Credit Document, or this Interim Order; or

(vii)    after delivery of a Carve-Out Trigger Notice, any success, completion, back-end or similar fees.

(c)    Carve-Out Escrow Account. At Lender's discretion, Lender may pay the amount of the Pre-Trigger Date Fees to be funded by, or on behalf of, the Debtors in accordance with the Budget, as and when such Pre-Trigger Date Fees are projected to be paid therein to a designated trust account held by Dilworth Paxson LLP ("Dilworth") on behalf of the Debtors.  Dilworth shall be authorized to pay to the applicable Professionals from the funds in such account the amounts owed for such Pre-Trigger Date Fees, as such fees

become due and payable to the extent allowed by the Bankruptcy Court at any time, whether by interim order, procedural order or otherwise..

        (d)     <u>Carve-Out Reserve</u>.  At Lender's discretion, Lender may, at any time and in any increment in accordance with the Loan Agreement, establish a Reserve (the "<u>Carve-Out Reserve</u>") against the amount of Loans that would otherwise be available to DIP Borrowers in respect of the Carve-Out in accordance with the terms of the Ratification Agreement.

        **2.4**     <u>Payment of Carve-Out</u>.  Payment of any Carve-Out, whether by or on behalf of Lender, shall not and shall not be deemed to reduce the Obligations, and shall not and shall not be deemed to subordinate any of Lender's liens and security interests in the Collateral, the Pre-Petition Loan Adequate Protection Claim (as defined below), or the DIP Loan Superpriority Claim or the Pre-Petition Loan Adequate Protection Superpriority Claim to any junior pre- or post-petition lien, interest or claim in favor of any other party.  Lender shall not, under any circumstance, be responsible for the direct payment or reimbursement of any fees or disbursements of any Professionals incurred in connection with the Case under any chapter of the Bankruptcy Code, and nothing in Section 2.3 of this Interim Order shall be construed to obligate Lender in any way, to pay compensation to or to reimburse expenses of any Professional, or to ensure that the Debtors have sufficient funds to pay such compensation or reimbursement.

        **2.5**     <u>Adequate Protection.</u>

        (a)     <u>Authorization to Use Cash Collateral</u>.  Subject to the terms and conditions of this Interim Order, the Credit Documents, and in accordance with the Budget, Debtor Loan Parties shall be and are hereby authorized to use the Cash Collateral (as defined in section 363 of the Bankruptcy Code) subject to the pre-petition liens and security interests

granted to the Pre-Petition Lender.  Nothing in this Interim Order shall authorize the

disposition of any assets of the Debtors or their Estate outside the ordinary course of business,

or any DIP Loan Parties' use of Cash Collateral or other proceeds resulting therefrom, except

as expressly permitted in this Interim Order, the Credit Documents and in accordance with the

Budget.

(b)    <u>Pre-Petition Lender Adequate Protection</u>.    As adequate

protection for the diminution in value of its interests in the Pre-Petition Collateral, (the "<u>Pre-</u>

<u>Petition Adequate Protection Claims</u>"), the Pre-Petition Lender, is hereby granted pursuant to

§§ 361 and 363 of the Bankruptcy Code, valid, binding, enforceable and perfected

replacement liens upon and security interests in all Collateral, including cash collateral (the

"<u>Pre-Petition Adequate Protection Liens</u>").    The Pre-Petition Replacement Liens shall be

junior and subordinate only to (A) the Carve-Out to the extent set forth herein, (B) the

Permitted Liens and Claims, and (C) Lender's liens on the Collateral to secure the Post-

Petition Obligations, and shall otherwise be senior to all other security interests in, liens on, or

claims against any of the Collateral (including the Cash Collateral): <u>provided</u> <u>that</u> the Pre-

Petition Adequate Protection Liens shall only encumber the Avoidance Action Proceeds upon

entry of the Final Order.

(c)    <u>Pre-Petition Section 507(b) Priority Claims</u>.    As additional

adequate protection for the diminution in value of its interests in the Pre-Petition Collateral,

the imposition of the automatic stay and the subordination to the Carve-Out, the Pre-Petition

Lender is hereby granted as and to the extent provided by section 507(b) of the Bankruptcy

Code an allowed superpriority administrative expense claim in each of the Cases and any

successor bankruptcy cases (the "<u>Pre-Petition Adequate Protection Superpriority Claim</u>").

The Pre-Petition Adequate Protection Superpriority Claim shall be junior only to (A) the Carve-Out, and (B) the DIP Loan Superpriority Claim, and shall otherwise have priority over all administrative expense claims and unsecured claims against Debtors and their Estates now existing or hereafter arising, of any kind or nature whatsoever.

