| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY** <br> Caption in Compliance with D.N.J. LBR 9004-1(b) <br><br> **DILWORTH PAXSON LLP** <br> 1500 Market Street, Suite 3500E <br> Philadelphia, PA 19102 <br> Telephone: (215) 575-7000 <br> Lawrence G. McMichael (*pro hac vice* admission pending) <br> Anne M. Aaronson (AA1679) <br> Catherine G. Pappas (CP0458) <br><br> *Proposed Counsel to the Debtors and Debtors in Possession* | |
| In re: <br><br> BINDER MACHINERY CO., LLC, *et al.* <br><br><br> Debtors. | Chapter 11 <br><br> Case No. 16-28015(KCF) <br><br> Jointly Administered <br><br> Chief Judge Kathryn C. Ferguson <br> Judge Christine M. Gravelle <br><br> Hearing Date: _____, 2016 <br> Objection Deadline: _____, 2016 |

**APPLICATION FOR ENTRY OF AN ORDER (I) AUTHORIZING DEBTORS TO SELL SUBSTANTIALLY ALL ASSETS FREE AND CLEAR OF LIENS AND ENCUMBRANCES AND (II) APPROVING SALE AND AUCTION PROCEDURES IN CONNECTION THEREWITH**

TO:   THE HONORABLE KATHRYN C. FERGUSON
    CHIEF UNITED STATES BANKRUPTCY JUDGE

The debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors") hereby move this Court (the "Application" or this "Motion") for entry of orders, substantially in the forms attached hereto, approving, *inter alia,* the sale of substantially all of the Debtors' assets and bidding procedures related thereto. In support of the Application, the Debtors rely upon and incorporate by reference the Certification of Robert C. Binder (the "Binder Certification") submitted in connection with the Debtors' First Day Motions and filed

119274785_2

with the Court in these chapter 11 cases. In further support of the Motion, the Debtors, by and through their undersigned counsel, respectfully represent as follows:

### Jurisdiction and Venue

1. This Application is submitted in support of the Debtors' Motion for entry of an Order (a) authorizing the Debtors to solicit bids for the sale of substantially all assets owned by the Debtors; (b) approving competitive bidding procedures related thereto; (c) scheduling (i) an auction (the "Auction") with respect to the sale of substantially all the Debtors' assets and (ii) a hearing date to approve the sale (the "Sale Hearing"); (d) approving the form, manner, and sufficiency of notice of the Auction and the Sale Hearing; and (e) approving the sale of assets to a qualified bidder at the Auction determined by the Debtors to be the highest and best offer pursuant to 11 U.S.C. § 363 and Rule 6004 of the Federal Rules of Bankruptcy Procedure.

2. The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

3. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The statutory bases for the relief requested herein are sections 105(a), 363(b) and (m) and 541(a) of the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq*. (the "Bankruptcy Code").

### Background

5. Binder is a heavy construction machinery distribution business headquartered in South Plainfield, New Jersey. Binder's revenues are generated from machinery sales, rentals, parts, sales, and services. Employing 87 individuals and enjoying a customer base of approximately 4,000 construction contractors, Binder has been a profitable and successful family owned business since it was founded in 1957. As fully set forth in the Binder Certification, beginning with the economic recession in 2008 and the slow recovery thereafter, Binder encountered difficulty servicing its senior debt with Komatsu America Corp. and Sun National

4

Bank (the Sun National Bank debt was later acquired by Sandton Capital Partners, L.P.). The Sun-Sandton debt was largely refinanced by Callidus Capital Corporation ("Callidus" or "Lender") on December 4, 2015.

6. On September 20, 2016 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief with the Court under chapter 11 of the Bankruptcy Code. The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases (the "Chapter 11 Cases") and, as of the date of the filing of this Motion, no official committees have been appointed or designated. Concurrently with the filing of this Motion, the Debtors have sought procedural consolidation and joint administration of these Chapter 11 Cases.

7. The factual background relating to the Debtors' commencement of these Chapter 11 Cases is set forth in detail in the Binder Certification and incorporated herein by reference.

8. On September 21, 2016, the Debtors filed a *Motion for the Entry of Interim and Final Orders, Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, and 507 and Fed. R. Bankr. P. 2002, 4001 and 9014 (I) Authorizing Debtors and Debtors-in-Possession to Obtain Post-Petition Financing, (II) Authorizing Use of Cash Collateral, (III) Granting Liens and Super-priority Claims, (IV) Granting Adequate Protection to Prepetition Secured Lenders, (V) Modifying the Automatic Stay; (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief* (the "DIP Motion"), which fully sets forth the relationships among the Debtors and their lenders and is incorporated herein by reference.