(d)     <u>Pre-Petition Lender's Fees and Expenses</u>.    The Debtor Loan Parties are authorized to make current cash payments to Pre-Petition Lender in order to reimburse Pre-Petition Lender for the professional fees and expenses incurred by the Pre-Petition Lender.

(e)     <u>Floor Plan Lender Adequate Protection</u>. As adequate protection for the diminution in the value of their interests in the Floor Plan Collateral on account of the Debtors' use of such Floor Plan Collateral, Floor Plan Lenders (collectively, the "<u>Floor Plan Adequate Protection Parties</u>"), shall be granted the following protection, pursuant to sections 361, 507, and 363(e) of the Bankruptcy Code for the consent to the use of its Floor Plan Collateral, consent to the transactions contemplated by the Credit Documents and this Interim Order and for the diminution in the value of the pre-petition security interests of such party, whether or not such diminution in value results from the sale, lease or use by the Debtors of the collateral securing the Floor Plan Obligations, the stay of enforcement of any pre-petition security interest arising from section 362 of the Bankruptcy Code, or otherwise (each, a "<u>Floor Plan Diminution Claim</u>").   As security for and solely to the extent of any Floor Plan Diminution Claim, the Floor Plan Adequate Protection Parties are granted the following adequate protection (the "<u>Floor Plan Adequate Protection Obligations</u>"):

(1)     <u>Floor Plan Adequate Protection Lien</u>.  Floor Plan Lenders, on behalf of the Floor Plan Adequate Protection Parties, shall be granted for their benefit,

effective and perfected as of the date of entry of this Interim Order and without the necessity of the execution or filing of mortgages, security agreements, pledge agreements, financing statements or other agreements, a security interest in and lien on all assets of the Debtors (together, the "Floor Plan Adequate Protection Liens"), subject and subordinate only to (i) the Carve-Out, (ii) Permitted Liens and Claims, (iii) the liens of Lender securing all Post-Petition Obligations arising under or in connection with the Loan Agreement and the other Credit Documents and/or this Interim Order in and upon the Collateral and (iv) the Pre-Petition Adequate Protection Liens; provided that the Floor Plan Adequate Protection Liens shall only encumber the Avoidance Action Proceeds upon entry of the Final Order.

(2)    Floor Plan Adequate Protection Super-Priority Claim.    Floor Plan Lenders, on behalf of the Floor Plan Adequate Protection Parties, shall be granted, subject to the payment of the Carve-Out, a super-priority administrative expense claim junior and subordinate only to the DIP Loan Superpriority Claim and the Pre-Petition Adequate Protection Superpriority Claim; provided that the Floor Plan Lenders shall not receive or retain any payments (other than the proceeds from the sale of equipment in accordance with the Floor Plan Intercreditor Agreement or as provided in Section 2.5(g)(4) below, property or other amounts in respect of such super-priority claims unless and until all Post-Petition Obligations under the Loan Agreement and the other Credit Documents and the Pre-Petition Obligations (other than unmatured indemnity obligations for which claims have not been asserted) have indefeasibly been paid in cash in full in

accordance with the terms of the Loan Agreement and the Pre-Petition Credit Documents.

(3) <u>Fees and Expenses</u>. The Debtors are authorized to make payments to Floor Plan Lenders for Floor Plan Lenders' professional fees, including the fees and expenses of Floor Plan Lenders' counsel. Further, Debtors are directed to deliver to Floor Plan Lenders (i) all Budgets and other reporting required under the Credit  Documents and (ii) all reporting as required under the Floor Plan Agreements.

(4) <u>Adequate Protection Payments</u>. The Debtors are authorized to make payments to Floor Plan Lenders on a monthly basis in the amounts set forth on the Budget as additional adequate protection for the diminution in the value of their interests in the Floor Plan Collateral on account of the Debtors' use of such Floor Plan Collateral.

(f) <u>Subordinated Loan Adequate Protection</u>. Subordinated Loan Lender (the <u>Subordinated Loan Adequate Protection Party</u>"), shall be granted the following protection, pursuant to sections 361, 507 and 363(e) of the Bankruptcy Code for the consent to the use of its collateral, consent to the transactions contemplated by the Credit Documents, and for the diminution in the value of the pre-petition security interests of such party, whether or not such diminution in value results from the sale, lease or use by the Debtors of the collateral securing the Subordinated Loan Obligations, the stay of enforcement of any pre-petition security interest arising from section 362 of the Bankruptcy Code, or otherwise (each, a "<u>Subordinated Loan Diminution Claim</u>"). As security for and solely to the extent of any Subordinated Loan Diminution Claim, the Subordinated Loan Adequate Protection Party

is granted the following adequate protection (the "Subordinated Loan Adequate Protection

Obligations"):