5

9. The DIP Motion further seeks authorization for the Debtors to execute, deliver, and enter into that certain Ratification and Amendment Agreement dated as of September 26, 2016 (the "Ratification Agreement"), which ratifies, extends, adopts, and amends the Pre-Petition Loan Agreement and the other Pre-Petition Credit Documents (each as defined in the Interim Order).

10. The Ratification Agreement (a copy of which is attached to the DIP Motion as Exhibit 1 to the Interim Order) contains certain express covenants and conditions pertaining to a sale process (the "Sale Milestones"). *See* Ratification Agreement at § 5.4, "Sale Milestones." In accordance with the Ratification Agreement and the Sale Milestones contained therein, the Debtors hereby submit this Application, seeking authority to sell, assign, transfer, convey and deliver to the Successful Bidder (as defined below) all of their collective right, title, and interest in all or substantially all of the Debtors' assets (the "Purchased Assets").

**Terms of Sale**

11. Subject to the terms of a negotiated sale agreement, the Purchased Assets will be sold to the Successful Bidder free and clear of all existing liens, claims, and encumbrances pursuant to 11 U.S.C. § 363 for a sum that is determined to be the highest or otherwise best bid, which bid shall provide for, *inter alia*, payment on or before the sixty-seventh (67th) day following the Petition Date of a minimum cash amount not less than the amount required to satisfy the Obligations (as defined in the Ratification Agreement) owed to Callidus.

12. The Purchased Assets are being sold "AS IS, WHERE IS" with no representations of any kind. The Purchased Assets can be sold in their entirety, in lots or separately in the discretion of the Debtors in conjunction with their advisors and after consultation with the Lender and any Official Committee of Unsecured Creditors.

6

13. The parties' target that the closing and consummation of the sale of the Purchased Assets will occur on or before the sixty-seventh (67th) day following the Petition Date.

14. The Successful Bidder may assume, agree to pay, discharge or satisfy any debt, liability, or obligation of the Debtors, provided that the Successful Bidder, independent of the Debtors, reaches an agreement with the affected creditor.

## Relief Requested and Bidding Procedures

15. The Debtors, in the exercise of their sound business judgment, have determined to sell all or substantially all of their assets and believe that an open sale process will achieve a fair market price and maximize value to their various creditor constituencies. In furtherance of this objective, the Debtors' businesses and assets will be subject to a marketing effort and only the highest or otherwise best qualified offer submitted by a bidder will be successful (the "Successful Bidder"). Accordingly, the Debtors seek the Court's approval of the following Bid Procedures (the "Bid Procedures").

    a. **Assets to Be Sold.** The Debtors are offering all or substantially all of their assets for sale (the "Purchased Assets" or "Assets"). The Debtors shall retain all rights and title to assets that are not subject to a bid accepted by the Debtors, after consultation with the Lender and any Committee of Unsecured Creditors, and approved by the Bankruptcy Court at the Sale Hearing (defined below).

    b. **The Bidding Process.** The Debtors, in conjunction with their advisors and after consultation with the Lender and any Committee of Unsecured Creditors, shall: (i) determine whether any person is a Potential Bidder ("Potential Bidder"); (ii) coordinate the efforts of Potential Bidders in conducting their respective due diligence investigations regarding the Debtors' businesses; (iii) receive offers from Qualified Bidders (hereinafter defined); and (iv) negotiate any offer made to purchase the Assets, together or separately (collectively, the "Bidding Process"). Neither the Debtors nor their representatives shall be obligated to furnish any information of any kind whatsoever relating to the Assets to any person who is not a Potential Bidder.

    c. **Participation Requirements.** Unless otherwise ordered by the Bankruptcy Court, for cause shown, or as otherwise determined by the

7

Debtors, in order to participate in the Bidding Process each person (a "Qualified Bidder") must submit a bid that adheres to the following requirements (a "Qualified Bid"):

i. All Qualified Bids must be submitted in the form of the Asset Purchase Agreement which will annexed hereto as **Exhibit C** as a supplemental filing (the "APA") to Debtors' Counsel, Lawrence G. McMichael, Dilworth Paxson LLP, 1500 Market Street, Suite 3500E, Philadelphia, PA 19102, not later than 5:00 p.m. (prevailing Eastern Time) on Friday, **November 11, 2016** (the "Bid Deadline") with a copy to counsel for the Lender and any Official Committee of Unsecured Creditors.