(1)    Subordinated Loan Adequate Protection Lien.    Subordinated Loan

Adequate Protection Party, shall be granted for its benefit, effective and perfected

as of the date of entry of this Interim Order and without the necessity of the

execution or filing of mortgages, security agreements, pledge agreements,

financing statements or other agreements, a security interest in and lien on all

assets of the Debtors (together, the "Subordinated Loan Adequate Protection

Liens"), subject and subordinate only to (i) the Carve-Out, (ii) Permitted Liens

and Claims, (iii) the liens of Lender securing all Post-Petition Obligations arising

under or in connection with the Loan Agreement, the other Credit Documents and

this Interim Order in and upon the Collateral, (iv) the Pre-Petition Adequate

Protection Liens, and (v) the Floor Plan Loan Adequate Protection Liens;

provided that the Subordinated Loan Adequate Protection Liens shall only

encumber the Avoidance Action Proceeds upon entry of the Final Order.

(2)    Subordinated Loan Adequate Protection Super-Priority Claim.

Subordinated Loan Adequate Protection Party, shall be granted, subject to the

payment of the Carve-Out, a super-priority administrative expense claim junior

and subordinate only to the DIP Loan Superpriority Claim, Pre-Petition Adequate

Protection Superpriority Claim and the Floor Plan Loan Adequate Protection

Superpriority Claim; provided that the Subordinated Loan Lender shall not

receive or retain any payments, property or other amounts in respect of such

super-priority claims unless and until all Post-Petition Obligations under the DIP

Credit Agreement, Pre-Petition Loan Obligations and the Floor Plan Obligations have indefeasibly been paid in cash in full.

3.    <u>Default; Rights and Remedies; Relief from Stay</u>.

    3.1    <u>Events of Default</u>.  The occurrence of any of the following events shall constitute an "<u>Event of Default</u>" under this Interim Order: (a) any Debtor's failure to perform, in any respect, any of the terms, conditions or covenants or their obligations under this Interim Order; or (b) an "Event of Default" under the Loan Agreement, including, without limitation, the Ratification Agreement, or any of the other Credit Documents.

    3.2    <u>Rights and Remedies upon Event of Default</u>.  Upon the occurrence of and during the continuance of an Event of Default, (a) the Debtors shall be bound by all restrictions, prohibitions and other terms as provided in this Interim Order, the Loan Agreement and the other Credit Documents, and (b) the Lender shall be entitled to take any act or exercise any right or remedy (subject to Section 3.4 below) as provided in this Interim Order or any Credit Document, as applicable, including, without limitation, declaring all Obligations immediately due and payable, accelerating the Obligations, ceasing to extend Loans to Debtor Loan Parties, setting off any Obligations with Collateral or proceeds in Lender's possession, and enforcing any and all rights with respect to the Collateral.  Lender shall have no obligation to lend or advance any additional funds to or on behalf of Debtor Loan Parties, or provide any other financial accommodations to Debtor Loan Parties, immediately upon or after the occurrence of an Event of Default or upon the occurrence of any act, event, or condition that, with the giving of notice or the passage of time, or both, would constitute an Event of Default.

    3.3    <u>Expiration of DIP Loan Commitment</u>.  Upon the expiration of Debtor Borrowers' authority to borrow and obtain other credit accommodations from Lender pursuant to the terms of this Interim Order and the Credit Documents (except if such authority shall be

extended with the prior written consent of Lender, which consent shall not be implied or

construed from any action, inaction or acquiescence by Lender), unless an Event of Default set

forth in Section 3.1 above occurs sooner and the automatic stay has been lifted or modified

pursuant to Section 3.4 of this Interim Order, all of the Obligations shall immediately become

due and payable and Lender shall be automatically and completely relieved from the effect of

any stay under section 362 of the Bankruptcy Code, any other restriction on the enforcement of

its liens upon and security interests in the Collateral or any other rights granted to Lender

pursuant to the terms and conditions of the Credit Documents or this Interim Order, and Lender

shall be and is hereby authorized, in its sole discretion, to take any and all actions and remedies

provided to it in this Interim Order, the Credit Documents or applicable law which Lender may

deem appropriate and to proceed against and realize upon the Collateral or any other property of

the Debtors' Estates.