ii. All Qualified Bids shall be in the form of the APA, together with a comparison showing all changes from the APA, from a person or persons that the Debtors deem financially able to consummate the purchase of the Assets, which letter states:

(1) that such Qualified Bidder offers to purchase some or all of the Assets upon the terms and conditions set forth in an asset purchase agreement, together with its exhibits and schedules, including terms relating to price and the time of closing (the "Proposed Agreement");

(2) that such Qualified Bidder is prepared to consummate the transaction on or before Monday, **November 28, 2016** following entry of an order of this Court approving the Sale to the Successful Bidder (the "Sale Order");

(3) that such Qualified Bidder's offer is irrevocable until the earlier to occur of (a) two (2) business days after the closing of the sale of the Purchased Assets (b) the Assets have been withdrawn from the Sale or (c) thirty (30) days after the date the Sale Order is entered by this Court;

(4) the actual value of such Qualified Bidder's bid to the Debtors' estates; and

(5) which of the Debtors' leases and executory contracts are to be assumed in connection with the consummation of the Qualified Bidder's bid. The

8

119274785_2

        Qualified Bidders are responsible for applying to each franchisor or equipment manufacturer whose franchise or dealership each Qualified Bidder wishes to maintain, and for obtaining such approvals prior to the closing of the Sale.

iii. All Qualified Bids shall be accompanied by a deposit into escrow with the Debtors of an amount equal to 10% of the total proposed purchase price (the "<u>Good Faith Deposit</u>").

iv. All Qualified Bids shall be accompanied by satisfactory evidence, in the opinion of the Debtors and their advisors and after consultation with the Lender, of committed financing or other ability to perform all transactions contemplated by the Proposed Agreement.

v. All Qualified Bids must provide for funding of all Obligations (as defined in the Ratification Agreement) owed to Callidus, in full, in cash, on or before the sixty-eighth (68th) day (extended by one day given that the sixty-seventh (67th) day is a Sunday) following the Petition Date, **November 28, 2016**.

vi. Qualified Bids cannot contain any contingencies, including, without limitation, financing conditions or contingencies, other than those agreed to by the Debtors, after consultation with the Lender and any Committee of Unsecured Creditors, and/or any other affected creditors and set forth in the Proposed Agreement.

vii. All Qualified Bids shall include a list of all executory contracts of the Debtors the Qualified Bidder will require the Debtors to assume and reject, a statement that the Qualified Bidder will assume all cure costs associated with all executory contracts being assumed and sufficient information to satisfy the adequate assurance requirements for the assumption of any executory contracts.

viii. All Qualified Bidders shall submit to the jurisdiction of the Court.

ix. Each Qualified Bidder shall acknowledge that their Qualified Bid is a good faith offer.

x. All Qualified Bids must provide for adequate workers' compensation insurance coverage and for adequate working

9

capital financing to finance going concern operations to the extent contemplated, and to provide adequate assurance of future performance to counterparties to any executory contracts and unexpired leases to be assumed by the Potential Bidder.

d. **Stalking Horse Bid.** The Debtors reserve the right to designate a Qualified Bidder as a stalking horse (the "Stalking Horse Bidder") with certain bidding protections to the Stalking Horse Bidder, including breakup fees and expense reimbursements, each subject to the occurrence of certain conditions set forth in the Stalking Horse Agreement, subject to higher or otherwise better offers, as approved by an order of the Court after a motion brought on shorted notice to be heard at the earliest convenient date for the Court. The Debtors will provide separate notice of such hearing and related objection deadlines as formally scheduled by the Court.

e. **Due Diligence.** The Debtors shall afford each Potential Bidder (hereinafter defined) due diligence access to the Purchased Assets. Due diligence access may include management presentations as may be scheduled by the Debtors, access to data rooms, on-site inspections and such other matters which a Potential Bidder may request and as to which the Debtors, in their sole discretion, may agree. Neither the Debtors nor any of their affiliates (nor any of their respective representatives) are obligated to furnish any information relating to the Purchased Assets to any person except to Potential Bidders. Potential Bidders are advised to exercise their own discretion before relying on any information regarding the Assets provided by anyone other than the Debtors or their representatives. To be a "Potential Bidder," each bidder must have delivered the following:

   i. an executed confidentiality agreement in form and substance satisfactory to the Debtors; and

   ii. current audited and unaudited financial statements or other financial information of the Potential Bidder, or, if the Potential Bidder is an entity formed for the purpose of acquiring the Purchased Assets, current audited and unaudited financial statements or other financial information of the Potential Bidder's equity holder or other financial backer, or such other form of financial disclosure and evidence acceptable to the Debtors and their advisors in their sole discretion, and after consultation with the Lender and any Committee of Unsecured Creditors, demonstrating such Potential Bidder's ability to close the proposed transaction, to finance going concern operations