    **3.4**  <u>Relief from Automatic Stay</u>.  The automatic stay provisions of section 362

of the Bankruptcy Code and any other restriction imposed by an order of the Court or applicable

law are hereby modified and vacated without further notice, application or order of the Court to

the extent necessary to permit Lender to perform any act authorized or permitted under or by

virtue of this Interim Order or the Credit Documents, as applicable, including, without limitation,

(a) to implement the post-petition financing arrangements authorized by this Interim Order and

pursuant to the terms of the Credit Documents, (b) to take any act to create, validate, evidence,

attach or perfect any lien, security interest, right or claim in the Collateral, (c) to assess, charge,

collect, advance, deduct and receive payments with respect to the Obligations, including, without

limitation, all interests, fees, costs and expenses permitted under the Credit Documents and apply

such payments to the Obligations pursuant to the Credit Documents and/or this Interim Order, as

applicable, and (d) immediately upon the occurrence of an Event of Default, to take any action and exercise all rights and remedies provided to it by this Interim Order, the Credit Documents or applicable law other than those rights and remedies against the Collateral as provided in the following sentence.  In addition, and without limiting the foregoing, upon the occurrence of an Event of Default and after providing three (3) business days (the "Default Notice Period") prior written notice (the "Enforcement Notice") to counsel for the Debtors, counsel for the Committee (if appointed), counsel to the Floor Plan Lenders, counsel to the Subordinated Lender and the U.S. Trustee, Lender shall be entitled to take any action and exercise all rights and remedies provided to it by this Interim Order, the Credit Documents or applicable law that Lender may deem appropriate in its sole discretion to proceed against and realize upon the Collateral or any other assets or properties of Debtors' Estates upon which the Lender has been or may hereafter be granted liens or security interests to obtain the full and indefeasible repayment of all Obligations. Notwithstanding anything to the contrary, any action taken by the Lender to (i) terminate the commitments under the Credit Documents, (ii) accelerate the Loans, (iii) send blocking notices or activation notices pursuant to the terms of any Deposit Account Control Agreement, (iv) repay any amounts owing in respect of the Post-Petition Obligations (including, without limitation, fees, indemnities and expense reimbursements) and (v) cash collateralize Carve-Out obligations, in each case, shall not require any advance notice to the Debtor Loan Parties.  In any hearing regarding any exercise of rights or remedies (which hearing must take place within the Default Notice Period), the only issue that may be raised by any party in opposition thereto shall be whether, in fact, an Event of Default has occurred and is continuing, and the Debtors shall not be entitled to seek relief, including, without limitation, under

section 105 of the Bankruptcy Code, to the extent such relief would in any way impair or restrict

the rights and remedies of Lender set forth in this Interim Order or the Credit Documents.

4.     Representations; Covenants; and Waivers.

      4.1     Objections to Pre-Petition Obligations.

          (a)     Objections to Pre-Petition Obligations.     Notwithstanding

anything to the contrary in the Interim Order, any action, claim, defense, complaint, motion or

other written opposition (hereinafter, an "Objection") that seeks to object to, challenge,

contest or otherwise invalidate or reduce, whether by setoff, recoupment, counterclaim,

deduction, disgorgement or claim of any kind: (a) the existence, validity or amount of the Pre-

Petition Obligations, (b) the extent, legality, validity, perfection or enforceability of Pre-

Petition Lender's pre-petition liens and security interests in the Pre-Petition Collateral or (c)

otherwise asserts or prosecutes an action for preferences, causes of action, objections,

fraudulent transfers or conveyances, other avoidance powers or claims, counterclaims or

causes of action, objections, contests or defenses against Pre-Petition Lender, shall be

properly filed with the Court by any Committee, and no other party, within the earlier of (w)

sixty (60) calendar days from the date of appointment of the Committee by the U.S. Trustee,

(y) in the event no Committee is appointed within the thirty (30) days following the Petition

Date, by any party in interest with requisite standing within seventy-five (75) calendar days

from the date of entry of this Interim Order (collectively, the "Objection Period"); provided,

however, that nothing herein shall permit any party to challenge the extent or validity of the

Post-Petition Obligations or any liens that secure such obligations.  If any such Objection is

timely and properly filed and successfully pursued, nothing in this Interim Order shall prevent

the Court from granting appropriate relief with respect to the Pre-Petition Obligations or Pre-

Petition Lender's pre-petition liens on the Pre-Petition Collateral.  If no Objection is timely

and properly filed, or if an Objection is timely and properly filed but denied, (i) the Pre-Petition Obligations shall be deemed allowed in full, shall not be subject to any setoff, recoupment, counterclaim, deduction or claim of any kind, and shall not be subject to any further objection or challenge by any party at any time, and Pre-Petition Lender's pre-petition liens on and security interest in the Pre-Petition Collateral shall be deemed legal, valid, perfected, enforceable, and non-avoidable for all purposes and of first and senior priority, subject to only the Permitted Liens and Claims, and (ii) the Pre-Petition Lender and each of its participants, agents, officers, directors, employees, attorneys, professionals, successors, and assigns shall be deemed released and discharged from any and all claims and causes of action related to or arising out of the Pre-Petition Loan Documents and shall not be subject to any further objection or challenge by any party at any time.  Nothing contained in this Section 4.1 or otherwise shall or shall be deemed or construed to impair, prejudice or waive any rights, claims or protections afforded to Lender in connection with all post-petition Loans and any other post-petition financial and credit accommodations provided by Lender to Debtor Loan Parties in reliance on section 364(e) of the Bankruptcy Code and in accordance with the terms and provisions of this Interim Order and the Credit Documents.