10

to the extent contemplated, and to provide adequate assurance of future performance to counterparties to any executory contracts and unexpired leases to be assumed by the Potential Bidder.

f. **"As Is, Where Is."** The sale of the Purchased Assets shall be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Debtors, their agents or estates, except to the extent set forth in the Proposed Agreement of the Successful Bidder. Except as otherwise provided in the Proposed Agreement, all of the Debtors' right, title and interest in and to the Purchased Assets to be acquired shall be sold free and clear of all liens, claims, charges, security interests, restrictions and other encumbrances of any kind or nature thereon and there against. Each bidder shall be deemed to acknowledge and represent that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or Purchased Assets in making its bid, and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Purchased Assets, or the completeness of any information provided in connection with the Purchased Assets, the Bidding Process or the Auction, except as expressly stated in these Bidding Procedures or, as to the Successful Bidder, in the applicable Proposed Agreement.

g. **Credit Bid**. The Debtors acknowledge and agree the Lender is hereby deemed to be a Qualified Bidder without any further action. In accordance with the Ratification Agreement, the Lender shall have the right to credit bid the amount of its claims arising under the terms of the Credit Documents (as defined in the Ratification Agreement), provided that if any Collateral (as defined in the Ratification Agreement) which constitutes Komatsu Senior Lien Collateral (as defined in the Floor Plan Intercreditor Agreement), is included in such credit bid, Lender shall pay Komatsu America (the "Floor Plan Lenders") in cash an amount that is consistent with the terms of the Floor Plan Intercreditor Agreement, the Interim Order and/or final financing order, as applicable, and as allowed by the Bankruptcy Court. Further, the Floor Plan Lenders shall have the right to credit bid the amount of its and their claims arising under the terms of the Floor Plan Loan Agreements, provided that if any Collateral which constitutes Callidus Collateral (as defined in the Floor Plan Intercreditor Agreement) is included in connection with any such credit bid, the Floor Plan Lenders shall pay to Callidus all Post-Petition Obligations (as defined in the Ratification Agreement) in cash in an amount that is consistent with the terms of the Floor Plan Intercreditor Agreement, the Interim Order and/or final financing order, as applicable, and as allowed by the Bankruptcy Court.

11

119274785_2

    h.    **Auction.** If the Debtors receive more than one Qualified Bid prior to the Bid Deadline, the Debtors shall conduct an auction (the "Auction") at the offices of Dilworth Paxson LLP, 1500 Market Street, Suite 3500E, Philadelphia, PA 19102 on Wednesday, **November 16, 2016**, beginning at 11:00 a.m. (prevailing Eastern Time) or such later time or other place as the Debtors, after consultation with the Lender and any Official Committee of Unsecured Creditors, shall notify all Qualified Bidders who have submitted Qualified Bids. Only representatives of the Debtors, the United States Trustee, the Lender, the Floor Plan Lenders, any Official Committee of Unsecured Creditors, and any Qualified Bidders who have timely submitted Qualified Bids shall be entitled to attend the Auction. The Debtors may announce at the Auction additional procedural rules that are reasonable under the circumstances (*e.g.,* the amount of time allotted to make subsequent overbids) for conducting the Auction, so long as such rules are not inconsistent with these Bidding Procedures. Based upon the terms of the Qualified Bids received, the number of Qualified Bidders participating in the Auction, and such other information as the Debtors determine is relevant, the Debtors, in their sole discretion, after consultation with the Lender and any Official Committee of Unsecured Creditors, may conduct the Auction in the manner they determine will achieve the maximum value for the Purchased Assets. At the Auction, the minimum initial bid must provide for cash payment in an amount not less than the amount required to satisfy the Obligations owed to the Lender. Subsequent bids shall be made in minimum increments of $100,000.