(b)    Objections to Floor Plan Obligations.    Notwithstanding anything to the contrary in the Interim Order, any action, claim, defense, complaint, motion or other written opposition (hereinafter, a "Floor Plan Loan Objection") that seeks to object to, challenge, contest or otherwise invalidate or reduce, whether by setoff, recoupment, counterclaim, deduction, disgorgement or claim of any kind: (a) the existence, validity or amount of the Floor Plan Loan Obligations, (b) the extent, legality, validity, perfection or enforceability of Floor Plan Lenders' pre-petition liens and security interests in the Floor Plan

Collateral, shall be properly filed with the Court within the Objection Period.  If any such

Floor Plan Loan Objection is timely and properly filed and successfully pursued, nothing in

this Interim Order shall prevent the Court from granting appropriate relief with respect to the

Floor Plan Obligations or Floor Plan Lenders' pre-petition liens on the Floor Plan Collateral.

If no Floor Plan Loan Objection is timely and properly filed, or if a Floor Plan Loan Objection

is timely and properly filed but denied, (i) the Floor Plan Loan Obligations shall be deemed

allowed in full, shall not be subject to any setoff, recoupment, counterclaim, deduction or

claim of any kind, and shall not be subject to any further objection or challenge by any party

at any time, and Floor Plan Lenders' pre-petition liens on and security interest in the Floor

Plan Collateral shall be deemed legal, valid, perfected, enforceable, and non-avoidable for all

purposes, and (ii) the Floor Plan Lenders' and each of their respective participants, agents,

officers, directors, employees, attorneys, professionals, successors, and assigns shall be

deemed released and discharged from any and all claims and causes of action related to or

arising out of the Floor Plan Loan Documents and shall not be subject to any further objection

or challenge by any party at any time.

**4.2**    Debtors' Waivers.  At all times during the Cases, and whether or not an

Event of Default has occurred, the Debtors irrevocably waive any right that they may have to

seek further authority (a) to use Cash Collateral of Lender or of Pre-Petition Lender under

section 363 of the Bankruptcy Code, (b) to obtain post-petition loans or other financial

accommodations pursuant to section 364(c) or 364(d) of the Bankruptcy Code, other than as

provided in this Interim Order or as may be otherwise expressly permitted pursuant to the Credit

Documents, (c) to challenge the application of any payments authorized by this Interim Order as

pursuant to section 506(b) of the Bankruptcy Code, or to assert that the value of the Pre-Petition

Collateral is less than the Pre-Petition Obligations, or that the value of the Floor Plan Collateral is less than the Floor Plan Obligations, (d) to propose, support or have a plan of reorganization or liquidation that does not provide for the indefeasible payment in cash in full and satisfaction of all Obligations on the effective date of such plan in accordance with the terms and conditions set forth in the Loan Agreement, or (e) to seek relief under the Bankruptcy Code, including without limitation, under section 105 of the Bankruptcy Code, to the extent any such relief would in any way restrict or impair the rights and remedies of Lender as provided in this Interim Order and the Credit Documents or Lender's exercise of such rights or remedies; provided, however, that Lender may otherwise consent in writing, but no such consent shall be implied from any other action, inaction, or acquiescence by Lender, and the consent of Lender shall be required in order to relieve the Debtors' of their obligations under this Section 4.2.

    **4.3**    <u>Section 506(c) Claims</u>.  Subject to entry of a Final Order granting such relief, no costs or expenses of administration which have or may be incurred in the Cases shall be charged against Lender, its respective claims or the Collateral pursuant to § 506(c) of the Bankruptcy Code without the prior written consent of Lender, and no such consent shall be implied from any other action, inaction or acquiescence by Lender.

    **4.4**    <u>Collateral Rights</u>.  Until all Obligations shall have been indefeasibly paid and satisfied in full:

        (a)    no other party shall foreclose or otherwise seek to enforce any junior lien or claim in Collateral; and

        (b)    upon and after the declaration of the occurrence of an Event of Default, and subject to Lender obtaining relief from the automatic stay as provided for herein, in connection with a liquidation of any of the Collateral, Lender (or any of its

employees, agents, consultants, contractors or other professionals) shall have the right, at

the sole cost and expense of Debtors, to: (i) enter upon, occupy and use any real or

personal property, fixtures, equipment, leasehold interests or warehouse arrangements

owned or leased by Debtors and (ii) use any and all trademarks, trade names, copyrights,

licenses, patents or any other similar assets of Debtors, which are owned by or subject to

a lien of any third party and which are used by Debtors in their businesses.  Lender will

be responsible for the payment of any applicable fees, rentals, royalties or other amounts

due such lessor, licensor or owner of such property for the period of time that Lender

actually uses such assets or property (but in no event for any accrued and unpaid fees,

rentals or other amounts due for any period prior to the date that Lender actually occupies

or uses such assets or properties or for any fees, rentals or other amounts that may

become due following the end of ender's occupation or use).