    i.    **Review of Bids.** As soon as practicable after the conclusion of the Auction, the Debtors shall: (i) review each Qualified Bid on the basis of financial and contractual terms and the factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the sale; (ii) consult with the Lender and any Committee of Unsecured Creditors regarding their analysis; and (iii) identify the highest or otherwise best offer or combination of offers for the Assets (the "Successful Bid") and any second-highest or best offer. The Debtors will present the Successful Bid to the Bankruptcy Court for approval at the Sale Hearing. The Debtors reserve all rights to not submit any bid which is not acceptable to the Debtors, after consultation with the Lender and any Official Committee of Unsecured Creditors.

    j.    **Acceptance of Qualified Bids.** The Debtors shall sell the Purchased Assets to the Successful Bidder submitting the highest or otherwise best Qualified Bid at the Auction, after approval of such Qualified Bid by the Bankruptcy Court at the Sale Hearing. The Debtors' presentation to the Bankruptcy Court for approval of a particular Qualified Bid does not constitute the Debtors' acceptance of such Qualified Bid. The Debtors shall have accepted a Qualified Bid only when that Qualified Bid has been approved by the Bankruptcy Court at the Sale Hearing.

12

k. **Motion to Accept or Reject Executory Contracts.** No later than one (1) Business Day after the determination of the Successful Bid, the Debtors shall file a Motion to Accept or Reject executory contracts as directed by the Successful Bidder.

l. **The Sale Hearing.** A hearing to confirm the results of the Auction and to approve the sale of the Purchased Assets (the "Sale Hearing") will be held before The Honorable Kathryn C. Ferguson, United States Bankruptcy Judge, at the Clarkson S. Fisher U.S. Courthouse, 402 East State Street, Trenton, NJ 08608, no later than Monday, **November 21, 2016** at a time to be determined. The Sale Hearing may be adjourned or rescheduled after consulting with the Lender and any Committee of Unsecured Creditors, without notice other than by an announcement of the adjourned date in open court.

m. **Back up Bid.** Following the entry of the Sale Order approving the Sale, if the Successful Bidder fails to consummate an approved sale because of a breach or failure to perform on the part of such Successful Bidder, the next highest or otherwise best Qualified Bid(s), shall be deemed to be the Successful Bid(s) and the Debtors shall be authorized to effectuate such sale without further order of the Bankruptcy Court.

n. **Return of Good Faith Deposit.** The Good Faith Deposits of all Qualified Bidders shall be retained by the Debtors and all Qualified Bids will remain open and irrevocable, notwithstanding Bankruptcy Court approval of a sale pursuant to the terms of a Successful Bid by a Qualified Bidder, until the earlier to occur of December 1, 2016 or two (2) business days after the closing of the Sale of the Purchased Assets. If a Successful Bidder fails to consummate an approved sale because of a breach or failure to perform on the part of such Successful Bidder, the Debtors will not have any obligation to return the Good Faith Deposit deposited by such Successful Bidder, which shall be retained by the Debtors as liquidated damages.

o. **Modifications.** The Debtors may: (i) determine, in their business judgment, after consultation with the Lender and any Official Committee of Unsecured Creditors, which Qualified Bid, if any, is the highest or otherwise best offer; (ii) consult with the representatives of any Committee or other significant constituent in connection with the bidding process and Bid Procedures; and (iii) reject at any time before entry of the Sale Order approving a Qualified Bid, any bid that, in the Debtors' sole discretion, after consultation with the Lender and any Official Committee of Unsecured Creditors, is: (x) inadequate or insufficient; (y) not in conformity with the requirements of the Bid Procedures, the Bankruptcy Code, or the terms and conditions of sale; or (z) contrary to the best

13

interests of the Debtors, their estates, their creditors and other parties in interest. At or before the Sale Hearing, the Bankruptcy Court, or, consistent with the purposes of the Bid Procedures to obtain the highest or otherwise best offer(s) for the Assets, the Debtors, after consultation with the Lender and any Committee of Unsecured Creditors, may impose such other terms and conditions as it or they may determine to be in the best interests of the Debtors' estates, their creditors and other parties in interest.

p. **Reservation of Rights**: In addition to their rights set forth in sections (i.) and (m.) above, the Debtors, after consultation with the Lender and any Committee of Unsecured Creditors, may modify these Bid Procedures or impose, at or prior to the Auction, additional terms and conditions on the proposed Sale of the Purchased Assets if, in their reasonable judgment, such modifications would be in the best interests of the Debtors' estates and promote an open and fair sale process.

16. The Debtors believe that establishing the procedures described above for bidding on the Purchased Assets will allow them to promptly review, analyze and compare all bids received and determine if a bid or bids are in the best interests of the bankruptcy estates of the Debtors.