    **4.5**    <u>Releases</u>.  Upon the earlier of (a) the entry of a Final Order approving the

Motion or (b) the entry of an order extending the Interim Financing Period beyond thirty (30)

calendar days after the date of this Interim Order, and in each instance, subject to Section 4.1

above, in consideration of Lender and Pre-Petition Lender permitting Debtors to use the Pre-

Petition Collateral (including Cash Collateral) and providing other credit and financial

accommodations to the Debtors pursuant to the provisions of the Credit Documents and this

Interim Order, each Debtor, on behalf of itself and its successors and assigns, (collectively, the

"<u>Releasors</u>"), shall, forever release, discharge and acquit Lender, Pre-Petition Lender, and their

respective successors and assigns, and their present and former shareholders, affiliates,

subsidiaries, divisions, predecessors, directors, officers, attorneys, employees and other

representatives (collectively, the "<u>Pre-Petition Releasees</u>") of and from any and all claims,

demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and

obligations, of every kind, nature and description, including, without limitation, any so-called

"lender liability" claims or defenses, that Releasors had, have or hereafter can or may have

against Pre-Petition Releasees as of the date hereof, in respect of events that occurred on or prior

to the date hereof with respect to the Debtors, the Pre-Petition Obligations, the Pre-Petition Loan

Documents and any Loans or other financial accommodations made by Lender to Debtors

pursuant to the Credit Documents.  In addition, upon the repayment of all Obligations (as defined

in the Loan Agreement) owed to Lender by Debtors and termination of the rights and obligations

arising under the Credit Documents (which payment and termination shall be on terms and

conditions acceptable to the Lender), Lender shall be released from any and all obligations,

liabilities, actions, duties, responsibilities and causes of action arising or occurring in connection

with or related to the Credit Documents, this Interim Order or the Final Order (including, without

limitation, any obligation or responsibility (whether direct or indirect, absolute or contingent, due

or not due, primary or secondary, liquidated or unliquidated) to pay or otherwise fund the Carve-

Out, on terms and conditions acceptable to Lender.

**5.**     Other Rights and Post-Petition Obligations.

       **5.1**     No Modification or Stay of This Interim Order.  Notwithstanding (a) any

stay, modification, amendment, supplement, vacation, revocation or reversal of this Interim

Order, the Credit Documents or any term hereunder or thereunder, (b) the failure to obtain a

Final Order pursuant to Bankruptcy Rule 4001(c)(2), or (c) the dismissal or conversion of one or

more of the Cases (each, a "Subject Event"), (x) the acts taken by Lender in accordance with this

Interim Order, and (y) the Post-Petition Obligations incurred or arising prior to Lender's actual

receipt of written notice from Debtors expressly describing the occurrence of such Subject Event

shall, in each instance, be governed in all respects by the original provisions of this Interim

Order, and the acts taken by Lender in accordance with this Interim Order, and the liens granted

to Lender in the Collateral, and all other rights, remedies, privileges, and benefits in favor of

Lender pursuant to this Interim Order and the Credit Documents shall remain valid and in full

force and effect pursuant to section 364(e) of the Bankruptcy Code.  For purposes of this Interim

Order, the term "appeal", as used in section 364(e) of the Bankruptcy Code, shall be construed to

mean any proceeding for reconsideration, amending, rehearing, or re-evaluating this Interim

Order by this Court or any other tribunal.

       **5.2**    <u>Power to Waive Rights; Duties to Third Parties</u>.  Lender shall have the

right to waive any of the terms, rights and remedies provided or acknowledged in this Interim

Order in respect of Lender (the "<u>Lender Rights</u>"), and shall have no obligation or duty to any

other party with respect to the exercise or enforcement, or failure to exercise or enforce, any

Lender Right(s).  Any waiver by Lender of any Lender Rights shall not be or constitute a

continuing waiver.  Any delay in or failure to exercise or enforce any Lender Right shall neither

constitute a waiver of such Lender Right, subject Lender to any liability to any other party, nor

cause or enable any other party to rely upon or in any way seek to assert as a defense to any

obligation owed by the Debtors to Lender.