17. The Debtors propose that within one (1) business day after the conclusion of the Auction, they will file with Court a supplement outlining the identity of the Successful Bidder of the Purchased Assets and the purchase price received therefore.

## Legal Argument

**A.    This Court Has the Authority to Approve the Bid Procedures.**

18. Courts have indicated that a debtor's business judgment is entitled to substantial deference with respect to the procedures to be used in selling assets from the estate. *See, e.g., Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Resources, Inc.)*, 147 B.R. 650, 656-57 (S.D.N.Y. 1992) (noting that overbid procedures and break-up fee arrangements that have been negotiated by a debtor are to be reviewed according to the deferential "business judgment" standard, under which such procedures and arrangements are

14

"presumptively valid"); *In re 995 Fifth Ave. Assocs., L.P.*, 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989) (same).

19. Here, the proposed Bid Procedures are reasonable, appropriate, and within the Debtors' sound business judgment under the circumstances, because they will serve to maximize the value that the Debtors will recover and serve the best interests of the estate and all parties in interest.

**B.    The Bid Procedures Are Appropriate.**

20. The paramount goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate. *See, e.g., Four B. Corp. v. Food Barn Stores, Inc. (In re Food Barn Stores, Inc.)*, 107 F.3d 558, 564-65 (8th Cir. 1997) (in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand); *Integrated Res.*, 147 B.R. at 659 ("It is a well-established principle of bankruptcy law that the . . . debtor's duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate.") *quoting Cello Bay Co. v. Champion Int'l Corn. (In re Atlanta Packaging Products, Inc.)*, 99 B.R. 124, 131 (Bankr. N.D. Ga. 1988)).

21. To that end, courts uniformly recognize that procedures intended to enhance competitive bidding are consistent with the goal of maximizing the value received by the estate and therefore are appropriate in the context of bankruptcy sales. *See, e.g., Integrated Res.*, 147 B.R. at 659 (such procedures "encourage bidding and maximize the value of the debtor's assets"); *In re Fin. News Network, Inc.*, 126 B.R. 152, 156 (S.D.N.Y. 1991) ("court-imposed rules for the disposition of assets [should] provide an adequate basis for comparison of offers, and [should] provide for a fair and efficient resolution of bankrupt estate").

15

22. The Debtors believe that the Bid Procedures establish the parameters under which the value of the Debtors' assets may be established and maximized at the Auction and the ensuing Sale Hearing. The proposed Bid Procedures will foster and enhance competitive bidding; therefore, such procedures will increase the likelihood that the Debtors will receive the greatest possible consideration for their assets by ensuring a competitive and fair bidding process.

C. **The Court Should Authorize the Debtors to Sell the Purchased Assets Pursuant to the Bid Procedures Set Forth Herein.**

23. The Bankruptcy Code permits the sale of a debtor's assets outside the ordinary course of business pursuant to Section 363. Courts in the Third Circuit and others have required that a decision to sell assets outside the ordinary course of business be based upon the sound business judgment of the debtor. *See In re Martin*, 91 F.3d 389, 396 (3d Cir. 1996); *In re Abbotts Dairies of Pa., Inc*., 788 F.2d 143 (3d Cir. 1986); *In re Delaware & Hudson Ry, Co*., 124 B.R. 169, 176 (Bankr. D. Del. 1991); *In re Phoenix Steel Corp.*, 82 B.R. 334, 335-36 (Bankr. D. Del. 1987) (stating that judicial approval of a section 363 sale requires a showing that the proposed sale is fair and equitable, a good business reasons exists for completing the sale, and the transaction be made in good faith); *see also Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983); *and* Fed. R. Bankr. P. 6004(0(1) (authorizing sales outside of the ordinary course of business to be conducted privately or by public auction).

(1) **The Debtors are Selling Their Assets for a Sound Business Purpose.**

24. The "sound business purpose" test requires a debtor to establish four elements to sell property outside the ordinary course of business, namely that (a) a "sound business purpose" justifies the sale of assets outside the ordinary course of business, (b) adequate and reasonable

16

notice has been provided to interested persons; (c) the debtor has obtained a fair and reasonable price, and (d) good faith is present. *See Abbotts Dairies*, *supra; In re Sovereign Estates, Ltd.*, 104 BR. 702, 704 (Bankr. E.D. Pa. 1989); *Phoenix Steel*, 82 B.R. at 335-36; *In re Indus. Valley Refrigeration and Air Conditioning Supplies, Inc.*, 77 B.R. 15, 21 (Bankr. E.D. Pa. 1987). Courts have made it clear that a debtor's showing of a sound business justification need not be unduly exhaustive but, rather, a debtor is "simply required to justify the proposed disposition with sound business reason." *In re Baldwin United Corp.*, 43 B.R. 888, 906 (Bankr. S.D. Ohio 1984).