       **5.3**    <u>Reservation of Rights</u>.  The terms, conditions and provisions of this

Interim Order are in addition to and without prejudice to the rights of Lender to pursue any and

all rights and remedies under the Bankruptcy Code, the Credit Documents or any other

applicable agreement or law, including, without limitation, rights to seek adequate protection

and/or additional or different adequate protection, to seek relief from the automatic stay, to seek

an injunction, to oppose any request for use of cash collateral or granting of any interest in the

Collateral, as applicable, or priority in favor of any other party, to object to any sale of assets,

and to object to applications for allowance and/or payment of compensation of Professionals or other parties seeking compensation or reimbursement from the Estates.

        **5.4**    <u>Binding Effect</u>.

        (a)    The provisions of this Interim Order and the Credit Documents, the Post-Petition Obligations, the DIP Loan Superpriority Claim, the Pre-Petition Adequate Protection Superpriority Claim, and any and all rights, remedies, privileges and benefits in favor of Lender provided or acknowledged in this Interim Order, and any actions taken pursuant thereto, shall be effective immediately upon entry of this Interim Order pursuant to Bankruptcy Rules 6004(g) and 7062, shall continue in full force and effect, and shall survive entry of any such other order, including without limitation, any order which may be entered confirming any plan of reorganization, converting one or more of the Chapter 11 Cases to any other chapter under the Bankruptcy Code, or dismissing one or more of the Chapter 11 Cases.

        (b)    Any order dismissing one or more of the Chapter 11 Cases under section 1112 or otherwise shall be deemed to provide (in accordance with §§ 105 and 349 of the Bankruptcy Code) that (a) the DIP Loan Superpriority Claim and Lender's liens on and security interests in the Collateral and all other claims, liens, adequate protections and other rights granted pursuant to the terms of this Interim Order shall continue in full force and effect notwithstanding such dismissal until the Obligations are indefeasibly paid and satisfied in full, and (b) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing all such claims, liens, protections and rights.

        (c)    In the event this Court modifies any of the provisions of this Interim Order or the Credit Documents following a Final Hearing, such modifications shall not affect the rights or priorities of  Lender pursuant to this Interim Order with respect to the

Collateral or any portion of the Post-Petition Obligations which arises or is incurred or is advanced prior to such modifications, and this Interim Order shall otherwise remain in full force and effect.

(d)     This Interim Order shall be binding upon Debtors, all parties in interest in the Cases and their respective successors and assigns, including any trustee or other fiduciary appointed in the Cases or any subsequently converted bankruptcy case(s) of any Debtor.   This Interim Order shall also inure to the benefit of Lender, Debtors and their respective successors and assigns.

**5.5**     Restrictions on Cash Collateral Use, Additional Financing, Plan Treatment.   All post-petition advances and other financial accommodations under the Loan Agreement and the other Credit Documents are made in reliance on this Interim Order and there shall not at any time be entered in the Chapter 11 Cases, or in any subsequently converted case under chapter 7 of the Bankruptcy Code, any order (other than the Final Order) which (a) authorizes the use of cash collateral of Debtors in which Lender has an interest, or the sale, lease, or other disposition of property of any Debtor's Estate in which Lender has a lien or security interest, except as expressly permitted hereunder or in the Credit Documents, or (b) authorizes under section 364 of the Bankruptcy Code the obtaining of credit or the incurring of indebtedness secured by a lien or security interest which is equal or senior to a lien or security interest in property in which Lender holds a lien or security interest, or which is entitled to priority administrative claim status which is equal or superior to that granted to Lender herein; unless, in each instance (x) Lender shall have given its express prior written consent with respect thereto, no such consent being implied from any other action, inaction or acquiescence by Lender, or (y) such other order requires that all Obligations shall first be indefeasibly paid and

satisfied in full in accordance with the terms of the Loan Agreement and the other Credit Documents, including, without limitation, all debts and obligations of Debtors to Lender, which arise or result from the obligations, loans, security interests and liens authorized herein, on terms and conditions acceptable to Lender.  The security interests and liens granted to or for the benefit of Lender hereunder and the rights of Lender pursuant to this Interim Order and the Credit Documents with respect to the Obligations and the Collateral are cumulative and shall not be altered, modified, extended, impaired, or affected by any plan of reorganization or liquidation of Debtors and, if Lender shall expressly consent in writing that the Obligations shall not be repaid in full upon confirmation thereof, shall continue after confirmation and consummation of any such plan.

   **5.6** No Owner/Operator Liability.  Subject to the entry of the Final Order granting such relief, Lender shall not be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 et seq., as amended, or any similar federal or state statute).

   **5.7** Marshalling.  Subject to entry of the Final Order granting such relief, in no event shall Lender be subject to the equitable doctrine of "marshalling" or any similar doctrine with respect to the Collateral.  Lender shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to Lender with respect to proceeds, products, offspring or profits of any of the Collateral, as applicable.