25. In this case, the Debtor submits that the decision to sell the Assets is based upon its sound business judgment and should be approved. Without additional credit support or an equity infusion, the Debtors lack the resources to continue business operations in the current economic environment. A prompt sale is the only way to preserve going concern value and recover as much as possible for the estate. The Sale is being accomplished in an expeditious manner, consistent with the amount of available DIP financing and the Debtors limited resources, not only to maximize going concern value of the Debtors' enterprise and ensure continued operations to the extent possible, but also to maximize recoveries to all creditors.

**(2)    Adequate and Reasonable Notice Will be Provided.**

26. The form and manner of the notice of this Motion and the Bid Procedures used for soliciting higher and better offers for the Purchased Assets have been submitted for approval by the Court and will ensure that any and all interested parties will receive adequate notice of the Auction.

**(3)    The Purchased Assets Will Be Sold for Fair Value.**

27. Courts should only approve section 363(b) sales if the debtor has obtained a fair and reasonable price for the assets. *In re Delaware & Hudson Ry. Co.*, 124 B.R. at 176; *Industry Valley*, 77 B.R. at 20.

28. At the Sale Hearing, the Debtors will demonstrate that the Successful Bidder bought the Purchased Assets for "value." At a minimum, because the sale of the Purchased Assets will have been the subject of intensive marketing efforts and all bids will be subject to higher and better offers at the Auction, the Debtors are confident that the value of the Purchased Assets will be maximized and more than fair.

### (4) Any Successful Bid Will be the Product of Arms' Length Negotiations of a Kind that Satisfies the Good Faith Buyer Requirement.

29. As set forth above, the Third Circuit has interpreted Section 363(b) to require a finding by the Bankruptcy Court that the purchaser of a debtor's assets is a good faith buyer. *In re Abbotts Dairies*, 788 F.2d at 149-50. The Third Circuit construed the "good faith buyer" standard to mean one who purchases "in good faith" and for "value." *Id.* At 147.

30. In this case, the Auction pursuant to the Bid Procedures will ensure that any Successful Bidder is a good faith buyer. Indeed, "the misconduct that would destroy a purchaser's good faith status at a judicial [or section 363] sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." *Abbotts Dairies*, 788 F.2d at 147 (*quoting In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978)). The Bid Procedures and this Court's oversight will safeguard this sale process from any such misconduct.

31. Section 363(m) of the Bankruptcy Code provides that a reversal or modification on appeal of an authorized sale of property under section 363(b) will not affect the validity of such sale to a good faith purchaser. *See* 11 U.S.C. § 363(m). The sale process and Bid

18

Procedures proposed are intended to ensure that any Successful Bid and sale consummated will be the product of arms' length, good faith negotiations, and the result of a fair auction process conducted under the supervision of this Court pursuant to the Bid Procedures Order.

32.   Thus, the Debtors submit that the protections of section 363(m) should apply to the Successful Bidder(s) presented at the Sale Hearing, and that sound business purpose exists for the Debtors' determination to pursue the sale of their Assets.

**D.   The Debtors Should be Authorized to Sell the Purchased Assets Free and Clear of Liens, Claims, and Encumbrances Pursuant to Section 363(f) of the Bankruptcy Code.**

33.   In accordance with section 363(f) of the Bankruptcy Code, a debtor may sell property under section 363(b) "free and clear of any interest in such property of an entity other than the estate" only if one of the following conditions is satisfied:

> (1)   applicable non-bankruptcy law permits sale of such property free and clear of such interest;
> (2)   such entity consents;
> (3)   such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
> (4)   such interest is in bona fide dispute; or
> (5)   such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

*See* 11 U.S.C. § 363(f); *In re Elliot*, 94 B.R. 343, 354 (Bankr. E.D. Pa. 1988) (section 363(f) written in disjunctive; court may approve sale "free and clear" provided at least one of the subsections is met). The Debtors expect that they can satisfy at least three of these requirements, and will overcome any objections to a free and clear sale of the Assets at the hearing on this Motion. Any valid interests, liens, claims and encumbrances asserted against the Assets will attach to any cash consideration received by the Debtors at the Sale.