      **5.8**    <u>Right of Setoff</u>.  To the extent any funds were on deposit with Pre-Petition Lender as of the Petition Date, including, without limitation, all funds deposited in, or credited to, an account of any Debtor with Pre-Petition Lender immediately prior to the filing of the Chapter 11  Case (regardless of whether, as of the Petition Date, such funds had been collected or made available for withdrawal by any such Debtor), such funds (the "<u>Deposited Funds</u>") are subject to rights of setoff.  By virtue of such setoff rights, the Deposited Funds are subject to a lien in favor of DIP Lender pursuant to §§ 506(a) and 553 of the Bankruptcy Code.

      **5.9**    <u>Right to Credit Bid</u>.

      (a)    Lender shall have the right to "credit bid" the amount of its claims arising under the terms of the Credit Documents, including without limitation, claims on account of the Pre-Petition Adequate Protection Claims, during any sale of all or substantially all of the Debtors' assets, including without limitation, sales occurring pursuant to section 363 of the Bankruptcy Code or included as part of any restructuring plan subject to confirmation under section 1129(b)(2)(A)(ii)-(iii) of the Bankruptcy Code, <u>provided</u> <u>that,</u> if any Collateral, which constitutes Komatsu Senior Lien Collateral (as defined in the Floor Plan Intercreditor), is included in such credit bid Lender shall pay Floor Plan Lenders in cash an amount which is consistent with the terms of the Floor Plan Intercreditor.

      (b)    The Floor Plan Lenders, shall have the right to "credit bid" the amount of its and their claims arising under the terms of the Floor Plan Loan Agreements, during any sale of all or substantially all of the Debtors' assets, including without limitation, sales occurring pursuant to section 363 of the Bankruptcy Code or included as part of any restructuring plan subject to confirmation under section 1129(b)(2)(A)(ii)-(iii) of the Bankruptcy Code, <u>provided</u> <u>that</u>, if  any Collateral, which constitutes Callidus Collateral (as

defined in the Floor Plan Intercreditor) is included in connection with any such credit bid, the Floor Plan Lenders shall pay to Lender all Post-Petition Obligations in cash in an amount which is consistent with the terms of the Floor Plan Intercreditor.

       **5.10**   Term; Termination.  Notwithstanding any provision of this Interim Order to the contrary, the term of the financing arrangements among Debtors and Lender authorized by this Interim Order may be terminated pursuant to the terms of the Loan Agreement.

       **5.11**   Limited Effect.  In the event of a conflict between the terms and provisions of any of the Credit Documents and this Interim Order, the terms and provisions of this Interim Order shall govern, interpreted as most consistent with the terms and provisions of the Credit Documents.

       **5.12**   Objections Overruled.  All objections to the entry of this Interim Order are, to the extent not withdrawn, hereby overruled.

**6.**     Final Hearing and Response Dates.

       The Final Hearing on the Motion pursuant to Bankruptcy Rule 4001(c)(2) is scheduled for _____, 2016, at _____ before this Court.  The Debtors shall promptly mail copies of this Interim Order to the Noticed Parties, and to any other party that has filed a request for notices with this Court and to any Committee after same has been appointed, or such Committee's counsel, if same shall have filed a request for notice.  Any party in interest objecting to the relief sought at the Final Hearing shall serve and file written objections, which objections shall be served upon (a) proposed counsel to the Debtors, Dilworth Paxson LLP., 1500 Market Street, Suite 3500E, Philadelphia, PA. 19102, Attn: Lawrence G. McMichael, Esq. and Anne M. Aaronson, Esq., Fax No.: 215-575-7200; (b) counsel for the Lender Otterbourg, P.C., 230 Park Avenue, New York, New York 10169-0075; Attn: Jeffrey M. Rosenthal, Esq. and Andrew M. Kramer, Esq., Fax: (212) 682-6104; (c) counsel for the Floor Plan Lenders, Komatsu

America; Attn: Michael Turner, Esq.; Fax: 973-624-0808, (d) counsel to the Subordinated Loan

Lender, Sandton Capital Partners, Attn: Gary Scharmett, Esq., Email: gscharmett@stradley.com,

(e) counsel to any Committee; and (f) the U.S. Trustee; and shall be filed with the Clerk of the

United States Bankruptcy Court for the District of New Jersey, in each case, to allow actual

receipt of the foregoing no later than _____, prevailing Eastern time on  ___, 2016.


Dated: Trenton, New Jersey

      September __, 2016


_____
    UNITED STATES BANKRUPTCY JUDGE

EXHIBIT C
to
RATIFICATION AND AMENDMENT AGREEMENT

**Borrowing Base Certificate**

(See attached)