19

34. Any entities asserting interests in the Assets have consented, or the Debtors anticipate will consent, to the Sale of the Assets in accordance with this Motion. All liens on the Assets will be satisfied or will attach to the cash consideration received for the Assets with the same force, effect and priority as such liens have on the Assets, subject to the rights and defenses, if any, of the Debtor and any party in interest with respect thereto. Moreover, the parties asserting a claim against the Assets can be compelled to accept a money satisfaction of such claim. Accordingly, the Debtor submits that the Sale of the Assets free and clear of interests, liens, claims and encumbrances satisfies the statutory prerequisites of section 363(f) of the Bankruptcy Code.

35. To the extent that entities asserting interests in the Assets do not consent to the sale of the Purchased Assets, the Debtors, in the exercise of their business judgment, will proceed pursuant section 363(f)(4) of the Bankruptcy Code. "The purpose of 11 U.S.C. § 363(f)(4) is to permit property of the estate to be sold free and clear of interests that are disputed by the representative of the estate so that liquidation of the estate's assets need not be delayed while such disputes are being litigated." *Moldo v. Clark (In re Clark)*, 266 B.R. 163, 171 (Bankr. App. 9th Cir. 2001). "This standard does not require the court to resolve the underlying dispute, just to determine its existence." *Union Planters Bank, N.A. v. Burns (In re Gaylord Grain LLC)*, 306 B.R. 624, 627 (8th Cir. B.A.P. 2004). Further, the lien need not be the subject of an immediate or concurrent adversary proceeding. *Id*.

36. For all of the foregoing reasons, the Debtors submit that the proposed Sale and Bid Procedures should be approved.

**Request for Waiver of Stay**

37. Bankruptcy Rule 6004(h) provides that all orders authorizing the sale of property pursuant to Bankruptcy Code Section 363 are automatically stayed for fourteen (14) days after entry of such order "unless the court orders otherwise." Fed. R. Bankr. P. 6004(h).

38. This Court has approved requests to waive the stay so long as there is a "business need" for same. *In re Grand Prix Associates, Inc.*, No. 09-16545 (DHS), 2009 WL 1850966 at *8 (Bankr. D.N.J. Jun. 26, 2009).

39. In the instant case, waiving the fourteen (14) day stay under Bankruptcy Rule 6004(h) will serve a business need by enabling the Debtors to minimize any costs associated with the proposed Sale by allowing the parties to close the transaction as soon as possible after entry of the proposed Sale Order. Also, waiver of this stay will ensure the smooth facilitation of the Auction and Sale.

40. Accordingly, the Debtors request that the Court waive the fourteen (14) day stay set forth in Bankruptcy Rule 6004(h).

## **Waiver of Memorandum of Law**

41. In accordance with Local Rule 9013-1(a)(3), no brief is being filed in support of this Motion because the legal principles involved are not novel or in dispute and are adequately set forth in the Motion.

## **Notice**

42. The Debtors have provided notice of this Motion to: (a) the Office of the United States Trustee for the District of New Jersey; (b) the entities listed on the Consolidated List of Creditors Holding the 30 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d); (c) counsel to Sandton Capital Partners, LP; (d) counsel to Komatsu America Corp.; (e) counsel to Callidus Capital Corporation; (f) Joseph Morris; and (g) all entities known to the Debtors to

have expressed a *bona fide* interest in the Assets. The Debtors respectfully submit that no further notice is necessary.

## No Prior Request

43.   No prior motion for the relief requested herein has been made to this or any other court.

WHEREFORE, for the reasons set forth herein, in the Binder Certification, and in the DIP Motion, the Debtors respectfully request that the Court grant the Motion by entering the Bid Procedures Order substantially in the form attached hereto as **Exhibit A** and, upon completion of the Auction process, enter the Sale Order, substantially in the form attached hereto as **Exhibit B,** as such form of Sale Order may be amended or modified based on the results of the Auction sale, and grant such other and further relief as is just and proper.

Dated:  September 28, 2016                    Respectfully submitted,

/s/ Anne M. Aaronson
**DILWORTH PAXSON LLP**
Lawrence G. McMichael
Anne M. Aaronson
Catherine G. Pappas
1500 Market St., Suite 3500E
Philadelphia, PA 19102
Telephone:  (215) 575-7000
Facsimile:  (215) 575-7200

*Proposed Counsel for the Debtors and Debtors in Possession*